UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MARINA BELTRAN,

    Plaintiff,

vs.

AVON PRODUCTS, INC.,

    Defendant.

Case No.: SACV 12-02502-CJC(ANx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND DENYING DEFENDANT'S MOTION TO STRIKE**

## I. INTRODUCTION AND BACKGROUND

On February 28, 2012, Plaintiff Marina Beltran, along with other individuals (collectively, "Plaintiffs"), brought a nationwide putative class action against three cosmetic companies, Mary Kay, Inc. ("Mary Kay"), The Estee Lauder Companies, Inc. and Estee Lauder, Inc. (together, "Estee Lauder"), and Avon Products, Inc. ("Avon") (collectively, "Defendants"). Plaintiffs allege that Defendants defrauded American

1  consumers by marketing and advertising that they did not test any of their products on
2  animals.  In reality, Defendants were testing products sold in foreign markets on animals,
3  often as required by law in those countries.  Plaintiffs allege that they purchased
4  Defendants' products based on the representations that Defendants did not test *any* of
5  their products on animals, regardless of where those products were sold.  Had they known
6  the truth about Defendants' operations, Plaintiffs allege that they would not have
7  purchased the products.

9      On March 22, 2012, Plaintiffs voluntarily dismissed Avon without prejudice.  Ms.
10 Beltran then filed her complaint in this action on March 23, 2012.  (Dkt. No. 1.)  Avon
11 moved to dismiss on April 13, 2012.  (Dkt. No. 19.)  After the Court granted a motion to
12 dismiss in a similar case, Ms. Beltran filed her First Amended Complaint ("FAC").  (Dkt.
13 No. 22.)  Avon again moved to dismiss, and the parties entered into a stipulation to allow
14 Ms. Beltran to file this operative Second Amended Complaint ("SAC").  (Dkt. Nos. 37,
15 41.)  Before the Court are Avon's motions to dismiss the SAC and strike class
16 allegations.

18      In her SAC, Ms. Beltran alleges that Avon engaged in a long-term marketing and
19 advertising campaign touting itself as a company that did not test its products on animals.
20 (SAC ¶ 2.)  While it was making such representations to American consumers, Avon
21 decided to enter the Chinese market, where it was required by Chinese law to test certain
22 products on animals.  (*Id.* ¶ 10.)  Specifically, she alleges that Avon represented to the
23 People for the Ethical Treatment of Animals ("PETA") that it did not and would not test
24 any of its products on animals.  (*Id.* ¶ 8.)  As a result, Avon was placed on PETA's "Do
25 Not Test" list.  (*Id.*)  In addition to making such representations to PETA, Ms. Beltran
26 alleges that Avon placed a statement on its website that represented that Avon did not
27 conduct any animal testing.  (*Id.*)  Specifically, the website stated that Avon does not test
28 any of its products on animals "except when required by law."  (*Id.* ¶ 13.)  This statement

was allegedly misleading because it implied that Avon only conducted animal testing when required by American law. (*Id.*) Avon also allegedly represented to its sales force that Avon did not test any of its products on animals, with full knowledge that the sales force would repeat these representations to consumers. (*Id.*) Ms. Beltran alleges that Avon profited millions of dollars from U.S. consumers who would not have purchased any products from a company that tested its products on animals. (*Id.* ¶ 16.) She personally purchased between $10-$100 worth of Avon products on a monthly basis, for more than a decade. (*Id.*) Ms. Beltran, individually and on behalf of others similarly situated, asserts four claims against Avon for: (1) fraud/fraudulent concealment, (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., and (4) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. Ms. Beltran requests injunctive relief, declaratory relief, compensatory damages, punitive damages, and restitution. For the following reasons, the Court **GRANTS IN PART** Avon's motion to dismiss. Because the Court cannot say with certainty at this time whether any further amendment would be futile, those claims which are dismissed are done so **WITH LEAVE TO AMEND**. Avon's motion to strike class allegations is **DENIED WITHOUT PREJUDICE**.[1]

///
///
///

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 24, 2012, at 1:30 p.m. is hereby vacated and off calendar.

