DENNIS S. ELLIS (SB# 178196)
dennisellis@paulhastings.com
KATHERINE F. MURRAY (SB# 211987)
katherinemurray@paulhastings.com
NICHOLAS J. BEGAKIS (SB# 253588)
nickbegakis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendant
AVON PRODUCTS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA BELTRAN, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVON PRODUCTS, Inc., a New York Corporation,<br><br>Defendant. | CASE NO. CV12-02502 CJC (ANX)<br><br>Related Case Nos. 8:12-CV-0312 CJC (ANx) and 8:12-CV-01169 CJC (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AVON PRODUCTS, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>[Notice of Motion and Motion to Dismiss, Motion to Strike Class Allegations and Memorandum of Points and Authorities in Support thereof, and Request For Judicial Notice filed and served concurrently herewith]<br><br>Date:  December 17, 2012<br>Time:  1:30 p.m.<br>Judge:  Hon. Cormac J. Carney |

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   RELEVANT FACTS ................................................................................. 3

      A.    Beltran Files The SAC .......................................................... 3

      B.    The Court Grants In Part Avon's Motion To Dismiss The SAC ................... 4

      C.    Plaintiff's Counsel Searches For New Plaintiffs ............................. 5

      D.    Beltran, Tellez And Gutierrez File The TAC .................................. 5

      E.    Avon's Representations Regarding Animal Testing ............................. 6

III.  STANDARD ON A MOTION TO DISMISS ............................................. 7

IV.   THE COURT SHOULD DISMISS BELTRAN FROM THIS CASE ..................... 8

      A.    Beltran Has Not Pled A Claim For Fraudulent Concealment ................... 8

      B.    Beltran Cannot State A Claim Under The UCL ............................... 12

      C.    Beltran's CLRA Claim Remains Deficient ................................... 13

V.    THE COURT SHOULD DISMISS ALL CLAIMS ASSERTED BY NEW
      PLAINTIFFS RENEE TELLEZ AND NICHOLE GUTIERREZ ......................... 14

      A.    The Court Did Not Authorize Beltran To Add New Plaintiffs ................ 14

      B.    Tellez And Gutierrez Are Improper Class Representatives ................... 14

      C.    Tellez And Gutierrez Have Not Pled Their Claims With The Requisite
            Specificity Mandated By Rule 9(b) ........................................ 16

      D.    Tellez And Gutierrez Cannot State A Claim For Fraudulent Concealment . 19

      E.    Tellez And Gutierrez Have Not Stated A Claim Under The UCL .............. 20

            1.    Tellez and Gutierrez Cannot Allege Unlawful Conduct ................ 20

            2.    Tellez And Gutierrez Cannot Allege Unfair Conduct ................. 21

            3.    Tellez And Gutierrez Cannot Allege Fraudulent Conduct ............. 22

      F.    Tellez And Gutierrez Have Failed To State A Claim Under The CLRA ..... 23

VI.   CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................... 7, 8

*Berry v. Am. Exp. Publ'g, Inc.,*
  147 Cal. App. 4th 224 (2007) ....................................................................................... 23

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
  162 Cal. App. 4th 858 (2008) ................................................................................... 9, 19

*Bodner v. Oreck Direct, LLC,*
  No. 06-4756, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal. April 25, 2007) ............... 2, 16

*Buckland v. Threshold Enters., Ltd.,*
  155 Cal. App. 4th 798 (2007) ................................................................................ 13, 24

*Chern v. Bank of Am.,*
  15 Cal. 3d 866, 544 P.2d 1310 (1976) ......................................................................... 11

*Churchill Village, L.L.C. v. General Elec. Co.,*
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...................................................................... 20

*Clemens v. DaimlerChrsyler Corp.,*
  534 F.3d 1017 (9th Cir. 2008) ..................................................................................... 21

*Daugherty v. Am. Honda Motor Co.,*
  144 Cal. App. 4th 824 (2006) ...................................................................................... 22

*Elk Grove Unified Sch. Dist. v. Newdow,*
  542 U.S. 1, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004) ............................................... 14

*Falk v. Gen. Motors Corp.,*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................................... 10

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Cir. 1995) ......................................................................................... 22

*Glickman v. Wileman Bros. & Elliott, Inc.,*
  521 U.S. 457, 117 S. Ct. 2130, 138 L. Ed. 2d 585 (1997) ............................... 3, 24, 25

*Greernaert v. Mitchell,*
  31 Cal. App. 4th 601 (1995) ........................................................................................ 20

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) ........................................ 14, 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

CASES

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011)..................................................................25

*In re Mediscan Research, Ltd.*,
   940 F.2d 558 (9th Cir. 1991) ...............................................................................11

*In re Tobacco II Cases*,
   46 Cal. 4th 298, 207 P.3d 20 (2009).....................................................................22

*Indep. Cellular Tel., Inc. v. Daniels & Assocs.*,
   863 F. Supp. 1109 (N.D. Cal. 1994).....................................................................21

*Ins. Exch. V. Super. Ct. (The People)*,
   2 Cal. 4th 377, 826 P.2d 730 (1992).....................................................................21

*Int'l Dairy Foods Ass'n v. Amestoy*,
   92 F.3d 67 (2d Cir. 1996) .....................................................................................25

*Johnson v. Riverside Healthcare Sys.*,
   534 F.3d 1116 (9th Cir. 2008) ...............................................................................7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................8, 17

*Kwikset Corp. v. Super. Ct. (Benson)*,
   51 Cal. 4th 310, 246 P.3d 877 (2011)...................................................................14

*Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117 (2010) ...................................19

*Lovejoy v. AT&T Corp.*,
   92 Cal. App. 4th 85 (2001) ..................................................................................11

*Mass. Mut. Life Ins. Co. v. Super Ct. (Karges)*,
   97 Cal. App. 4th 1282 (2002)........................................................................11, 13

*Meachum v. Outdoor World Corp.*,
   654 N.Y.S.2d 240, 171 Misc. 2d 354 (1996) .......................................................16

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .........................................................................2, 14

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006)................................................................20

*O'Shea v. Epson Am., Inc.*,
   No. CV 09-8063 PSG, 2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011) .......11

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

1

**TABLE OF AUTHORITIES**
(continued)

2

3
**Page(s)**

Cᴀsᴇs

4

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ................................................................. 2, 8

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................... 21

*Olson v. Cohen*,
  106 Cal. App. 4th 1209 (2003) ................................................................. 21

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
  475 U.S. 1, 106 S. Ct. 903, 89 L. Ed. 2d 1 (1986) ........................................ 25

*People v. Dollar Rent-A-Car Sys., Inc.*,
  211 Cal. App. 3d 119 (1989) ................................................................... 21

*People v. McKale*,
  25 Cal. 3d 626, 602 P2d 731 (1979) ........................................................... 21

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ...................................................................... 11

*Sanchez v. Wal Mart Stores, Inc.*,
  No. Civ. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS 48428
  (E.D. Cal. May 28, 2009) .................................................................... 15, 16

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (2010) ............................................................... 12, 20

*Shvarts v. Budget Group, Inc.*,
  81 Cal. App. 4th 1153 (2000) ............................................................... 13, 21

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................... 7

*Stickrath v. Globalstar, Inc.*,
  No. C07-1941 TE, 2008 U.S. Dist. LEXIS 105692 (N.D. Cal. Dec. 22, 2008) .......... 11

*Sullivan v. Oracle Corp.*,
  662 F.3d 1265 (9th Cir. 2011) ............................................................... 3, 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................... 2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

-iv-

**CASES**

*Von Grabe v. Spring PCS,*
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................................ 17

*Waldo v. Lakeshore Estates, Inc.,*
    433 F. Supp. 782 (E.D. La. 1977) ................................................................. 15

*Walsh v. Kindred Healthcare,*
    No. C 11-00050 JSW, 2012 U.S. Dist. LEXIS 41012 (N.D. Cal. Mar. 26, 2012) ....... 11

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ........................................................................ 21

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ............................................................ 10, 11, 19