## II. ANALYSIS

### A. Standing

Avon argues that Ms. Beltran lacks standing because she has not suffered an actual injury. Under Article III, federal courts may only hear a "case or controversy." U.S. Const. art. III, § 2, cl. 1. To satisfy this standard, the plaintiff must show an injury in fact that is fairly traceable to the defendant's unlawful conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1998); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007) (quoting *Lujan*, 504 U.S. at 560) (quotes omitted).

The UCL, FAL, and CLRA have independent requirements for standing. After the passage of Proposition 64 in 2004, a plaintiff asserting a UCL or FAL claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (alterations in original). In addition, the CLRA requires that a person have suffered "damages as the result of" a violation of the statute. Cal. Civ. Code § 1780(a).

Ms. Beltran has pleaded a sufficient injury under Article III, and the UCL, FAL, and CLRA. Ms. Beltran is not seeking redress for an injury related to the Avon products themselves. Rather, she alleges she was injured because Avon made false representations and omissions about its overseas operations, which induced her to buy a non-defective product she otherwise would not have purchased. Therefore, the question before the

Court is whether purchasing a non-defective product based on fraudulent misrepresentations can constitute a sufficient injury for standing purposes.

The California Supreme Court recently answered this question in the affirmative. *See Kwikset*, 51 Cal. 4th at 330. In *Kwikset*, a consumer brought claims against a company for falsely marketing and selling locksets labeled "Made in the U.S.A." that actually contained foreign-made parts or involved foreign manufacture. The plaintiff argued that he suffered an injury because, but for the false representations on the label, he would not have bought the product. *Id*. at 327–28. He did not allege that the lockset was defective in any way, or that it was somehow inferior because it was partially manufactured overseas. *Id*. at 331. The California Supreme Court held that the plaintiff had standing to pursue his claims. *Id*. at 328. The California Supreme Court noted that "to some consumers, the 'Made in U.S.A.' label matters. A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism." *Id*. at 329. The California Supreme Court held that consumers that relied on the label and were deceived by the misrepresentation into making a purchase suffered an injury in fact: "[T]he consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* (emphasis in original). The harm was not that the product was somehow inferiorly made, but simply that the consumer would not have purchased it at the price he paid, but for the misrepresentations.

Like the *Kwikset* plaintiff, Ms. Beltran does not allege that the Avon products she purchased were in any way defective or inferior based on the fact that Avon tests some foreign products on animals. She argues that had she known the truth about Avon's operations, she would not have purchased its products. From this, we know that Ms. Beltran paid more for the products than she actually valued them. "That increment, the

extra money paid, is economic injury and affords the consumer standing to sue." *Id.* at 330. Ms. Beltran alleges that she purchased a number of Avon products that she otherwise would not have, including "perfumes, body creams, scented lotions, lipsticks, eye shadows, nail polish, vitamins and shampoo." (SAC ¶ 6.) In fact, she spent between $10-$100 on Avon products each month, which, had she known about the animal testing, she would not have spent. (*Id.*) This is a sufficient injury for standing.

Ms. Beltran has also shown the causation required for standing. She alleges that her injuries were the result of exposure to misrepresentations in Avon's advertising and website. This is a sufficient causal link under Article III, and the UCL, FAL, and CLRA. However, Ms. Beltran has not sufficiently alleged causation for her claims related to the PETA list. She has not alleged that she actually viewed the list, and therefore cannot link her injuries to that source. Accordingly, claims reliant on exposure to the PETA list are dismissed.

That the misrepresentations were not specifically related to the products she purchased, but instead the company's wider operations, does not negate the fact that Ms. Beltran was allegedly induced into purchasing something she otherwise would not have purchased. Consumers typically base their purchasing decisions on the price and quality of a product. As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. It should not be unexpected then, that when companies make misrepresentations about their company-wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.

## B. Failure to State a Claim

Avon further moves to dismiss Ms. Beltran's claims pursuant to Rule 12(b)(6) and 9(b). A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on the lack of a cognizable legal theory or on the basis of insufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to ensure that defendants accused of fraudulent conduct have adequate notice of the allegations so that they might defend against them. *Von Grabe v. Spring PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. Cal. 2003). A sufficiently particular allegation of fraud must include the "who, what, when, where and how" of the circumstances giving rise to the claim. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

**1. Fraudulent Misrepresentations**

In order to establish a cause of action for fraud, a plaintiff must plead and prove all elements of fraud, namely: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Von Grabe*, 312 F. Supp. 2d at 1305. Ms. Beltran has not alleged particularized facts to support her fraud-based claims under Rule 9(b)'s heightened pleading standard.