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................... passim

Cal. Bus. & Prof. Code § 17500 ........................................................... passim

Cal. Civ. Code § 1770(a) ....................................................................... 3, 23, 24

Cal. Civ. Code § 1780(d) ............................................................................. 25

Cal. Civ. Code § 1782 ................................................................................. 24

**RULES**

California Rule of Professional Conduct 1-400 ............................................ 15

California Rule of Professional Conduct 1-400(D)(2) ................................... 15

California Rule of Professional Conduct 1-400(D)(3) ................................... 15

Fed. R. Civ. P. 9(b) ............................................................................... passim

Fed. R. Civ. P. 12(b)(6) ................................................................................. 7

1

**I.    PRELIMINARY STATEMENT**

2        On September 20, 2012, this Court issued an Order ("Order") granting, in part,

3   Avon Products, Inc.'s ("Avon") Motion to Dismiss Plaintiff Marina Beltran's ("Beltran")

4   Second Amended Complaint ("SAC") (Dkt. No. 59).  In its Order, the Court found that

5   "[Plaintiff's] entire SAC, including her UCL, FAL and CLRA claims, are grounded in

6   fraud" and that Beltran failed to allege her claims with the specificity required by Federal

7   Rule of Civil Procedure 9(b) ("Rule 9(b)").  (*See* Order at 9:11-16; 11:7-11; 11:23-24;

8   12:4-8.)  In particular, the Court held that Beltran's allegations that she was exposed to

9   Avon's advertising campaign and website failed to satisfy Rule 9(b) and could not form

10  the basis of her claims.  (*See id.* at 8:17-19; 9:11-16; 11:7-11.)  The Court did state,

11  however, that Beltran could proceed with a claim under the Consumer Legal Remedies

12  Act ("CLRA"), provided the CLRA claim was not derivative of her deficient fraud

13  claims.  (*Id.* at 12:4-8.)  The Court gave Beltran twenty days to file an amended

14  complaint consistent with its ruling.  (*Id.* at 14:18-19.)  Thus, following the Court's

15  Order, Beltran had a decision to make:  amend the allegations supporting her fraud claims

16  to comply with Rule 9(b) or pursue a CLRA claim detached from allegations of fraud.

17  Beltran has done neither.

18       On October 10, 2012, Beltran, along with new plaintiffs, Renee Tellez ("Tellez")

19  and Nichole Gutierrez ("Gutierrez") (collectively, "Plaintiffs"), filed a Third Amended

20  Complaint ("TAC") in this action.  Despite representing to the Court that she could

21  amend the SAC "to provide even *more* particularity with respect to those allegations [of

22  reliance]," Beltran made **no** such changes.  (Dkt. No. 50 at 3:5-6.)  Instead, as she did in

23  the SAC, Beltran again bases all of her TAC claims on cursory allegations that she was

24  "exposed to and aware of" Avon's marketing and advertising campaign and that she

25  "recalls seeing a statement on Defendant's website that indicated that the company does

26  not conduct any animal testing on its products."  (*See* SAC ¶ 6; TAC ¶ 6.)  As the Court

27  already has ruled that these allegations do not satisfy Rule 9(b), and as Beltran has

28  elected not to offer any other allegations to support her claims, she should be dismissed

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

1  from this case, with prejudice.  *See Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir.

2  2007) (affirming dismissal without leave to amend where plaintiff did not correct

3  substantive deficiencies in complaint pointed out by the Court, even after the court

4  afforded plaintiff opportunities to do so).

5       The claims brought by new plaintiffs Tellez and Gutierrez also should be

6  dismissed.  As an initial matter, Tellez and Gutierrez are not proper plaintiffs because the

7  Court never granted Beltran's request for leave to add new plaintiffs to this case.  *See*

8  *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir. 2008) ("By not

9  addressing plaintiffs' request for leave to amend, the district court's order 'necessarily

10  entailed a denial of the [request] . . .'").  Even if the Court had granted such leave, these

11  "stand-in" plaintiffs still should be dismissed as they were improperly solicited to serve

12  as named plaintiffs long after the complaint in this case had been filed.  *See, e.g., Bodner*

13  *v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal.

14  Apr. 25, 2007) (refusing to certify a class where the named plaintiff was solicited by an

15  advertisement seeking a representative for an already-drafted complaint).

16       Moreover, assuming Tellez and Gutierrez could overcome these pleading issues,

17  they still should be dismissed because they have not stated a claim against Avon.  Tellez

18  and Gutierrez assert claims for fraudulent concealment, unfair business practices under

19  California Business and Professions Code Section 17200 (the "UCL") and the CLRA.  To

20  support these claims, they allege, just like Beltran, that they were "exposed to and aware

21  of" Avon's advertising campaign.  (TAC ¶¶ 7, 8.)  Yet, neither Tellez nor Gutierrez

22  quotes a single representation made by Avon that they relied on prior to purchasing an

23  Avon product, nor do they identify a product they purchased as a result of their purported

24  exposure.  Instead, they rely on vague allegations about Avon's advertising campaign,

25  conversations with Avon's independent sales representatives ("ISRs"), and their review

26  of a "Do Not Test" List published by a third party, PETA.  These allegations do not

27  comply with Rule 9(b) and cannot form the basis of claims against Avon.  (*See* Order at

28  8:6-19; 9:4-16.)  *See also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

2003) ("If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the complaint.").

Even if their factual allegations were sufficient under Rule 9(b), Tellez and Gutierrez still could not pursue a CLRA claim, as neither their conversations about Avon's business practices nor their review of PETA's "Do Not Test" List is actionable under the CLRA, which prohibits unfair or deceptive practices in connection with "a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a).  Having failed to link their allegations with the purchase of an Avon product, Tellez and Gutierrez have not identified a "transaction" under the CLRA.  In addition, Tellez and Gutierrez cannot pursue a CLRA claim because the only relief they seek through this claim is a constitutionally prohibited mandatory disclosure. *See Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 480-81, 117 S. Ct. 2130, 2144, 138 L. Ed. 2d 585 (1997) ("compelling cognizable speech officially is just as suspect as suppressing it.").  Further, under no circumstances can Tellez, a Michigan resident, maintain claims under the UCL or the CLRA.  *See Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011) (refusing to apply UCL to claims of non-California residents for conduct occurring outside California).

Simply put, Beltran made absolutely no effort to rehabilitate her factual allegations to state a claim against Avon.  She continues to rely exclusively on Avon's advertising campaign and website as the bases for her claims, but she has not alleged any new facts to make these allegations compliant with Rule 9(b).  Likewise, Tellez and Gutierrez offer similarly insufficient allegations with respect to what they saw and when they saw it, and provide no facts as to whether they actually relied on any misrepresentations or omissions when purchasing an Avon product.  Plaintiffs' claims should be dismissed.

## II.   RELEVANT FACTS

### A.   Beltran Files The SAC

On June 28, 2012, this Court granted motions to dismiss the First Amended Complaints filed in the related action, *Stanwood v. The Estee Lauder Cos., Inc.*, C.D. Cal.

1   Case No. SACV 12-0312.  In its Order, the Court noted that plaintiffs had "not alleged

2   particularized facts to support their fraud-based claims under Rule 9(b)'s heightened

3   pleading standards," as they only alleged "in general terms" that the defendants "engaged

4   in extensive and long-term marketing and advertising campaigns touting themselves as

5   companies that do not test any of their products on animals." (*Stanwood* Dkt. No. 44 at

6   p. 4.)  The Court also noted that plaintiffs failed to provide sufficient information

7   regarding what products they actually purchased.  (*Id.* at p. 5.)

8          With the benefit of this Order and a stipulation by Avon, Beltran filed a SAC in

9   this case before the Court ruled on Avon's Motion to Dismiss and Motion to Strike

10  Beltran's First Amended Complaint, which were made on grounds similar to those raised

11  in the motions to dismiss in the related actions.  Beltran's SAC was substantively

12  identical to the three complaints Beltran previously filed and, like its prior iterations, was

13  based on Avon's advertising campaign, a recent announcement by PETA removing Avon

14  from its "Do Not Test" List, and some statement Beltran recalls reading on Avon's

15  website.  (SAC ¶¶ 6, 9-10, 12-14, 19-20.)