Ms. Beltran's claims are based on several alleged misrepresentations. The first is that she was "exposed to and aware of" Avon's "extensive and long term marketing and advertising campaign touting the company as being cruelty free." (SAC ¶ 6.) Under Rule 9(b), it is not sufficient to simply allege exposure to a long-term advertising campaign. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). While it may be true that for purposes of standing a plaintiff need not plead with an unrealistic degree of specificity that she relied on particular advertisements, *see In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009), that issue is separate from whether Rule 9(b)'s requirements are met. Therefore, Ms. Beltran's claims for fraud based on Avon's advertising campaign must adequately plead the "who, what, when, where, and how" of the underlying misrepresentations, which she has failed to do.

In *Kearns*, the plaintiff alleged that Ford Motor Company fraudulently misrepresented the benefits of its certified pre-owned program. *Kearns*, 567 F.3d at 1122. He alleged exposure to these misrepresentations through Ford's televised national marketing campaign, sales materials found at the dealership, and sales personnel at the dealership. *Id.* at 1125–26. The Ninth Circuit affirmed the district court's order to dismiss the complaint for failure to plead the particular circumstances surrounding such representations, as required by Rule 9(b). *Id.* at 1126. The Ninth Circuit noted that the plaintiff failed to "specify what the television advertisements or other sales material

specifically state. Nor did he specify when he was exposed to them or which ones he found material." *Id*.

Ms. Beltran's claims are based on similar allegations as in *Kearns*, and fail for similar reasons. She does not plead what the advertising materials specifically state. She also points to no particular advertisements or promotional materials that she was personally exposed to. In fact, she does not even plead whether the advertisements were broadcast on television, on the radio, or in print ads. Thus, she has failed to meet the pleading requirements of Rule 9(b) for these claims.

Ms. Beltran's allegations regarding misrepresentations on Avon's website fail as well. She has only pleaded that she "recalls seeing a statement on Defendant's website that indicated that the company does not conduct any animal testing on its products." (SAC ¶ 6.) She does not specify when she visited the website, the specific contents of the misrepresentation, or that she relied on the misrepresentation to make specific purchases. Accordingly, these claims are insufficient under Rule 9(b).

**2. Fraudulent Concealment**

Under California law, to establish a fraud-by-concealment claim, "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (2001) (citation omitted). A defendant generally has a duty to disclose: "(1) when the defendant is in a fiduciary relationship with the plaintiff;

(2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quotes and citations omitted). For a fact to be material, "a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

Avon argues that the disclosures do not concern safety issues, and therefore do not give rise to a duty to disclose under *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012). In *Wilson*, a product defect case, the Ninth Circuit stated that California federal courts have generally held that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id.* at 1141. The Ninth Circuit acknowledged that its requirement of a safety issue does not necessarily apply outside the products defect context where warranty protections are not available. *Id.* at 1142 (listing cases where a safety issue was not required to trigger a duty to disclose). One reason why the duty to disclose in product defect cases is narrower than in other areas is that warranty law essentially covers the same terrain. There is less of a need, then, for common law fraud to protect consumers. Here, there are no warranty issues present. The Court therefore finds the more general rule, that a fact need only be material to trigger a duty to disclose, the appropriate standard.

Ms. Beltran alleges that Avon had a duty to disclose information about its animal testing because it is a material fact. (SAC ¶ 15.) The information is material because, had she known about the animal testing practices, she would have acted differently by not purchasing Avon products. This is sufficient to give rise to a duty to disclose. Ms. Beltran has adequately pleaded the other elements of a fraudulent concealment claim,

including that she was unaware of Avon's animal testing practices, Avon concealed the information in order to increase its sales from consumers like her, and as a result of Avon's concealment, she purchased products she otherwise would not have.  Therefore, she has adequately pleaded a claim for fraudulent concealment.

Avon's misrepresentations through its general advertising campaign and on its website could also give rise to a duty to disclose.  However, as the Court discussed earlier, Ms. Beltran has not adequately alleged the specifics of the advertising campaign or her visit to Avon's website under Rule 9(b).  Rule 9(b) applies to fraudulent concealment claims as well, and without more specifics regarding the misrepresentations, they cannot form the basis of a concealment claim.