16       **B.     The Court Grants In Part Avon's Motion To Dismiss The SAC**

17         On August 9, 2012, Avon moved to dismiss the SAC and filed a motion to strike

18  the class allegations.  In opposing Avon's motions, Beltran sought leave to amend the

19  SAC so she could "provide even *more* particularity with respect to [her] allegations [of

20  reliance]."  (Dkt. No. 50 at 3:5-6.)  Beltran also sought leave to add additional class

21  representatives.  (*Id.* at 21:3-5.)  On September 20, 2012, the Court issued its Order.

22  After finding that Plaintiff's entire SAC was grounded in fraud and thus subject to Rule

23  9(b) (Order at 11:23-12:2), the Court held that Beltran had not adequately pled that she

24  relied on Avon's advertising campaign or its website.  (*Id.* at 9:4-16; 12:4-7.)  The Court

25  further noted that, "[t]o the extent that her UCL, FAL, and CLRA claims are derivative of

26  those claims, they are dismissed."  (*Id.* at 12:7-8.)  The Court also ruled that Beltran had

27  not alleged that she viewed PETA's "Do Not Test" List, and thus "claims reliant on

28  exposure to the PETA list are dismissed."  (*Id.* at 6:11-14.)  The Court gave Beltran

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

1  twenty-days to file an amended complaint consistent with its ruling.  (*Id*. at 14:18-19.)

2  ### C.   Plaintiff's Counsel Searches For New Plaintiffs

3  After Beltran filed the SAC, PETA – presumably concerned that Beltran could not

4  plead sufficient facts to state a claim against Avon – began soliciting new plaintiffs for

5  this case by posting a solicitation page on its website.  (*See* Request for Judicial Notice

6  ("RJN"), filed concurrently herewith, Ex. C.)  PETA's solicitation page asked consumers

7  to "Help Fight Back Against Avon!" and requested contact information from consumers

8  who purchased Avon products between January 2008 and September 2011.  Through this

9  recruiting effort, Plaintiffs' counsel located two new plaintiffs:  Tellez, a resident of

10  Dundee, Michigan, and Gutierrez, a resident of El Cajon, California.  (TAC ¶¶ 7, 8.)

11  ### D.   Beltran, Tellez And Gutierrez File The TAC

12  On October 10, 2012, Beltran, Tellez and Gutierrez filed the TAC, asserting claims

13  for fraudulent concealment and violations of the UCL and CLRA (Dkt. No. 60).  Despite

14  the Court's Order that Beltran amend her SAC, Beltran did not amend a single factual

15  allegation.  Instead, like she did in the SAC, Beltran alleged generally that she was

16  "exposed to and aware of" Avon's marketing and advertising campaign and that she

17  "recalls seeing a statement on Defendant's website that indicated that the company does

18  not conduct any animal testing on its products."  (TAC ¶ 6.)  Beltran did not offer any

19  further specificity as to what any particular advertisement stated, when she visited

20  Avon's website, or that she relied on Avon's advertising campaign or website to make

21  specific purchases.  Beltran also did not identify any new sources of exposure to Avon's

22  purported misrepresentations or omissions.  (*Id*.)

23  Plaintiffs Tellez and Gutierrez also allege that they were "exposed to and aware of"

24  Avon's advertising campaign and, like Beltran, they do not provide further detail about

25  what statements they saw or what products they bought after viewing those statements.

26  (*Id*. at ¶¶ 7, 8.)  Tellez further alleges that she began purchasing Avon products before

27  2002 and that, at an undisclosed time and location, she viewed an advertisement "that

28  touted Avon as 'the first major beauty company to stop using animals in the safety testing

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

of products . . . .'" (*Id.* at ¶ 7.)  Tellez does not allege that she purchased Avon products after viewing this advertisement.  Tellez also alleges that "an [unidentified] Avon sales representative" told her that Avon was "a cruelty-free company" and that at some unspecified time she saw Avon's name on a "Do Not Test" List published by PETA. (*Id.*)  Tellez does not identify any products she purchased after viewing PETA's "Do Not Test" List, nor does she allege whether she also saw PETA's disclosure that its "Do Not Test" List included companies that test on animals when required to do so by law.

Gutierrez alleges that, although she began purchasing Avon products in the 1990s, it was not until "in or about January 2010" that an Avon District Manager informed her that Avon does not test on animals.  (*Id.* at ¶ 8.)  Gutierrez does not indicate if this conversation occurred in connection with her purchase of Avon products.  Gutierrez also alleges that at an undisclosed time, she saw Avon's name on PETA's "Do Not Test" List, but like Tellez, she does not identify any products purchased after viewing the "Do Not Test" List, and does not state whether she also saw PETA's disclosure that its "Do Not Test" List included companies that test on animals when required to do so by law.  (*Id.*)

### E. Avon's Representations Regarding Animal Testing

Avon has a deep respect for animal welfare and has always disclosed its animal testing practices to the public.  (RJN, Exs. A and B.)  In June 1989, Avon announced a permanent end to animal testing, including testing performed in outside laboratories. (*Id.*)  For more than 20 years, Avon has independently substantiated the safety of its products without animal testing.  (*Id.*)  Some select products may be required by law in a few countries to undergo additional safety testing, which potentially includes animal testing, under the directive of a government or health agency.  (*Id.*)  In these instances, Avon will first attempt to persuade the requesting authority to accept non-animal test data.  When those attempts are unsuccessful, Avon must abide by local laws and submit products for additional testing.  (*Id.*)  Avon has been clear and consistent in disclosing its animal testing policies to the public.  In its 2004 Corporate Responsibility Report,

available on Avon's website,[1] Avon stated:

> Avon will conduct animal testing only when required by law, at
> the request of government health or medical authorities, and
> only after having first attempted to persuade the requesting
> authority to accept non-animal test data.

(RJN, Ex. B at p. 17.)  Indeed, when PETA included Avon on its "Do Not Test" List, it disclosed to the public that its "Do Not Test" List included companies that were required by law to submit products for animal testing.  (*See* RJN, Exs. D and E.)

## III.    STANDARD ON A MOTION TO DISMISS

A complaint is subject to dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) when it fails to identify a cognizable legal theory or states insufficient facts to support a cognizable legal theory.  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008).  The complaint must allege sufficient facts to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  Thus, a complaint must state a claim for relief that is "plausible on its face," and when the pleading alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . .'" and is therefore insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 557).  Although courts must construe all allegations in the complaint in the light most favorable to the Plaintiffs, courts need not concede the truth of conclusory legal allegations veiled as factual allegations, unjustified deductions of fact, or unreasonable inferences.  *Ashcroft*, 129 S. Ct. at 1949; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

---

[1] Avon's 2004 Corporate Responsibility Report can be accessed at http://www.avoncompany.com/documents/corporateresponsibility/resourcecenter/pdfs/corp_resp_report2004.pdf.  Relevant portions of Avon's 2004 Corporate Responsibility Report are attached as Exhibit "B" to the RJN, filed concurrently herewith.

1  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations

2  omitted).

3  **IV.   THE COURT SHOULD DISMISS BELTRAN FROM THIS CASE**

4          Having failed to amend any of her allegations from the SAC, Beltran should be

5  dismissed from this case because once again, and now **for the fifth time**, she has failed to

6  plead any claims with the requisite particularity.  In its Order, the Court ruled that

7  Beltran's fraud-based allegations concerning Avon's advertising campaign and website

8  failed to meet the specificity requirements of Rule 9(b).  (Order at 8:6-19; 9:4-16; 11:7-

9  11; 12:4-8.)  The Court also noted that, "[t]o the extent that [Beltran's] UCL, FAL, and

10  CLRA claims are derivative of those claims, they are dismissed." (*Id*. at 12:7-8.)  When

11  the Court provided Beltran with twenty days to amend her complaint after Beltran

12  represented that she could "provide even *more* particularity with respect to [her]

13  allegations [of reliance]," it meant for her to cure the SAC's Rule 9(b) shortcomings or,

14  to the extent possible, state other plausible bases for her claims.  (Dkt. No. 50 at 3:4-7;

15  Order at 14:18-19.)  Beltran chose not to do so, and instead she merely repeated the

16  allegations from the SAC in the TAC.  Because Beltran has not alleged sufficient facts in

17  the TAC to comply with Rule 9(b)'s requirements, let alone to "raise a right to relief

18  above the speculative level . . .[,]" the Court should dismiss Beltran from this case, with

19  prejudice.  *Twombly*, 550 U.S. at 555; *Odom*, 486 F.3d 541.

20          **A.      Beltran Has Not Pled A Claim For Fraudulent Concealment**

21          Beltran's claim for fraudulent concealment fails as a matter of law because, just

22  like in the SAC, Plaintiff's claim in the TAC is based exclusively on vague allegations

23  about Avon's advertising campaign and website.  (*See* TAC ¶¶ 6, 36, 39.)  As this Court

24  has already ruled, these allegations do not satisfy Rule 9(b).  (Order at 9:4-16; 11:6-11.)

25  *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  As with the

26  SAC, nowhere in the TAC does Beltran quote or cite specific language from Avon

27  referencing its testing policies.  Nor does Beltran indicate anywhere in the TAC that she

28  purchased Avon products only after reading or hearing about Avon's testing policy.

MEM. OF POINTS & AUTH. IN SUPPORT OF
                                                    MOTION TO DISMISS TAC

Further, Beltran does not even allege a specific time during the claimed ten plus years that she purchased Avon products when she read or heard such statements. Instead, Beltran continues to predicate her fraudulent concealment claims on conclusory allegations that Avon had a "marketing and advertising campaign touting the company as being cruelty free," and that she vaguely "recalls seeing a statement on [Avon's] website that indicated [Avon] does not conduct any animal testing on its products[.]" (TAC ¶¶ 6, 12, 16, 21.) Because Beltran roots her fraudulent concealment claims in the same allegations from the SAC that this Court declared to be inadequately pled under Rule 9(b), Beltran cannot maintain a fraudulent concealment claim.

During a meet and confer held between the parties on October 24, 2012, Plaintiffs' counsel indicated that he interpreted the Court's Order to mean that Beltran had sufficiently pled a fraudulent concealment claim based on the general duty to disclose, notwithstanding her deficient allegations regarding Avon's advertising campaign and website. Avon disagrees with this interpretation. While the Order does state that "a fact need only be material to trigger a duty to disclose" (Order at 10:9-22), this does not mean that Beltran alleged sufficient facts to trigger such a duty on Avon. Rather, under the "general rule" adopted by this Court (*see* Order at 10:20-22), a duty to disclose arises in only one of four ways: "it may be directly imposed by statute or other prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an incident of a relationship between the defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that makes it wrongful for him to remain silent." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 867 (2008). Of these scenarios, only the last one could apply in this case: "conduct by the defendant that makes it wrongful for him to remain silent." Beltran did not allege that Avon was bound by statute or contractual agreement to disclose its animal testing policies, or that Avon owed a fiduciary duty to disclose such facts. However, Beltran did allege that Avon made "a wholly inadequate and deceptive disclosure on its website that it was conducting some animal testing." (SAC ¶¶ 2, 13.) But this allegation was not enough. The Court

MEM. OF POINTS & AUTH. IN SUPPORT OF MOTION TO DISMISS TAC

1   found that Beltran "has not adequately alleged the specifics of the advertising campaign

2   or her visit to Avon's website under Rule 9(b)" and that, "without more specifics

3   regarding the misrepresentations, they cannot form the basis of a concealment claim."

4   (Order at 11:8-11.)   Therefore, while the Order suggests that Avon could conceivably

5   have a duty to disclose its animal testing policies based on alleged partial representations

6   regarding those policies, Beltran had not sufficiently alleged these partial representations

7   to give rise to such a duty.

8        The Court's Order does not impose, as Plaintiffs' counsel proposes, a broad duty to

9   disclose on any seller in an ordinary buy-sell transaction not involving one of the four

10  enumerated scenarios discussed above.   "California courts have generally rejected a

11  broad obligation to disclose," and the Court could not have possibly intended to create a

12  limitless liability theory obligating manufacturers to disclose every single fact about

13  global operations across innumerable categories on the off-chance that one consumer

14  might personally find such minutiae significant.   *Wilson v. Hewlett-Packard Co.*, 668

15  F.3d 1136, 1141, 1143 (9th Cir. 2012).   Rather, under the "general rule" adopted by the

16  Court, the duty to disclose arises only in specific situations, and only after a plaintiff has

17  alleged sufficient facts giving rise to such a duty.   Beltran did not allege those facts in the

18  SAC, nor has she done so in the TAC. [2]

19       To the extent Beltran construes the Order as limiting *Wilson* to product defect or

20  product performance cases, this limitation would be in error.   In *Wilson*, the plaintiffs

21  alleged that a manufacturer breached disclosure duties because, "had the omitted

22  information been disclosed, one would have been aware of it and behaved differently."

23  *Wilson*, 668 F.3d at 1142 (citation omitted).   In considering the duty of disclosure, the

24

25  [2] Although the Court's Order also referenced *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007),

26  *Falk* does not impose on Avon a broad disclosure duty absent sufficient allegations of a partial misrepresentation. Unlike here, in *Falk*, the safety consideration presented by a defective speedometer was integral to the district

27  court's finding of materiality.   *Falk*, 496 F. Supp. 2d at 1092-93.   Following *Falk*, the Ninth Circuit confirmed that no broad disclosure duties arise absent a safety issue, warranty, or affirmative misrepresentation.   *Wilson*, 668

28  F.3d at 1141-43 ("Even if this Court applies the factors from *Falk* regarding materiality . . . for the omission to be material, the failure must still pose safety concerns.").

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

1    Ninth Circuit relied predominantly on a case from this District, which was "not a

2    products liability case[,]" but nonetheless rejected any broad disclosure requirements in

3    non-product liability cases.  *See id.* at 1141-43 (citing *O'Shea v. Epson Am., Inc.*, No. CV

4    09-8063 PSG (CWx), 2011 U.S. Dist. LEXIS 85273, at *28 (C.D. Cal. July 29, 2011)).

5    In *O'Shea*, consumers filed a lawsuit because they were unhappy that the printer they

6    purchased "'wasted' more ink than" another printer they previously owned.  *Id*.  The

7    district court dismissed plaintiffs' omission-based claims, holding that California law

8    limits manufacturer disclosure duties to warranty obligations, safety issues, and

9    corrections of omissions or misrepresentations.  *Id*. at *26-28 (noting that it was "telling

10   that Plaintiffs [were] unable to identify any case where a court imposed a factually

11   analogous duty" on a manufacturer "to disclose information not concerning a safety-

12   related defect.").  Likewise, in *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2012

13   U.S. Dist. LEXIS 41012 (N.D. Cal. Mar. 26, 2012), a case entirely outside of the product

14   context, the district court relied on *Wilson* to find that plaintiffs failed to allege that

15   defendants had a duty to disclose their intent not to comply with statutorily-mandated

16   nursing staff levels at nursing facilities.  The court pointed to the fact that plaintiffs had

17   not alleged any safety issues caused by the inadequate nurse staffing, and noted that "the

18   Ninth Circuit has recently made clear that the duty to disclose is limited to omissions

19   which pose safety concerns."  *Id*. at * 9.[3]

20       Moreover, even if Beltran had alleged sufficient facts to give rise to a duty to

21   disclose, her fraudulent concealment claim still would remain deficient, as she has not

22   adequately pled that she was ever in a position to have been misled by Avon's purported

23   

---

[3] Cases pre-dating *Wilson* that found a duty to disclose in the "non-product performance" context do not apply here.  As the Ninth Circuit recognized, cases including *In re Mediscan Research, Ltd.*, 940 F.2d 558 (9th Cir. 1991), *Stickrath v. Globalstar, Inc.*, No. C07-1941 TE, 2008 U.S. Dist. LEXIS 105692 (N.D. Cal. Dec. 22, 2008) and *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001), "concern services rather than manufactured products."  *Wilson*, 668 F.3d at 1143.  Likewise, cases such as *People v. Toomey*, 157 Cal. App. 3d 1 (1984), which involved dissatisfaction with conditions placed on coupon booklets, and *Mass. Mut. Life Ins. Co. v. Super Ct. (Karges)*, 97 Cal. App. 4th 1282 (2002) and *Chern v. Bank of Am.*, 15 Cal. 3d 866, 544 P.2d 1310 (1976), which complained about company practices affecting product costs, do not implicate product manufacturing issues as they did in *Wilson* and as they do here.

MEM. OF POINTS & AUTH. IN SUPPORT OF
                                                                                  MOTION TO DISMISS TAC

1  nondisclosure.  In other words, the duty of disclosure does not excuse Beltran from

2  pleading facts showing that she relied on a representation that omitted the relevant

3  material.  *See Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928 (2010) ("Reliance is an

4  essential element of a fraudulent concealment claim.").  Beltran's claims are based solely

5  on allegations about Avon's advertising campaign and website, which this Court already

6  deemed to be insufficient.  (*See* TAC ¶¶ 6, 12, 16, 21; Order at 11:6-11.)  Beltran has not

7  alleged that she viewed or was exposed to any other source where Avon did not disclose

8  its animal testing policy.  For example, she has not alleged that she spoke with someone

9  about Avon's animal testing policy prior to purchasing a product or that she read a

10 product label prior to purchase (which she could not possibly allege because Avon does

11 not sell its products in stores). [4]

12 ### B.  Beltran Cannot State A Claim Under The UCL

13 Having elected not to amend her UCL claim in the TAC, Beltran fails to state a

14 claim for relief under the UCL.  In its Order, the Court expressly held that, "[t]o the

15 extent that [Beltran's] UCL . . . claims are derivative" of "her fraudulent

16 misrepresentation claims, and fraudulent concealment claims related to Avon's

17 [purported] general advertising campaign and website disclosures[,]" they must be

18 "dismissed."  (Order at 12:7-8.)  Yet, in the TAC, Beltran merely repeats the same fraud-

19 based allegations from the SAC. [5]  (SAC ¶ 6, TAC ¶ 6.)  *See also* Order at 11:23-26 ("Ms.

20 Beltran's entire SAC, including her UCL, FAL, and CLRA claims, [were] grounded in

21

22 [4] Avon understands that the plaintiffs in the related actions, *Stanwood v. Mary Kay Inc.*, C.D. Cal. Case No. 8:12-cv-0312 ("*Stanwood*") and *Herrera v. The Estee Lauder Cos., Inc.*, C.D. Cal. Case No. 8:12-cv-01169

23 ("*Herrera*"), did not amend their complaints consistent with the Court's Orders in those cases, and that on October 15, 2012, Mary Kay and Estee Lauder filed respective Motions to Certify the Court's Order for

24 Interlocutory Appeal or For Reconsideration (*Stanwood* Dkt. No. 55; *Herrera* Dkt. No. 20).  As the Court's Order in this case provides that Beltran has not alleged sufficient facts regarding Avon's advertising campaign or

25 website (which is all Beltran relies on to allege a duty to disclose), Beltran did not state a fraudulent concealment in the SAC.  Given the differences between Beltran's factual allegations and those asserted by plaintiffs in

26 *Stanwood* and *Herrera*, and in light of the fact that Beltran did file a TAC in this case, Avon does not believe that a Motion to Certify or a Motion for Reconsideration in this action is appropriate, and that this Motion to Dismiss

27 is the proper vehicle to challenge the adequacy of Plaintiffs' TAC.

28 [5] During the parties' meet and confer on October 24, 2012, Plaintiffs' counsel unabashedly admitted that the UCL and CLRA claims asserted in the TAC were derivative of the fraud claims.

-12-

MEM. OF POINTS & AUTH. IN SUPPORT OF MOTION TO DISMISS TAC

1  fraud" and "based on the same 'unified course of fraudulent conduct,' namely that Avon

2  made fraudulent misrepresentations or omissions about its testing on animals.").

3  Although the Court instructed Beltran to "'state with particularity the circumstances

4  constituting fraud' for all of these claims, including those alleging 'unfairness' under the

5  UCL," (*id.* at 11:26-28) she has chosen not to do so.

6  ### C.  Beltran's CLRA Claim Remains Deficient

7  The Court also should dismiss Beltran's CLRA claim because it wholly derives

8  from fraud allegations that fall short of Rule 9(b)'s standards.  Courts may decide at the

9  earliest phases of litigation that a CLRA claim fails to state a cause of action as a matter

10  of law.  *See Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (affirming

11  demurrer as to CLRA claim).  Under the CLRA, Plaintiffs must "show not only that a

12  defendant's conduct was deceptive but that the deception caused them harm." *Mass.*

13  *Mut. Life Ins. Co. v. Super. Ct. (Karges)*, 97 Cal. App. 4th 1282, 1292 (2002).  Like the

14  rest of the TAC, Beltran's CLRA claim repeats the same vague fraud-based allegations

15  from the SAC.  (*See* SAC ¶ 6, TAC ¶ 6.)  This Court warned Beltran that, "[t]o the extent

16  that her . . . CLRA claims are derivative" of "her fraudulent misrepresentation claims,

17  and fraudulent concealment claims related to Avon's [purported] general advertising

18  campaign and website disclosures[,]" they must be "dismissed." (Order at 12:4-8.)  As

19  noted above, *supra* Part IV.B., Beltran's entire SAC, including her CLRA claim, was

20  grounded in unspecific fraud-based allegations that were inadequately pled under Rule

21  9(b).  (*See id.* at 11:7-12:8.)  Because Beltran does not allege reliance on any particular

22  representations or omissions, but instead ties her CLRA claims to the same deficient,

23  unspecific allegations about Avon's advertising campaign and website, her CLRA claim

24  cannot stand.  *See Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007)

25  (A plaintiff asserting CLRA claims "sounding in fraud must establish that they actually

26  relied on the relevant representations or omissions").

27

28

## V.   THE COURT SHOULD DISMISS ALL CLAIMS ASSERTED BY NEW PLAINTIFFS RENEE TELLEZ AND NICHOLE GUTIERREZ

### A.   The Court Did Not Authorize Beltran To Add New Plaintiffs

As a threshold matter, the Court need not reach the merits of the claims asserted by newly added plaintiffs Tellez and Gutierrez because the Court did not grant Beltran's request to add new plaintiffs to this case.  In her Opposition to Avon's Motion to Dismiss the SAC, Beltran sought leave to add additional class representatives.  (Dkt. No. 50 at 21:3-5.)  While the Court granted Beltran leave to amend the SAC consistent with its ruling, the Order does not reference Beltran's request to add new plaintiffs, presumptively denying this request.  *See, e.g., Mendiondo,* 521 F.3d at 1102 ("By not addressing plaintiffs' request for leave to amend, the district court's order 'necessarily entailed a denial of the [request] . . .'") (citation omitted).  Beltran's inclusion of Tellez and Gutierrez without having obtained leave to add them to this case is improper.

### B.   Tellez And Gutierrez Are Improper Class Representatives[6]

Even if the Court had granted Beltran leave to add new plaintiffs, Tellez and Gutierrez would not be adequate class representatives and should be dismissed.  As the U.S. Supreme Court recognized in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), because class action lawsuits present opportunities for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Id.*

---

[6] Tellez and Gutierrez do not have standing to bring any of their claims because they have not alleged that they suffered an actual injury as required by Article III of the U.S. Constitution.  *See Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11, 124 S. Ct. 2301, 2308, 159 L. Ed. 2d 98 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action.")  When Avon raised this argument with respect to Beltran, the Court, relying on *Kwikset Corp. v. Super. Ct. (Benson)*, 51 Cal. 4th 310, 246 P.3d 877 (2011), disagreed, holding that Beltran pled a sufficient injury based on her allegations that, had she known the truth about Avon's animal testing policies, she would not have purchased Avon products, and thus Beltran suffered an economic injury in that she "paid more for the products than she actually valued them."  (Order at 5:4-28).  Although Tellez and Gutierrez offer similarly conclusory allegations of injury (*see* TAC ¶¶ 7-8), unlike the plaintiff in *Kwikset*, Tellez and Gutierrez have not alleged sufficient facts showing that they would not have purchased Avon products had they known about Avon's animal testing policies.  Indeed, Gutierrez alleges that she began purchasing Avon products in the 1990s, and it was not until 2010 that she was told Avon did not test on animals.  (TAC ¶ 8.)  These allegations do not satisfy the "but for" test announced in *Kwikset*, and do not establish that Tellez and Gutierrez have standing to sue.

at 100.  Citing *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782, 790-91 (E.D. La. 1977), the Court identified potential abuses to include "the heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding."  452 U.S. at 101, n.12.

Based on the timing of Beltran's request to add new class representatives, it appears that Tellez and Gutierrez were improperly solicited to serve as named plaintiffs, making them inadequate representatives.  In or around August 2012, after Beltran filed the SAC, PETA began soliciting new representatives for this case by posting a solicitation page on its website.  (*See* RJN, Ex. C.)  Unlike PETA's usual requests that consumers boycott products from companies who test on animals, this time PETA actively recruited consumers to "Help Fight Back Against Avon!" by requesting contact information from consumers who purchased Avon products between January 2008 and September 2011.  (*Id.*)  PETA's solicitation was misleading and violated California Rule of Professional Conduct 1-400(D)(2), as it suggested that Avon had misled consumers about its animal testing policies when Avon had disclosed these very policies on its own website.  (*See* RJN, Exs. A and B.)  In addition, PETA's solicitation failed to provide the disclosures required by California Rule of Professional Conduct 1-400(D)(3).[7]  The questionable circumstances surrounding Tellez and Gutierrez's recruitment render them inadequate class representatives.  *See Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS 48428, at *10 (E.D. Cal. May 28, 2009) (declining to certify class in part because questions concerning improper recruitment of a class representative "necessarily w[ould] devolve into disputes over her unique circumstances, to the detriment of the claims of absent class members.").

---

[7] Standard 12 to California Rule of Professional Conduct 1-400 provides that an advertisement must "state the name of the member responsible for the communication," and "[w]hen the communication is made on behalf of a law firm, the communication shall state the name of at least one member responsible for it."

MEM. OF POINTS & AUTH. IN SUPPORT OF MOTION TO DISMISS TAC

Tellez and Gutierrez are also inadequate class representatives because it appears that PETA and Plaintiff's counsel are "the driving force behind" this litigation. *Bodner*, 2007 WL 1223777, at *1-2. In *Bodner*, the court refused to certify a class where the named plaintiff was solicited by a newspaper advertisement seeking a plaintiff for a lawsuit for which the complaint had already been drafted. Likewise here, Plaintiff's counsel and its predecessor counsel "constructed [this] lawsuit before it" ever located Tellez and Gutierrez. Such a "cart before the horse" approach to litigation is not the appropriate mechanism for vindication of legal rights. *Sanchez,* 2009 U.S. Dist. LEXIS 48428, at *10. *See also Meachum v. Outdoor World Corp.*, 654 N.Y.S.2d 240, 251, 171 Misc. 2d 354, 369 (1996) ("Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification.").

## C.   Tellez And Gutierrez Have Not Pled Their Claims With The Requisite Specificity Mandated By Rule 9(b)

Even if Tellez and Gutierrez were properly added to this lawsuit, they have not alleged facts sufficient to state a claim against Avon and should be dismissed on this ground as well. Like Beltran, Tellez and Gutierrez predicate all their claims on fraud allegations that do not comply with Rule 9(b). As discussed above, *supra* Part IV, parties alleging fraud must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Rule 9(b)'s pleading standard applies to all fraud-based claims in federal court, including fraudulent concealment and claims brought under the UCL and CLRA. (*Accord* Order at 8:6-19; 11:6-12:2.) Thus, "it is not sufficient to simply allege exposure to a long-term advertising campaign." (*Id*. at 8:11-13.)

Tellez and Gutierrez have not met the specificity threshold of Rule 9(b). Instead, they base their claims on alleged exposure to an "extensive and long term marketing and advertising campaign touting the company as being cruelty free[.]" (TAC ¶¶ 7-8.) These broad allegations do not specify when or the manner in which the allegedly misleading advertisements were broadcast, how frequently they were broadcast, what was said, when Tellez or Gutierrez were exposed to the advertising, or whether they bought particular

MEM. OF POINTS & AUTH. IN SUPPORT OF MOTION TO DISMISS TAC

1    products in reliance on said campaign.  Accordingly, just like Beltran, Tellez and

2    Gutierrez's general advertising campaign allegations do not support their claims.  (*See*

3    Order at 8:9-19.)

4         Tellez and Gutierrez's additional factual allegations also fail to comply with Rule

5    9(b).  For example, Tellez alleges that she "viewed one Avon advertisement that touted

6    Avon as 'the first major beauty company to stop using animals in the safety testing of

7    products . . . .'"  (TAC ¶ 7.)  While this allegation identifies a portion of a particular

8    statement, it does not provide the complete statement, making it impossible for Avon and

9    the Court to determine whether the entire statement is misleading.  *See Von Grabe v.*

10   *Sprint PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. Cal. 2003) (the purpose of Rule 9(b) is to

11   ensure that defendants accused of fraud have enough notice of the allegations to raise a

12   defense).  Moreover, despite the "who, what, when, where and how" requirements of

13   Rule 9(b), Tellez's allegation does not specify when she saw this statement, whether this

14   statement was made as part of a company sanctioned advertisement, or even if this

15   statement appeared on a website, in a television commercial, or in a print advertisement.

16   *Kearns*, 567 F.3d at 1124.  Tellez also fails to allege whether this statement was issued in

17   connection with the sale of Avon products or whether she purchased a single Avon

18   product in reliance on this statement.

19        Tellez and Gutierrez's allegations regarding statements made to them by persons

20   purportedly affiliated with Avon also fail to meet the requirements of Rule 9(b).  Tellez's

21   vague allegation that "on at least one occasion" she was told by an ISR that Avon was a

22   "cruelty-free company" is inadequate, as she does not identify this ISR, the relationship

23   between the ISR and Tellez (was she selling Avon products to Tellez?), when this

24   representation was made, the context in which the representation was made and what

25   exactly she was told, and what specific products, if any, Tellez purchased in reliance on

26   this representation.  (TAC ¶ 7.)  All of these details are critical, as ISRs are independent

27   contractors who make their own business decisions.  Avon is not responsible for

28   statements made by ISRs that conflict with Avon's stated policies.  Similarly, Gutierrez's

1    allegation that, "in or about January 2010, she met with a District Manager for Avon

2    based in San Diego named Judy Elliot who told her that Avon does not test on

3    animals[,]" also fails to plead the "who, what, when, where and how" required by Rule

4    9(b). (Order at 8:17-19.) First, "in or about January 2010" is too vague for Avon and the

5    Court to determine the "when" of the alleged representation. Second, Gutierrez has not

6    adequately pled the contents of her alleged conversation; merely stating a conclusion that

7    someone made generalized representations to her is insufficient, as Gutierrez has not

8    specifically pled what particular comments formed the basis of this perceived

9    representation. Third, Gutierrez has not amply pled "where" the statements were made;

10   her vague allegations do not specify the circumstances of her purported meeting with

11   Judy Elliot, including whether it occurred on a one-on-one basis, at a convention, at a

12   sales party, telephonically, in San Diego, California (where the District Manager was

13   allegedly based), in El Cajon, California (where Gutierrez lives), or elsewhere. Gutierrez

14   also fails to indicate if these comments were made in connection with the sale of an Avon

15   product and whether she bought Avon products in reliance on this representation.

16   Indeed, given her allegation that she first purchased Avon products "sometime in the

17   1990s," it stands to reason that Gutierrez **did not** purchase Avon products in reliance on a

18   representation made to her in January 2010.

19        Finally, Tellez and Gutierrez's allegations that they viewed the PETA "Do Not

20   Test" List also fail to satisfy Rule 9(b), as they do not specify when Tellez and Gutierrez

21   actually viewed the PETA List. (*Id*. at ¶¶ 7-8.) This timing is vital because, as early as

22   2001, PETA informed consumers that its "Do Not Test" List included companies that

23   "stated that [they] do [] not conduct any animal tests that are not required by law." (RJN

24   Ex. D.) It was not until 2012 that PETA surreptitiously changed its policy to include only

25   companies that have "verif[ied] that neither they nor their ingredient suppliers conduct or

26   commission *any* animal tests." (RJN Ex. F.) Beyond timing ambiguities, Tellez and

27   Gutierrez do not specify what products, if any, they purchased in reliance on the "Do Not

28   Test" List and when those purchases were made.

MEM. OF POINTS & AUTH. IN SUPPORT OF
                                                    MOTION TO DISMISS TAC

### D. Tellez And Gutierrez Cannot State A Claim For Fraudulent Concealment

Given the deficiencies in their factual allegations, Tellez and Gutierrez cannot state a claim for fraudulent concealment. To establish fraudulent concealment, a plaintiff must show that: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose that fact; (3) the defendant purposely concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as she did if she had known of the fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression. *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1126-27 (2010). As with Beltran, Tellez and Gutierrez have not alleged facts showing that Avon had a duty to disclose its animal testing policies. Disclosure duties arise only when a company needs to correct an affirmative misrepresentation, protect consumer safety, or comply with warranty obligations. *Wilson*, 668 F.3d at 1141-42. *See also Blickman Turkus, LP*, 162 Cal. App. 4th at 867. Tellez and Gutierrez have not alleged a safety or warranty issue in the TAC. While Tellez alleges that she saw an advertisement touting Avon as "'the first major beauty company to stop using animals in the safety testing of products . . . .'" (TAC ¶ 7) and Gutierrez alleges that she was told by "Avon employees or sales representatives . . . that Avon does not test on animals" (TAC ¶ 8), these allegations do not adequately plead the specifics of Avon's purported representations, and do not give rise to a duty to disclose. Indeed, Avon has already established that since at least 2004, it disclosed on its website that it tests on animals when required to do so by law, belying any implications by Tellez and Gutierrez that Avon made an affirmative misrepresentation. (*See* RJN Ex. B.) Hence, because Tellez and Gutierrez have failed to adequately plead the existence of safety issues, warranty non-compliance, or affirmative misrepresentation, they have not alleged facts sufficient to give rise to a duty to disclose.[8]

---

[8] Tellez and Gutierrez may counter that Avon had a duty to disclose corrections to representations made by PETA, but this is wrong. (TAC ¶¶ 7-8.) A company can only be liable for indirect misrepresentation by a third party when it intended or had reason to expect that the third party would make a statement that would be

Even if the Court concludes that *Tellez* and *Gutierrez* have alleged facts showing that Avon had a duty to disclose, their fraudulent concealment claims still fail under Rule 9(b), as they have not alleged facts showing that they relied on a representation that omitted relevant material. *Sevidal*, 189 Cal. App. 4th at 928. *Tellez* and *Gutierrez* have not alleged facts demonstrating that they purchased a single Avon product in reliance on Avon's advertising campaign, statements by ISRs, or PETA's "Do Not Test" List. Thus, regardless of whether Avon had a duty to disclose its animal testing policy (which Avon contends it did not), *Tellez* and *Gutierrez*'s factual allegations still fall short of stating a fraudulent concealment claim.

### E.   Tellez And Gutierrez Have Not Stated A Claim Under The UCL

*Tellez* and *Gutierrez* have not stated a claim under any prong of the UCL. As an initial matter, *Tellez* cannot maintain a UCL claim because she is not a California resident. California law has a presumption against the extraterritorial application of its statutes. *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000). Accordingly, California courts will not apply the UCL to non-California residents for conduct that took place outside of California. *Sullivan*, 662 F.3d at 1271. As *Tellez* alleges that she "is an individual residing in Dundee, Michigan" and has not alleged that she purchased Avon products or was misled by Avon in California, her UCL claim must be dismissed. (TAC ¶ 7.)[9]

### 1.   Tellez and Gutierrez Cannot Allege Unlawful Conduct

*Tellez* and *Gutierrez* have not alleged that Avon acted unlawfully. The UCL "borrows" violations from other laws for independent action under the UCL's unlawful

---

"repeated and acted upon by the plaintiff." *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605 (1995). *Tellez* and *Gutierrez* have not proffered any facts showing that Avon had such intentions or expectations with respect to PETA or that PETA would publish misleading statements regarding Avon's animal testing policies. Because Avon was forthcoming about its policies on its website, it is illogical to conclude that Avon would intend or expect a reasonable consumer of its products to rely on representations of a third party that contradict Avon's own public statements. (*See* RJN Exs. A and B.)

[9] The same holds true with respect to *Tellez*'s CLRA claim. *Tellez* cannot maintain a CLRA claim because she is not a California resident and she has not alleged that she purchased Avon products in California. (TAC ¶ 7.) *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006).

1    prong.  *Farmers Ins. Exch. v. Super. Ct. (The People)*, 2 Cal. 4th 377, 383, 826 P.2d 730

2    (1992).  Thus, an unlawful practice under the UCL is "anything that can properly be

3    called a business practice and that at the same time is forbidden by law."  *People v.*

4    *McKale*, 25 Cal. 3d 626, 634, 602 P.2d 731 (1979) (citation omitted).  When a plaintiff

5    fails to establish a predicate violation of law, courts generally dismiss corresponding

6    UCL claims.  *See Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 863 F. Supp. 1109,

7    1118 (N.D. Cal. 1994) (dismissing UCL claim where defendants were not proper subjects

8    of the alleged underlying licensing requirement).  Here, Tellez and Gutierrez base their

9    UCL claims on Avon's purported violation of California Business and Professions Code

10   Section 17500 (the "FAL") (TAC ¶ 46).  As this Court has already dismissed the FAL

11   claims, the FAL cannot form the basis of a UCL claim here.  (Order at 13:4-8).

12                **2.    Tellez And Gutierrez Cannot Allege Unfair Conduct**

13          Neither Tellez nor Gutierrez can allege that Avon acted unfairly under the UCL.

14   Conduct is deemed unfair when it is likely to deceive the general public.  *People v.*

15   *Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 131 (1989).  A court can determine

16   whether the public is likely to be deceived as a matter of law.  *Shvarts*, 81 Cal. App. 4th

17   at 1158; *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1214-15 (2003) (holding that the

18   resolution of UCL issues as a matter of law at the pleading stage is appropriate).[10]

19          Generally, "California courts have viewed fraudulent concealment actions under

20   [the UCL] with some skepticism."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

21   1026 (9th Cir. 2008); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973

22   (N.D. Cal. 2008) ("'We cannot agree that a failure to disclose a fact one has no

23   affirmative duty to disclose is likely to deceive anyone within the meaning of the

24   UCL.'") (citations omitted).  Tellez and Gutierrez have not stated any allegations that

25

26   [10] While there have been some cases that allege false or deceptive conduct and raise factual issues not
     appropriately dismissed at the pleading stage, this does not preclude the court from dismissing these claims at this
27   time. *Cf. Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (holding that the labeling before
     the court contained "a number of features" that could be "likely to deceive," but noting that in certain situations, a
28   motion to dismiss is appropriate to dispose of a claim brought under California's consumer protection statutes).

                                        -21-                    MEM. OF POINTS & AUTH. IN SUPPORT OF
                                                                     MOTION TO DISMISS TAC

would justify the Court's turning from this tradition of skepticism.  Tellez and Gutierrez

vaguely allege that Avon engaged in a long-term marketing and advertising campaign

without "adequately disclosing" its animal testing policy, but they do not support this

conclusion with any facts.  (*See* TAC ¶¶ 21, 24, 42, 44.)  It is indisputable that Avon must

comply with certain foreign laws regarding animal testing and that Avon has constantly

been forthcoming regarding the same.  (*See* RJN Exs. A and B.)  Moreover, Tellez and

Gutierrez's suggestions that PETA's inclusion of Avon on its "Do Not Test" List was an

unfair misrepresentation attributable to Avon, and that Avon should have known that

PETA's statements were likely to deceive consumers, are absurd.  Avon is not

responsible for an independent party's decisions regarding its proprietary list, including

any changes it may make to relevant criteria.  Tellez and Gutierrez have not shown, and

cannot show, that a reasonable consumer would disregard Avon's statements in favor of

an unrelated third party's representations about Avon's products.

### 3.     Tellez And Gutierrez Cannot Allege Fraudulent Conduct

Tellez and Gutierrez also cannot state a claim for relief under the fraud prong of

the UCL.  To maintain a claim under the fraudulent prong, Tellez and Gutierrez must

allege reliance on misrepresentations or omissions that are likely to deceive the public.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 325, 207 P.3d 20 (2009).  Additionally,

they must show that *reasonable* consumers "had an expectation or an assumption about"

the utility of the product(s) at issue.  *See Daugherty v. Am. Honda Motor Co.*, 144 Cal.

App. 4th 824, 838 (2006).  Courts must dismiss claims brought under the UCL's fraud

prong when alleged misrepresentations or omissions are not likely to deceive a

reasonable consumer.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995)

(upholding dismissal of claims where plaintiff could not establish that a sweepstakes

notification was likely to deceive a reasonable consumer); *Daugherty*, 144 Cal. App. 4th

at 838 (rejecting argument that defendant's failure to disclose a defect in the car's engine

at the time of sale and failure to give adequate notice of oil leak potential were "'likely to

deceive' those customers 'into believing that no such defect exists'").

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO DISMISS TAC

Here, Tellez and Gutierrez rely largely on the same fraud allegations that Beltran pled in the SAC.  The Court decreed in its Order that said fraud claims were insufficient under Rule 9(b), and that to the extent any UCL claims were derivative therefrom, they were dismissed. (Order at 12:4-8.)  Hence, Tellez and Gutierrez cannot rely on these allegations to state a claim under the UCL's fraudulent prong.  Further, as discussed above, *supra* Part V.C. & V.D, Tellez and Gutierrez have not alleged ample facts showing that Avon's purported disclosures and omissions would likely deceive reasonable consumers or that they relied on such when deciding to purchase unspecified products at unspecified times from unspecified sources.  Moreover, Tellez and Gutierrez's insinuation that PETA's "Do Not Test" List birthed an expansive duty for Avon to publish anything beyond its clear animal testing policy is nonsensical.  Indeed, PETA's inclusion of Avon on its "Do Not Test" List was consistent with PETA's policy, which included companies that test on animals when required to do so by law.  (*See* RJN, Exs. D and E.)  It was only after PETA changed its criteria that it removed Avon from the List. (*See* RJN, Ex. F.)  These changes did not result from any change in Avon's policies or practices, which have remained consistent.  (*See* RJN, Exs. A and B.)

**F.     Tellez And Gutierrez Have Failed To State A Claim Under The CLRA**

The Court also should dismiss Tellez and Gutierrez's CLRA claim because they have not alleged facts showing that Avon violated the CLRA.  The CLRA prohibits unfair methods of competition and "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ."  Cal. Civ. Code § 1770(a).  Failure to adequately allege the existence of such a transaction can lead to dismissal.  *See Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 232 (2007) ("the Legislature unmistakably narrowed the act's scope by limiting liability to transactions involving the actual or contemplated sale or lease of goods and services"; providing things "*separate and apart* from the sale or lease of any specific good or service falls outside the scope of section 1770").  Tellez and Gutierrez have not alleged facts showing that Avon was involved in "a transaction

-23-

intended to result or which results in the sale or lease of goods or services . . . ." Cal. Civ. Code § 1770(a).  While they reference conversations with ISRs about Avon's business practices, they do not allege that these conversations were made in connection with a sales transaction or that they were even tied to a specific product.  Nor is there any allegation that these conversations influenced Tellez and Gutierrez's decisions to purchase an Avon product.  (TAC ¶¶ 7-8.)  As noted above, these facts are important in the context of Avon, because ISRs are independent contractors who run their own businesses, and Avon cannot be held responsible for comments made by ISRs that differ from Avon's policies.  Likewise, Tellez and Gutierrez's alleged viewing of PETA's "Do Not Test" List also does not implicate the CLRA, as it does not involve a transaction involving Avon.  The "Do Not Test" List is not maintained by Avon, and does not identify nor purport to sell a single Avon product.  (*See* RJN Ex. F.)  Because Tellez and Gutierrez have failed to allege any tangible connection between their purported purchases and their conversations with ISRs or their review of PETA's "Do Not Test" List, they cannot maintain a CLRA claim against Avon.

Even if Tellez and Gutierrez had identified a transaction involving an Avon product, they still cannot state a CLRA claim because, as discussed above, they have not alleged reliance on Avon's purported representations or omissions.  *Buckland*, 155 Cal. App. 4th at 811 ("[A]ctual reliance is an element of a CLRA claim sounding in fraud.").  Tellez and Gutierrez have not shown that they purchased an Avon product after viewing an advertisement, speaking with Avon or visiting PETA's website.  (TAC ¶¶ 7-8, 25.)

Another basis for dismissing the CLRA claim is that Plaintiffs cannot obtain the relief they seek.  Plaintiffs did not provide Avon with written notice of their CLRA claim, and thus their remedies are limited to injunctive relief.  (*See* TAC ¶ 56; Cal. Civ. Code § 1782.)  Yet, the injunctive relief Plaintiffs seek is a mandatory disclosure on Avon's website and packaging, which amounts to unconstitutionally compelled speech.  (TAC ¶ 56.)  Plaintiffs cannot use the CLRA to encroach upon Avon's First Amendment rights. *See Glickman*, 521 U.S. at 480-81, 117 S. Ct. at 2144, 138 L. Ed. 2d 585 (1997)

("commercial speech is not subject to any categorical exclusion from First Amendment protection, and indeed is protectible as a speaker's chosen medium of commercial enterprise . . ."). Indeed, "compelling cognizable [commercial] speech officially is just as suspect as suppressing it . . . ." *Id. See also Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 9, 21, 106 S. Ct. 903, 89 L. Ed. 2d 1 (1986) (striking down an order compelling a utility company to place a third party's newsletter in its billing envelopes on grounds that the California Public Utilities Commission could not "force [a company] to alter [its] speech to conform with an agenda [it] d[id] not set."); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73 (2d Cir. 1996) (holding that dairy manufacturers could not be forced to label products as derived from hormone-treated cows because companies cannot be forced to disclose information unrelated to a reasonable concern for health, safety or another substantial governmental interest.) Here, Plaintiffs cannot obtain the injunction they seek because they are trying to force Avon "to alter [its] speech to conform with an agenda [it] d[id] not set[,]" namely testing practices on products marketed and sold abroad, which are unrelated to product safety. *Pac. Gas & Elec. Co.*, 475 U.S. at 9, 20-21. The Court should thus dismiss Plaintiffs' CLRA claims because they seek relief they cannot obtain. [11]

## VI.   CONCLUSION

For the foregoing reasons, Avon respectfully requests that the Court dismiss the TAC without leave to amend.

DATED: October 30, 2012          PAUL HASTINGS LLP


By:_____/s/_____
                    Katherine F. Murray

Attorneys for Defendant
AVON PRODUCTS, INC.

---

[11] The Court should also dismiss the CLRA claim because the TAC does not include an affidavit of venue. *See* Cal. Civ. Code § 1780(d); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing CLRA claims because plaintiffs did not file affidavits required by statute).