### 3. UCL, FAL, and CLRA Claims

Ms. Beltran additionally brings claims under the UCL, FAL, and CLRA.  Where "the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that complaint."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); *Kearns*, 567 F.3d at 1122.  "If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the complaint."  *Vess*, 317 F.3d at 1107.

Ms. Beltran's entire SAC, including her UCL, FAL, and CLRA claims, are grounded in fraud.  They are based on the same "unified course of fraudulent conduct," namely that Avon made fraudulent misrepresentations or omissions about its testing on animals.  Therefore, Ms. Beltran must "state with particularity the circumstances constituting fraud" for all of these claims, including those alleging "unfairness" under the UCL.  *Kearns*, 567 F.3d at 1127 (dismissing claims under the unfairness prong of the

UCL for failure to plead with particularity under 9(b) where such claims were based on a "unified course of fraudulent conduct").

The Court has already held that Ms. Beltran failed to plead with particularity the circumstances constituting her fraudulent misrepresentation claims, and fraudulent concealment claims related to Avon's general advertising campaign and website disclosures. To the extent that her UCL, FAL, and CLRA claims are derivative of those claims, they are dismissed.

      a.    **UCL and FAL**

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prong. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). The FAL prohibits "untrue or misleading" statements in connection with the sale of property, when those statements are known or should be known to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

Ms. Beltran has sufficiently pleaded a violation of the UCL based on her fraudulent concealment claims. Her allegations of concealment are unfair, fraudulent, and unlawful under the UCL. Ms. Beltran has sufficiently pleaded a claim under the "unlawful" prong, because she already pleaded sufficient facts that Avon's concealment of material facts was illegal. To state a claim under the "fraud" prong, a plaintiff must allege that "members of the public are likely to be deceived." *Tobacco II*, 46 Cal. 4th at 312 (citations and quotes omitted). This is a question of fact, and the Court cannot say at this time, as a matter of law, that members of the public are not likely to be deceived. Likewise, though courts are split as to the requirements under the "unfair" prong, the

determination is generally factual. Again, the Court cannot say at this time, as a matter of law, that the practice was not "unfair."

However, Ms. Beltran has not adequately pleaded a violation of the FAL. The FAL requires an untrue or misleading statement. Ms. Beltran's surviving concealment claims are based on omissions, not misleading statements or partial representations. Because she has not adequately alleged that Avon made any actual misleading or untrue statements, she cannot make out a claim under the FAL.

### b. CLRA

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices." This includes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Cal. Civ. Code § 1770(a)(5). Though the language of the CLRA seems to require an actual misrepresentation, omissions are actionable under the CLRA if they are "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). As discussed previously, Avon has a duty to disclose material information. In order for non-disclosed information to be material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F. Supp. 2d at 1095 (citing *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (1993)). "Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.' " *Id*. (citing *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351 (2003)).

Avon's animal testing practices are material for purposes of the CLRA. In support of this point, Ms. Beltran cites a 2011 survey conducted by the Physician's Committee

for Responsible Medicine ("PCRM") finding that 72 percent of respondents agreed that testing cosmetics on animals is inhumane or unethical and 61 percent believe that companies should not be allowed to test products on animals.  (SAC ¶ 21.)  The actual effect on a reasonable consumer is a question of fact, but the PCRM study shows that Ms. Beltran's allegations are not completely without support.  This is a sufficient allegation that a reasonable consumer would behave differently had she been aware of May Kay's animal testing practices.  Therefore, Ms. Beltran has sufficiently pleaded a claim under the CLRA based on Avon not disclosing material facts related to its animal testing.

### C. Motion to Strike

Because the Court has dismissed Ms. Beltran's SAC in part with leave to amend, Avon's motion to strike class allegations is **DENIED WITHOUT PREJUDICE**.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Avon's motion to dismiss.  Ms. Beltran shall have twenty (20) days from the date of this order to file an amended complaint consistent with the Court's ruling, and Avon shall have (20) days thereafter to respond.  Avon's motion to strike class allegations is **DENIED WITHOUT PREJUDICE**.

DATED: September 20, 2012

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE