Brian Kabateck, Esq., SBN 152054
    (bsk@kbklawyers.com)
Richard Kellner, Esq., SBN 171416
    (rlk@kbklawyers.com)
Scott M. Malzahn, SBN 229204
    (sm@kbklawyers.com)
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA BELTRAN, an individual; RENEE TELLEZ, an individual; NICHOLE GUTIERREZ, an individual; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AVON PRODUCTS, INC., a New York Corporation, <br><br> Defendant. | Case No.: CV12-02502 CJC (ANx) <br><br> Related Case Nos. 8:12-CV-0312 CJC (ANx) and 8:12-CV-01169 CJC (ANx) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** <br><br> [Declarations of Marina Beltran, Nichole Gutierrez, Richard Kellner, and Scott Malzahn; Application to File Under Seal; and [Proposed] Orders filed concurrently herewith] <br><br> <u>Hearing</u> <br> Date:        July 29, 2013 <br> Time:        1:30 p.m. <br> Courtroom: 9B <br> Judge:       Hon. Cormac J. Carney |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 29, 2013 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom No. 9B of the above entitled Court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701-4516, Plaintiffs Marina Beltran, Renee Tellez and Nichole Gutierrez will and hereby move this Court for an Order:

1.      Certifying this action as maintainable as class action;

2.      Certifying a Class consisting of all persons who purchased cosmetic products of Avon in the State of California at any time from March 23, 2008 through December 2011.

3.      Certifying Plaintiffs Marina Beltran and Nichole Gutierrez as representatives of the Plaintiff Class, and appointing their counsel, Brian S. Kabateck, Richard L. Kellner and Scott M. Malzahn of Kabateck Brown Kellner LLP as class counsel.

This motion is made following a conference of counsel pursuant to Local Rule 7-3. This motion is based on this notice, the accompanying memorandum of points and authorities, the accompanying declarations, the records and files in this action, and on such other argument and evidence the Court may consider at the hearing of the motion.

Dated:  May 10, 2013                    KABATECK BROWN KELLNER LLP


By: s/ Scott M. Malzahn
    Brian S. Kabateck
    Richard L. Kellner
    Scott M. Malzahn

    *Counsel for Plaintiffs and the class*

1

Brian Kabateck, Esq., SBN 152054
  (bsk@kbklawyers.com)
Richard Kellner, Esq., SBN 171416
  (rlk@kbklawyers.com)
Scott M. Malzahn, SBN 229204
  (sm@kbklawyers.com)
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA BELTRAN, an individual; RENEE TELLEZ, an individual; NICHOLE GUTIERREZ, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AVON PRODUCTS, INC., a New York Corporation,<br><br>Defendant. | Case No.: CV12-02502 CJC (ANx)<br><br>Related Case Nos. 8:12-CV-0312 CJC (ANx) and 8:12-CV-01169 CJC (ANx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>[Declarations of Marina Beltran, Nichole Gutierrez, and Scott Malzahn; and [Proposed] Order filed concurrently herewith]<br><br>(REDACTED)<br><br>Hearing<br>Date:        July 29, 2013<br>Time:        1:30 p.m.<br>Courtroom: 9B<br>Judge:       Hon. Cormac J. Carney |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   PROCEDURAL HISTORY ....................................................................... 3

III.  FACTUAL BACKGROUND....................................................................... 4

    A.    History of Avon's Representations And Non-Disclosures On The Issue Of Animal Testing........................................................................... 4

    B.    Avon's Continuing Attempts To Conceal That Its Products Are Tested On Animals And The Public Backlash ...................................... 7

IV.   ARGUMENT............................................................................................... 9

    A.    This Courts' Rulings In *Johnson* Strongly Support Class Certification.    10

    B.    Plaintiffs Beltran and Gutierrez Have Standing............................... 12

    C.    The Requirements Of Rule 23(a) Are Satisfied. .............................. 12

        1.    The Class Is So Numerous That Individual Joinder Is Impracticable........................................................................... 13

        2.    Common Questions of Fact and Law Exist. ....................... 13

        3.    The Class Representatives' Claims are Typical.................... 14

        4.    The Class Representatives Will Fairly and Adequately Represent the Class. ........................................................... 15

            a.    Plaintiffs are Adequate Representatives. ...................... 15

            b.    Class Counsel Is Competent. ...................................... 16

    D.    Plaintiff's Claims Should Be Certified Under Rule 23(b)(3)............ 16

        1.    Common Issues Predominate........................................... 17

            a.    This Consumer Fraud Action Arises Out Of Avon's Uniform Failure To Disclose That Its Products Are Tested On Animals...18

            b.    Proof Of Individual Reliance, Causation, And Damages/Restitution For Absent Class Members Is Not Required For Plaintiffs To Prevail On Their Claims. ................................. 20

            c.    The Issue of Materiality Is A Common Question. ...................... 21

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

2.   A Class Action is Superior ................................................................. 23

V.   CONCLUSION ....................................................................................... 25

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TOA

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591(1997)........................................................................................23

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds,*
___ U.S. ___, 133 S. Ct. 1184 (2013)..............................................................1

*Cartwright v. Viking Industries, Inc.,*
2009 WL 2982887 (E.D. Cal. Sept. 14, 2009)..................................... 11, 20

*Danis v. USN Communs., Inc.,*
189 F.R.D. 391(N.D. Ill. 1999) .....................................................................14

*Dukes v. Wal-Mart Stores, Inc.,*
___ U.S. ____, 131 S.Ct. 2541 (2011) ..................................................... 11, 13

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) .........................................................................13

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) .......................................................................15

*Grays Harbor Adventist Christian School v. Carrier Corp.,*
242 F.R.D. 568 (W.D. Wash. 2007) ..............................................................11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir.1998) ...................................................13, 14, 15, 17

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992 ..........................................................................14

*In re High-Tech Employee Antitrust Litig.,*
WL 1352016 (N.D.Cal. Apr. 25, 2013) .........................................................17

*In re Nat'l Western Life Ins. Deferred Annuities Litig.,*
268 F.R.D. 652 (S.D. Cal. 2010) ............................................................. 14, 20

*In re Tobacco II Cases,*
46 Cal.4th 298 (2009) ....................................................................3, 11, 20, 21

*In re Vioxx Class Cases,*
180 Cal.App.4th 116 ........................................................................................1

*Jimenez v. Domino's Pizza, Inc.,*
238 F.R.D. 241 (C.D. Cal. 2006) ...................................................................16

*Johns v. Bayer Corp.,*
280 F.R.D. 551 (S.D.Cal. 2012) ............................................................. 21, 22

*Johnson v. General Mills, Inc.,*
276 F.R.D. 519 (2011) .............................................................................passim

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Kwikset v. Superior Court*,
51 Cal.4th 310 (2011) .................................................................. 12

*Lee v. Carter-Reed Co., L.L.C.*,
203 N.J. 496 (2010).................................................................... 23

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........................................................ 15

*Lozano v. AT&T Wireless Services, Inc.*,
504 F.3d 718 (9th Cir. 2007) ........................................................ 15

*McPhail v. First Command Fin. Planning, Inc.*,
247 F.R.D. 598 (S.D. Cal. 2007) .................................................... 14

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012) ................................................... 13, 14

*Phillips Petroleum Compnay v. Shutts*,
472 U.S. 797 (1985) ................................................................... 25

*Plascencia v. Lending 1st Mortg.*,
2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) .................................... 18

*Plascencia v. Lending 1st Mortg.*,
259 F.R.D. 437 (N.D. Cal. 2009) ................................................... 18

*Stearns v. Ticketmaster*,
655 F.3d 1013 (9th Cir. 2011) ........................................................ 1

*Steroid Hormone Prod. Cases*,
181 Cal.App.4th 145 (2010) .......................................................... 12

*Tait v. BSH Home Appliances Corp.*,
2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ................................ 18, 21

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ........................................................ 23

*Vinh Nguyen v. Radient Pharmaceuticals Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ................................................... 13

*Wiener v. Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009) ................................................... 23

*Williams v. Gerber Products Co.*,
523 F.3d 934 (9th Cir. 2008) ........................................................ 22

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) .................................................... 1

**Other Authorities**

Fed. R. Civ. P 23(a)............................................. 10, 13, 14, 15
Fed. R. Civ. P. 23(b)(3)........................................... 10, 16, 23

iv

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Newberg*, § 4:30 (4th ed. 2002) ....................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Marina Beltran and Nichole Gutierrez seek certification of a California-only class based upon defendant Avon Products, Inc.'s ("Defendant" or "Avon") violation of California's UCL law, the CLRA and its fraudulent omission of the fact that animal testing has been actually done on its cosmetic products.  It is well established that fraudulent omission claims in connection with product sales are ideally suited for class treatment.  Here, Avon failed to disclose to the public that some of its products are actually tested on animals – perpetuating its self-proclaimed myth that Avon products are not tested on animals.  While the materiality of the omission will be a common issue to be determined at trial, Avon cannot argue that class members actually were told that animal testing occurs.  Strikingly, a key Avon executive had to admit (at his deposition) that he knew nothing about the animal testing on Avon products until he was preparing for his deposition!

As this Court recently ruled in *Johnson v. General Mills, Inc.*, 276 F.R.D. 519 (2011) (denying motion to decertify), class treatment is appropriate in situations where the "presumption of reliance" can be applied to material, common misrepresentations and/or omissions to the class. *Id.* at 522; *Stearns v. Ticketmaster*, 655 F.3d 1013, 1022 (9th Cir. 2011) (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129).  Significantly, in the *Johnson* case, this Court ruled that the issue of materiality – whether a reasonable person would attach importance to the existence or nonexistence of a fact in determining his or her purchase of a product – is an "objective standard . . . susceptible to common proof." *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (2011), quoting *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011).

This Court's analysis has been recently bolstered by *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds* ["*Amgen*"], ___ U.S. ___, 133 S. Ct. 1184, 1194-95 (2013), where the United States Supreme Court ruled that certification is appropriate when a class' case can be determined by an objective standard applied to common proof.  Thus, *Amgen*, *Johnson* and the myriad cases granting certification involving fraudulent omissions

strongly support class certification in this case - this case should be litigated as a class.

In discovery, Avon has admitted that it did not disclose to the public until 2011 that some of is products are, in fact, tested on animals. To the contrary, Avon announced in 1989 "***a permanent end to all animal testing of our products, including testing done in outside laboratories.***" (Declaration of Scott M. Malzahn ("Malzahn Decl.") filed concurrently herewith, Exs. F & G). This policy was widely publicized and repeated in corporate documents. Indeed, the pervasiveness of Avon's association with this policy is exemplified by the April 17, 2013 deposition testimony of Richard Makover, Avon's Vice President of Sales Development and Operations – who oversees the training of the company's <sup>redacted</sup> person sales force.

Based upon his intimate knowledge of the company and of Avon products, Mr. Makover admitted that believed that Avon had maintained its corporate policy of not allowing animal testing on its products – until he discovered the truth ***one week before his deposition***. (Malzahn Decl., Ex. B at 75-79.)

This is not surprising because Avon did everything within its power to impose a "cloak of secrecy" upon the fact that animal testing actually occurs on some of its products. Avon's other corporate designee – Tod Arbogast – admitted that the first time that Avon stated in any writing that animal testing was, in fact, done on its products was in 2011, in response to intense pressure from PETA. (Malzahn Decl., Ex. A at 11-13.) Prior to that date, Avon maintained its cloak of secrecy regarding the animal testing on its products redacted

At no point prior to 2011 did Avon state to the public, or even its sales representatives, that some of its products were actually being tested on animals.

Upon discovering that some Avon products are actually being tested on animals, plaintiffs and class representatives Marina Beltran and Nichole Gutierrez immediately stopped purchasing Avon products. (Declaration of Marina Beltran ("Beltran Decl.") filed concurrently herewith, ¶ 7; Declaration of Nichole Gutierrez ("Gutierrez Decl.") filed

2

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

concurrently herewith, ¶ 7).  Thus, the central issue in this class action that unifies all class members is whether the "cruelty free" attribute is one that a reasonable purchaser "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'"  *Johnson v. General Mills, Inc.*, 275 F.R.D. at 287 (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009).  This common issue – which is evaluated under an objective test – is ideally suited for class determination.

Plaintiffs' fraudulent concealment, UCL and CRLA claims satisfy the requirements of Rule 23, and their class certification motion should be granted in all respects.

## II.   PROCEDURAL HISTORY

This Court has issued two detailed rulings on successive motions to dismiss that frame the claims and issues under consideration in this class certification motion.

First, on September 20, 2012, this Court granted in part and denied in part Avon's motion to dismiss.  It ruled that Plaintiff's "entire" complaint:

> "including her UCL, FAL, and CLRA claims, are grounded in fraud.  They are based on the same 'unified course of fraudulent conduct,' namely that Avon made fraudulent misrepresentations or omissions about its testing on animals."

Dkt. 59, at p. 11.

Thereafter, on December 11, 2012, the Court denied Avon's subsequent motion to dismiss, finding that the Third Amended Complaint "sufficiently alleges all five elements of a fraudulent concealment claim for each named plaintiff' (dkt. 73, at p. 7).  Notably, the Court acknowledged that one of the key issues in this case will be whether a "reasonable consumer" would have considered information about Avon's animal testing policies and practices on cosmetic products to be material to their purchasing decisions.  *See* Dkt. 73, at pp. 7-8; Dkt. 59, at pp. 13-14 (finding that "[t]he actual effect on a reasonable consumer is a question of fact," but Plaintiffs had adequately alleged based on survey data that a "reasonable consumer would have behaved differently had she been aware of [Avon's] animal testing practices.")

Plaintiffs have subsequently conducted discovery that reaffirms that Avon's blanket

and wholesale failure to disclose the fact that animal testing has, in fact, been conducted on its products.  Indeed, the pervasiveness of Avon's failure to disclose was exemplified by the testimony of its Vice President in charge of training the redacted Avon sales representatives. Based upon his understanding of Avon's corporate policies, he believed that no animal testing was conducted on Avon products until – one week before his deposition – he was told the truth that animal testing is actually conducted on Avon products.  (Malzahn Decl., Ex. B at 75-79.)

## III.    FACTUAL BACKGROUND

### A.    History of Avon's Representations And Non-Disclosures On The Issue Of Animal Testing.

On June 22, 1989, in response to pressure from consumers and animal rights activists, Avon issued a press release in which it "announced a permanent end to all animal testing of our products – including testing done in outside laboratories."  (Malzahn Decl., Ex. A at 16-19; Exs. F& G (emphasis added.)  In press releases, Avon stated:

> We have worked for the past eight years[1] to reduce the use of animals and to find alternatives tests, while still maintaining the high quality and safety of our products.  Now we mark the successful conclusion of that program.
> . . .
> We are pleased . . . to be the first major cosmetics company in the world to eliminate product testing on animals.

_____

[1]    Avon began to work on a program to eliminate animal testing of its products shortly after one of its competitors (Revlon) was targeted for its animal testing practices.  In 1980, the first animal rights campaign against a cosmetics company began with a full page ad in the New York Times that asked, "How many rabbits does Revlon blind for beauty's sake?" Andrew N. Rowan, *Of Mice, Models, & Men:  A Critical Evaluation of Animal Research* 223 (SUNY 1984).  Clearly, Avon—like other major cosmetics companies--was heavily influenced by this and subsequent animal rights campaigns and consumer attitudes against animal testing.  Indeed, Avon correspondence with PETA dated April 27, 1989—less than a month before Avon announced its permanent ban on animal testing—shows that Avon intended "to eliminate all animal testing of its products."  (Malzahn Decl., Ex. E; Ex. A at 13-15; Ex. I (representing that "Avon's ban of animal tests of all our products applies to all its prestige fragrance subsidiaries").)

4

(*Id.*) In a *New York Times* article published on the day following this announcement, Avon's CEO was quoted as promising that "Avon would not conduct such [animal] tests and would continue to support research into other means." (Malzahn Decl., Ex. T.)

Avon is fully cognizant that animal testing is a hot-button issue in the cosmetics industry and that most consumers do not want animals to be harmed for the sake of beauty. (Malzahn Decl., Ex. A at 56.1-57.) redacted

(Malzahn Decl., Ex. A at 57-61; Ex. S at 170.) While the objective issue of materiality is a pure "merits" question, this and other evidence to be presented at trial will fully demonstrate that a strong majority of U.S. cosmetics consumers consider the issue of animal testing to be important and material to their decision to purchase cosmetic products.

Although Avon has not yet disclosed in this litigation exactly when animal testing of its products began again – it is undisputed that Avon products have actually been tested on animals for at least a decade.[2] (Malzahn Decl., Ex. A at 9-10; Ex. Z at 289 (stating in an interrogatory response that "China has required that certain cosmetic products . . . be tested on animals" during the Class Period).)

Rather than come clean and admit that its products are tested on animals, Avon continued to publicize its 1989 policy statement of a permanent end to animal testing on its products, as if were still an accurate reflection of its actual practices. In 2004, the company issued its first Corporate Responsibility Report, which it made available to the public on its website. (Malzahn Decl., Ex. A at 20-22.) Although Avon unequivocally claimed that it "does not conduct testing on any of its products or raw ingredients," it failed to disclose that

_____

[2]     To date, Avon has refused to produce detailed information about its actual animal testing practices, stating correctly that it is a merits (rather than class certification) issue. (Malzahn Decl., Ex. A at 9-10; Ex. X at 244-247 (refusing to produce documents relating to its actual animal testing practices before merits discovery); Ex. Z at 290-293 (refusing to answer interrogatory responses about facts relating to animal tests).)

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

its products actually were being tested on animals in China.  In fact, the only reference to the *possibility* of animal testing was buried in last bullet point of the report.

> The 2004 Corporate Responsibility Report stated:
>
> On June 2 [sic], 1989, Avon announced a **permanent end to all animal testing of our products, including testing done in outside laboratories. Avon was the first major cosmetic company in the world to end animal testing.**
>
> • Our approach to safety evaluation utilizes data from in vitro (test tube/cell culture) or clinical tests (on human volunteers), as well as referencing existing animal-testing data.
>
> • **Avon does not conduct animal testing on any of its products or raw ingredients**, and does not require that suppliers of raw ingredients and finished products produced for Avon conduct animal testing on our behalf.
>
> • *Avon will conduct animal testing only when required by law,* at the request of government health or medical authorities, and only after having first attempted to persuade the requesting authority to accept non-animal test data.

(Malzahn Decl., Ex. I at 96 (emphasis added).)  Thus, even in these corporate documents, Avon created the unified impression that animal testing was a possibility – but was not actually occurring.

In the next Corporate Responsibility Report (for the 2009-2010 period), Avon repeated substantially the same incomplete and misleading claims. (Malzahn Decl., Ex. A at 23-24; Ex. J at 98.)

Although Avon has disputed in this litigation that it ever held itself out as a cruelty-free company, Avon has elsewhere acknowledged that it "is known for its leading efforts to eliminate animal testing."  (Malzahn Decl., Ex. J at 98.)  Indeed, redacted

(Malzahn Decl., Ex. S at 154; Ex. B at 72.)

As a direct result of Avon's complete and utter failure to disclose the facts about its actual animal testing policies, Avon perpetuated its reputation as a cruelty-free company.  In fact, until a week before his deposition, Avon's own corporate designee—Richard

6

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Makover[3]— himself was deceived into believing that Avon products were not tested on animals. (Malzahn Decl., Ex. B at 75-76.)  He testified:

> Q:    Were you aware of that announcement that was made in 1989?
> A:    I started in 1990, so I wasn't here when that was announced.
> Q:    But aware of the existence of that?
> A:    I was aware of the existence, but I wasn't aware of the details, what it means.
> Q:    You were aware of the general details that Avon did not conduct animal testing on its products, correct?
> A:    Yes.

(Malzahn Decl., Ex. B at 77-79.)  If Mr. Makover—a loyal company man with 23 years of experience at Avon and who is responsible for training the company's entire sales force— was unaware that Avon tests on animals, there is little reason to believe that Avon's sales representatives knew any better.

Indeed, Avon's sales representatives were never told that Avon products are tested on animals in any of the uniform training materials provided by the company to sales representatives. (Malzahn Decl., Ex. B at 69-75.)  Nor did Avon disclose in any of its advertising materials—including television, radio, print, or in its package labeling—that Avon products are tested on animals.  (Malzahn Decl., Ex. A at 55-56; Ex. V at 256-275 (stating in supplemental responses to document requests that it has not located advertising materials that mention or refer to animal testing); Ex. Y at 256-275 (stating that Avon has not located any promotional materials during the Class Period that disclose animal testing); Ex. AA at 300-319.)

## B.    Avon's Continuing Attempts To Conceal That Its Products Are Tested On Animals And The Public Backlash

It was not until PETA blew the whistle on Avon that the company finally issued a public statement in which it acknowledged that its products are tested on animals.  (Malzahn

---

[3]    Mr. Makover is the Vice President of Sales Development and Operations at Avon and is responsible for the training of the company's redacted person sales force, including its sales representatives. (Malzahn Decl., Ex. B at 66-68.)  He has been with the company for 23 years. (Malzahn Decl., Ex. B at 65.)

7

Decl., Ex. A at 11-13.)

In May 2010, PETA contacted Avon to inquire about the bullet point in Avon's 2009-2010 corporate report that referred to the possibility of animal testing.  The gist of its question was simple:  Are Avon products tested on animals?  (*See* Malzahn Decl., Ex. U at 228.)  On May 5, 2010, Avon's former Executive Director of Corporate Responsibility (Susan Heaney) told PETA in an email that "I am not aware of any instances" of animal testing.  "So, be assured:  the 21-year policy remains the policy – Avon does not conduct, request or require any product or ingredient testing on animals."  (Malzahn Decl., Ex. U at 228; Ex. A at 8.)

When PETA pressed Avon for further clarification about the "as required by law" language in the corporate responsibility report, Avon gave it the run-around. redacted

(Malzahn Decl., Ex. A at 71-72; Ex. M.) redacted

(Malzahn Decl., Ex. A at 36, 40-41, 44-45; Ex. O at 111.)  When Avon sent its final response to PETA a week later, Ms. Heaney did not correct her earlier misstatement that there were no instances of animal testing—redacted

(Malzahn Decl., Ex. A at 34-35, 37, 42-44; Ex. P.)

In the fall of 2011, when PETA launched a truth campaign against Avon and took the company off its "Do Not Test List", Avon prepared a strategy to manage the public relations problem and respond to consumer inquiries and complaints. Malzahn Decl., Ex. A at 49-50.)  Avon created a written "Animal Testing Q&A" approved by the corporate office that disclosed for the first time that some of its products are tested on animals.  (Malzahn Decl., Ex. A at 12-13, 46-48; Ex. Q.)  The very first question on the final version of the Q&A asked:  "**I thought Avon doesn't conduct animal testing.  Why has PETA put Avon on the list of companies that do test on animals?**"  The second question asked: "**How many of your products are tested on animals?**"  (Malzahn Decl., Ex. K at 100.)

Avon finally admitted that some of its products are tested on animals: "In 2011, Avon offered approximately 9,000 products in over 100 countries, and in that year less than 0.3% of these products were tested on animals under the directives of the law in a few countries. Our goal is to get that number to zero."[4] (Malzahn Decl., Ex. K at 100; Ex. A at 25-27.)

For months after PETA revealed the truth about Avon's animal testing practices, Avon continued to receive complaints from consumers and its sales representatives. (*E.g.,*Malzahn Decl., Ex. R at 1121; Ex. A at 52.) In total, Avon received more than 5,000 written complaints from customers. (Malzahn Decl., Ex. A at 28.) It posted its written Q&A online and provided its call centers with carefully scripted information. (Malzahn Decl., Ex. A at 51-54.)

To this date, however, Avon has not disclosed to the public information about the countries where animal testing occurs, the specific types of animal testing that occurs, or other unsavory details. (Malzahn Decl., Ex. A at 37-40.)

## IV.   ARGUMENT

This case is ideally suited for class certification.

Avon cannot dispute that, prior to the issuance of its 2010-2011 Corporate Responsibility Report, it failed to make any disclosure to the public that animal testing was actually conducted on some its products. Instead, Avon perpetuated the false statement set forth in its 1989 corporate policy that it "permanent[ly] end[ed] all animal testing of our products, including testing done in outside laboratories" by repeating the policy without correctly stating that animal testing is actually done on some of its products. (*See* Malzahn Decl., Exs. I & J.)

Indeed, the pervasiveness of this false impression was exemplified by Richard Makover, the Avon Vice President who is in charge of training the redacted Avon sales representatives who was unaware of the fact that animal testing is conducted on Avon products until he was told the truth ***one week before his deposition.*** Mr. Makover and the

---

[4]   This "Animal Testing Q&A" was added to the 2010-2011 Corporate Responsibility Report, which was published on Avon's website. (Malzahn Decl., Ex. K at 99-101.)

9

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

other Avon corporate representative acknowledged that Avon did not provide any disclosures to the public prior to the 2010-2011 Corporate Responsibility Report that animal testing is actually done on its products.  Indeed, the complete ineffectiveness of the Corporate Responsibility Report disclosure is tellingly revealed by the fact that key corporate employees such as Mr. Makover did not know that animal testing was done on Avon products – even after the 2010-2011 Corporate Responsibility Report was promulgated.  Significantly, Mr. Makover acknowledged that the redacted person sales force was never provided with information that animal testing was actually being done on Avon products. (Malzahn Decl., Ex. B at 72-75.)

As set forth below, the requirements of Fed. R. Civ. P 23(a) are completely satisfied, and the case is appropriate for certification under Fed. R. Civ. P. 23(b)(3).  Plaintiffs Marina Beltran and Nichole Gutierrez allege that Avon violated California law by failing to disclose material information about its animal testing practices.  Plaintiffs seek class certification under Rule 23(b)(3) on their claims for fraudulent concealment and violation of the UCL and CLRA.  Specifically, they seek certification of a class of California consumers defined as follows: "All persons who purchased cosmetic products of Avon in the State of California at any time from March 23, 2008 through December 2011."[5]

### A.    This Courts' Rulings In *Johnson* Strongly Support Class Certification.

In 2011, this Court issued two rulings in *Johnson v. General Mills, Inc.* that strongly support class certification in this action.

*Johnson v. General Mills, Inc.* involved the class' claim that General Mills violated California's Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA") by making deceptive representations concerning the digestive health benefits of certain yogurt products.  The Court granted class certification, and thereafter denied General

_____

[5]    While Plaintiffs previously alleged both a nation-wide class and California subclass, they do not seek certification of a nation-wide class at this time.  Additionally, Plaintiffs voluntarily limit the Class Period to the four year period preceding the filing of the original complaint in this action on March 23, 2012.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Mill's motion for decertification based upon the Supreme Court's decision in *Dukes v. Wal-Mart Stores, Inc.*, ___ U.S. ____, 131 S.Ct. 2541 (2011).

The Court ruled that Mr. Johnson had standing to bring the class action because he purchased the yogurt product and did not receive the promised digestive health benefits. *Johnson v. General Mills, Inc.*, 275 F.R.D. at 286.

The Court also ruled that commonality existed based upon General Mills' allegedly deceptive representation that its yogurt products promoted digestive health. Significantly, the Court also ruled that there could be no individual issues of reliance because that element is not required in UCL cases – provided the class representative can demonstrate that he relied upon the misrepresentation. *Id.* at 287. The Court quoted *In re Tobacco II Cases* by ruling "relief under the UCL is available without individualized proof of deception, reliance and injury." *Id.* (quoting *In re Tobacco II Cases*, 46 Cal.4th at 320. The Court further ruled that commonality and predominance was demonstrated based upon the existence of common facts regarding the representations that the yogurt promoted digestive health benefits, especially where it was part of its advertising campaign for the product.

This commonality and predominance determination was later attacked in a motion for decertification following the Supreme Court ruling in *Wal-Mart*. The Court denied the motion, ruling that the case revolved around the central contention that "Defendants made a material misrepresentation regarding the digestive health benefits of YoPlus that violated the UCL and CLRA." *Johnson v. General Mills, Inc.*, 276 F.R.D. at 521. The Court also rejected General Mills' contention that even though the presumption of reliance is applicable to fraudulent omission claims, it does not apply to affirmative misrepresentation claims. *Id.* at 522. Notably, in this case, the presumption of reliance indisputably applies to fraudulent omissions. *See, e.g., Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007); *Cartwright v. Viking Industries, Inc.*, 2009 WL 2982887, *12 (E.D. Cal. Sept. 14, 2009). The Court also rejected General Mills' claim that there might be individual issues because consumers might have purchased the product notwithstanding the misrepresentations. The Court against quoted California law in finding

11

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

that just because "some consumers purchased the yogurt for other reasons does not defeat a finding that 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action. . .'" *Id.* at 523 (quoting *Steroid Hormone Prod.* Cases, 181 Cal.App.4th 145, 157 (2010).

In this matter, a stronger case exists for class certification where Avon failed to make any disclosure prior to 2011 that animal testing was actually conducted on its products.

**B.      Plaintiffs Beltran and Gutierrez Have Standing.**

As this Court has already ruled, Plaintiffs Beltran and Gutierrez[6]—both of whom are and have been California residents—possess standing to pursue this action on behalf of the California class.  *See* dkt. 59, at p. 4-6 (ruling that "Beltran has pleaded a sufficient injury under Article III, and the UCL, FAL, and CLRA); dkt. 73, at p. 6 (ruling that Tellez and Gutierrez also have standing).  Further, the declarations of Ms. Beltran, at paragraphs 4-7, and Ms. Gutierrez, at paragraphs 4-8, show that they regularly purchased Avon cosmetic products during the Class Period, were unaware at the time that some Avon products are tested on animals, would not have purchased those products had they known about the animal testing, and as a result suffered an economic injury.  *See Kwikset v. Superior Court*, 51 Cal.4th 310, 330 (2011) (holding that the "extra money paid" by a consumer for a product that he was wrongfully induced to purchase constitutes "economic injury and affords the consumer standing to sue" on behalf of a class); *Johnson v. General Mills, Inc.*, 275 F.R.D. at 286.

**C.      The Requirements Of Rule 23(a) Are Satisfied.**

Under Rule 23(a), four requirements must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the named plaintiff's claims or defenses are typical of the claims or defenses of the class, and (4) the named plaintiff will fairly and adequately

---

[6]      Although Plaintiff Tellez (a Michigan resident) was named in the Third Amended Complaint, Plaintiffs have decided not to pursue a nationwide class at this time.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

protect the interests of the class. Fed.R.Civ.P. 23(a).  These requirements are readily
satisfied by the class that Plaintiffs seek to certify.

     **1.**    **The Class Is So Numerous That Individual Joinder Is Impracticable.**

    There can be no genuine dispute that the numerosity requirement is satisfied in this
case. Avon is "the world's largest direct seller of beauty and beauty-related products, with
nearly $11 billion in annual revenue in 2012." (Malzahn Decl., Ex. V.)  For the current
year, the average number of Avon sales representatives who reside in California is redacted
(Malzahn Decl., Ex. BB at 328; Ex. W at 235 (admitting that it sells products directly to
consumers and sales representatives in California).)  Thus, the total number of Class
members in California is certainly more than the 40 or so class members generally required
to satisfy numerosity.  *See, e.g., Vinh Nguyen v. Radient Pharmaceuticals Corp.*, 287 F.R.D.
563, 569 (C.D. Cal. 2012) (stating that "[t]here is no specific minimum number of plaintiffs
asserted to obtain class certification, but a proposed class of at least forty members
presumptively satisfies the numerosity requirement.").

     **2.**    **Common Questions of Fact and Law Exist.**

    The commonality requirement is also satisfied.  Rule 23(a)(2) requires that there be
"questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(3).  As the Ninth Circuit
recently reaffirmed, "'[a]ll questions of fact and law need not be common to satisfy the
[commonality requirement]. The existence of shared legal issues with divergent factual
predicates is sufficient, as is a common core of salient facts coupled with disparate legal
remedies within the class." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036,
1041-42 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th
Cir.1998)).  "What matters to class certification is not the raising of common questions—
even in droves—but, rather the capacity of a classwide proceeding to generate common
*answers* apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551; *see also Ellis
v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

    Here, Plaintiffs' claims for fraudulent concealment and violation of the UCL and
CLRA present the same core questions of fact and law that will resolve all of the class

members' claims. These issues include: (1) whether Avon concealed or suppressed a material fact about animal testing of its products; (2) whether Avon was under a duty to disclose information about animal testing of its products; and (3) whether Avon intentionally concealed or suppressed this information with the intent to defraud. *See* Dkt. 73, at pp. 6-7. Resolution of these key factual issues will determine the outcome of this case for all class members and does not require any individual analysis. *See In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010) (holding that "Defendant's concealment or suppression of facts, its intent, and whether it had a duty to disclose those facts do not involve individual issues because the representations were all presented in common form and for common purposes."); *Johnson*, 275 F.R.D. at 287 (commonality requirement was "met" because the "UCL and CLRA claims present core issues of law and fact that are common and suitable for adjudication on a classwide basis.").

### 3. The Class Representatives' Claims are Typical.

The typicality requirement is also met in this case. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "'[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Meyer*, 707 F.3d at 1042 (quoting *Hanlon*, 150 F.3d at 1020). In applying these standards, courts usually find that typicality exists when the plaintiff's claims arise from the same or similar injury, based on conduct that is not unique to the named plaintiff, and when the proposed class members have been injured by the same or similar course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 609-10 (S.D. Cal. 2007) (citing *Hanon*).

Moreover, minor or insignificant distinctions between the named plaintiffs and absent class members do not defeat the typicality requirement. The typicality requirement is satisfied "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999). Nor is it necessary that all class members suffer the same

injury as the class representative. *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

Here, Plaintiffs and putative class members' claims all arise from Avon's standard and uniform concealment of material information from consumers and its sales representatives. Ms. Beltran and Ms. Gutierrez—just like thousands of other California residents—regularly purchased Avon products for personal use during the Class Period and were never given any information to advise them that some Avon products are tested on animals. (Beltran Decl., ¶¶ 4-5; Gutierrez Decl., ¶¶ 4-6). As a result of Avon's fraudulent omission, Plaintiffs purchased cosmetic products from Avon that they would not have otherwise purchased. Accordingly, their claims are typical of the class that they seek to represent. *See Johnson, Inc.*, 275 F.R.D. at 287-88.

Because the purported class member's claims all arise from the same uniform fraudulent omission and resulted in the same or similar injury, typicality is satisfied.

## 4. The Class Representatives Will Fairly and Adequately Represent the Class.

The final prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement is grounded in constitutional due process concerns, since "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. Resolution of the adequacy requirement rests on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

### a. Plaintiffs are Adequate Representatives.

It is well settled that class representatives may not have interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Further, the adequate class representative need only to have personal experience

15

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

with the claims of the lawsuit and a general familiarity with the facts, but not necessarily a clear recollection of all facts relevant to their claims.  *See e.g.*, *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D. Cal. 2006).

Here, Ms. Beltran and Ms. Gutierrez both have personal experience with the claims of the lawsuit and are familiar with the underlying facts.  There is no conflict of interest between them and the absent class members; to the contrary, Plaintiffs' interests are fully aligned with those of the Class because the basis of their claims and the nature of their injuries are the same as those of the absent class members.  Additionally, Plaintiffs' declarations establish that they have been cooperating with their attorneys to prosecute this case vigorously and have agreed to continue to fulfill the duties of a class representative. (Beltran Decl., ¶¶ 8-12; Gutierrez Decl., ¶¶ 9-13.)  Plaintiffs will actively monitor and control this litigation and protect the interests of the class.

### b.     Class Counsel Is Competent.

The adequacy of Plaintiffs' counsel is also fully satisfied.  The class is represented by a prominent law firm with extensive experience in complex and class action litigation.  The firm representing Plaintiffs is experienced in class action litigation, having successfully conducted numerous consumer class actions as set forth in the declaration of Richard L. Kellner.  Counsel remains committed to devoting all necessary resources to prosecuting this matter and possesses the resources necessary to represent the proposed Class.

### D.     Plaintiff's Claims Should Be Certified Under Rule 23(b)(3).

Plaintiff seeks certification under Rule 23(b)(3), which provides that a class may be certified when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  Here, common issues predominate, and a class action is superior to other methods to adjudicate the claims of the Class.

### 1.   **Common Issues Predominate.**

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" in order to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchen Prods.*, 521 U.S. at 623.  As the Supreme Court recently emphasized, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191 (emphasis in original).  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Johnson*, 275 F.R.D. at 288 (quoting *Hanlon*, 150 F.3d at 1022); *see also In re High-Tech Employee Antitrust Litig.*, WL 1352016, *6-7 (N.D.Cal. Apr. 25, 2013).

In this case, the analytical framework for whether questions common to the class predominate is essentially the same for Plaintiff's' UCL, CLRA, and fraudulent concealment claims.  As this Court previously recognized, each of these claims is based on the same 'unified course of fraudulent conduct,' namely that Avon made fraudulent . . . omissions about its testing on animals." Dkt. 59, at p. 11.  To establish a fraud-by-concealment claim, Plaintiffs must prove that:

(1) The defendant must have concealed or suppressed a material fact,
(2) The defendant must have been under a duty to disclose the fact to the plaintiff,[7]
(3) The defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff,
(4) The plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and
(5) As a result of the concealment or suppression of the fact, the plaintiff must

---

[7]   "A defendant generally has a duty to disclose information in four situations:  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." Dkt. 73, at p. 7.

have sustained damage.

Dkt. 73, at pp. 6-7.  Further, as this Court has ruled, Plaintiff's UCL claim is "based on her fraudulent concealment claim.  Her allegations of concealment are unfair, fraudulent and unlawful under the UCL."  Dkt. 59, at p. 12; *see also* dkt. 73, at p. 10 (same).  Likewise, Plaintiffs' CLRA claim is "based on Avon not disclosing material facts related to its animal testing.  Dkt. 59, at p. 14.  Thus, Plaintiffs analyze all three claims together below.

> **a.   This Consumer Fraud Action Arises Out Of Avon's Uniform Failure To Disclose That Its Products Are Tested On Animals.**

District courts in California "routinely certify consumer class actions arising from alleged violations of the CLRA [and] UCL."  *Tait v. BSH Home Appliances Corp.*, 2012 WL 6699247, *12 (C.D. Cal. Dec. 20, 2012).  Class certification of a fraud claim is appropriate if the "plaintiffs allege that an entire class of people has been defrauded by a common course of conduct."  *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 447 (N.D. Cal. 2009) (decision clarified in *Plascencia v. Lending 1st Mortg.*, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011)).

The district court's reasoning in *Tait* is illuminating.  There, the plaintiff sought certification of a Rule 23(b)(3) class for violations of the UCL, CLRA, and FAL based on an alleged fraudulent omission.  *Tait*, 2012 WL 6699247, *10-15.  The plaintiff alleged that BSH had a duty to disclose because (1) it had exclusive knowledge of material facts not known or reasonably accessible to the plaintiff and putative class, and/or (2) it actively concealed a material fact from the plaintiff and putative class.  *Id.* at *13.  The court reasoned that these issues are proven through common evidence, such as evidence showing that the defendant knew about but had repeatedly denied the existence of any defect.  *See id*. at *13-15.  Further, unlike in an affirmative misrepresentation case where class members might be exposed to different information, it ruled that class members are subjected to a common course of conduct where the defendant never disclosed the alleged material information.  *See id*. at *14-15.

As in *Tait*, Plaintiffs' fraud claims are based on an omission rather than affirmative misrepresentation.  The gravamen of all three of Plaintiffs' claims is that Avon wrongfully

18

concealed material information about animal testing of its cosmetics products.  At trial, Plaintiffs will use common evidence to prove that Avon had exclusive knowledge of any animal tests that were conducted on its products[8] and that it is not reasonable to believe that consumers could have obtained that information from any other source.  Further, the evidence shows that Avon actively concealed the truth about animal testing of its products by publishing incomplete and wholly misleading statements on its website in which it continued to market itself as the "the first major cosmetic company in the world to end animal testing" as if that were still true.  (*See, e.g.,* Malzahn Decl., Ex. J at 158 (further stating that Avon had brought "a permanent end to all animal testing of our products" and that "Avon does not conduct animal testing on any of its products").)  None of this evidence will turn on specific representations made to the individual plaintiffs or other class members, but instead relies on Avon's complete and uniform failure to disclose material information about its animal testing.

With little else to argue, it is anticipated that Avon will try to fabricate individual issues by arguing that its sales representatives may have made different factual representations about the company's animal testing policies and practices to different class members.  Aside from the fact that such arguments would contradict Avon's corporate representatives who stated that Avon did not provide any training or materials that acknowledged the fact that animal testing was conducted on its products (Malzahn Dec., Ex. B at 72-75), this is a failure to disclose case—not an affirmative misrepresentation case.  "Proof of the omissions will *not* be based upon information each class member received about [Avon's animal testing practices], but on what [Avon] allegedly concealed in light of what consumers reasonably expect." *Grays Harbor*, 242 F.R.D. at 573.  Regardless of the affirmative representations made by its sales representatives,[9] the evidence shows that the

_____

[8] As this Court previously found, "it is reasonable to infer from the very nature of the allegedly concealed information, facts related to Avon's corporate practices in foreign countries, that such information was within Avon's exclusive knowledge." Dkt. 73, at p. 8.
[9] In any event, there is no reason to believe that any of Avon's sales representatives actually knew and told consumers that Avon tests on animals.  Avon's own corporate

19

company never disclosed that its products are actually tested on animals to consumers or its sales representatives.  It did not disclose this fact in any of its advertising materials.  Nor did it disclose that fact in its training materials for sales representatives.  Because Avon allegedly acted in a uniform way toward all class members by failing to disclose that some of its products are tested on animals, this case is well suited for classwide adjudication.

### b. Proof Of Individual Reliance, Causation, And Damages/Restitution For Absent Class Members Is Not Required For Plaintiffs To Prevail On Their Claims.

Under California law, it is well settled that a class may be certified on fraudulent concealment, UCL, and CLRA claims without individualized proof of deception, reliance and injury.  As the California Supreme Court held in the UCL context, "a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal.4th at 327.  "Similarly, a CLRA can be litigated on a classwide basis when the "record permits an inference of common reliance to the class." *Johnson*, 275 F.R.D. at 287.  This same presumption of classwide reliance applies to Plaintiffs' common law claim of fraudulent concealment. *See In re Nat'l Western Life Ins. Deferred Annuities Litig.,* 268 F.R.D. at 669.

As this Court ruled in *Johnson,* the presumption or inference of reliance is one that truly limits the potential existence of individual issues in UCL claims. *Johnson v. General Mills, Inc.*, 276 F.R.D. at 522 (holding that "a classwide inference of reliance for both affirmative misrepresentations and omissions is proper for a CLRA claim.").  Indeed, in *Cartwright*, 2009 WL 2982887 at *11-12, the district court applied a presumption of reliance and certified a consumer class on UCL, CLRA, and fraudulent concealment claims in a fraudulent omission case.  This Court should do the same here.

---

designee responsible for the training of sales representatives testified that he believed that the company did not test on animals until a week before his deposition. (Malzahn Decl., Ex. B at 77-79.)  redacted

(Malzahn Decl., Ex. A at 31-35; Ex. N.)

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

### c.   The Issue of Materiality Is A Common Question.

A fiercely contested issue at trial likely will be whether Avon had a duty to disclose that its products are tested on animals.  As this Court has held, "a representation is material 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Johnson*, 275 F.R.D. at 287 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 327); *see also* Dkt. 73, p. 7.  Regardless of which party ultimately prevails on this issue, it is most efficiently resolved on a classwide basis rather than in a series of individual trials.

Just a few months ago, the Supreme Court issued an important 6-3 decision in *Amgen* on the issue of materiality in the class action context.  Its decision resolved a Circuit split as to whether a plaintiff must prove materiality on the merits in order to obtain class certification in a § 10(b) securities fraud case.  *Amgen,* 133 S.Ct. at 1191.  The Court ruled that a plaintiff does not need to prove materiality at the class certification stage; instead, "materiality is a common question for purposes of Rule 23(b)(3)." *Id*. at 1196:

> While [the plaintiff] certainly must prove materiality to prevail on the merits, we hold that such proof is not a prerequisite to class certification. Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of [the defendant's alleged misrepresentations and omissions is a question common to all members of the class [the plaintiff] would represent. The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class. . . . As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry.

*Id*. at 1191 (underlining added).

Although the *Amgen* case arose in the securities fraud context, its reasoning is applicable to this case because the issue of materiality in this case is also judged by an objective standard.  "California consumer protection laws take an objective approach of the *reasonable* consumer, not the particular consumer." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D.Cal. 2012); *see also Tait*, 2012 WL 6699247, *12.  As this Court has previously acknowledged, the materiality test in the UCL and CLRA context—which focus on a

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

reasonable consumer—is an "objective standard [that] is susceptible to common proof." *Johnson*, 275 F.R.D. at 287 (internal citations omitted); *see also Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (2010) (holding that materiality for CLRA claims "is judged by a 'reasonable man' standard" and is "generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it"). Thus, the issue as to whether a reasonable consumer would have considered it important to know that Avon products are tested on animals when it made its purchasing decisions is a common question of fact that weighs heavily in favor of class certification.

Avon may argue that the issue of materiality involves individual inquiries because people may buy cosmetic products for a variety of reasons, which may have nothing to do with whether a company's products are tested on animals. But as explained above, "California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis." *Johns*, 280 F.R.D. at 557. Plaintiffs' claims will not be adjudicated based on their individual circumstances, but instead under the objective, "reasonable consumer" test. This standard for the UCL, as the Ninth Circuit has reiterated, only requires that Plaintiff "show that members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (internal quotations omitted). A showing that each individual member of the class was actually deceived is not required. Therefore, the issue of materiality is subject to common proof by the class.[10]

---

[10]    Although Plaintiffs are not required to prove materiality at the class certification stage, they already have collected substantial evidence that suggests the reasonable consumer does consider it important to know whether a cosmetics product is tested on animals. In fact, redacted

(Malzahn Decl., Ex. A at 57-61; Ex. S at 170.) Further, the history of Avon's efforts to end animal testing in the 1980's in response to public pressure and its subsequent efforts to conceal from the public and PETA that its products are being tested on animals strongly suggests that Avon knows that U.S. consumers generally do not want to purchase cosmetics from companies that engage or allow animal testing. *See supra.* It also is revealing that Avon continues to refuse to disclose in this litigation any detailed information about its animal testing practices and had designated large swathes of its production as confidential—in a transparent attempt to conceal the truth from the public.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Because common questions predominate on the UCL, CLRA and fraudulent concealment claims, a California should be certified under Rule 23(b)(3).

### 2.    A Class Action is Superior

Finally, a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)).  Rule 23(b)(3) sets forth four nonexclusive factors that courts regularly consider in deciding whether a class action would be a superior method for resolving a controversy. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  Each of the factors supports class certification here.

First, class members have little interest in individually controlling the prosecution of separate actions.  Individual claims for restitution are not substantial enough to warrant individual filings.  The primary policy of the class action mechanism is to enable the collective vindication of the rights of numerous persons whose small claims may not be worth pursuing in individual actions. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Furthermore, "[i]t is not likely that thousands of individual consumers, purportedly duped into purchasing a worthless product that cost only about $40, will file actions in small claims court." *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 528 (2010).  Indeed, if the tens of thousands of more plaintiffs pursued their claims individually, they would clog the courts with duplicative litigation of the same issues.

Second, Plaintiffs are not aware of any other lawsuits against Avon commenced by or on behalf of members of the Class.  The lack of individual suits suggests that a class action is needed because the amount at issue for an individual plaintiff is not enough to warrant an individual filing. *See Newberg*, § 4:30 (4th ed. 2002).

The third factor identified in Rule 23(b)(3) is probably irrelevant. *See id*. at § 4:31 ("In the class action context, the desirability of concentrating claims in a particular forum is relevant only when other class litigation has already been commenced elsewhere.").

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Considering the lack of other class litigation already commenced, there is no reason that litigation in the Central District should not be desired.

Fourth, as described above, because the issues of materiality and fraudulent concealment are common to all class members and because resolution of Plaintiffs' claims will resolve the claims of the remaining class, certification does not pose any manageability problems.

Finally, establishing damages for the class is rarely an issue that "predominates" in a class action or renders its unmanageable. *See Blackie v. Barrack*, *supra*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment"). Indeed, in this matter, the UCL and CLRA claims would seek restitutionary disgorgement (and not damages). The trial plan for this case will be relatively simple and straight forward.

1) Plaintiffs will introduce documentary and testimonial evidence showing that Avon never disclosed to consumers or sales representatives that its products are tested on animals in China or anywhere else.

2) Plaintiffs will introduce documentary and testimonial evidence showing that Avon had exclusive knowledge about animal testing of its products, actively concealed that information, and even published incomplete and misleading statements in its corporate responsibility reports–all of which give rise to a duty to disclose.

3) Plaintiffs will proffer documentary, testimonial, and possibly expert testimony showing that the reasonable consumer would consider it important to know whether a company's cosmetic products are tested on animals.

4) Plaintiffs will then proffer evidence regarding the amount of sales of cosmetic products in California, as well as the revenues and profits that Avon received for the products, so that the Court can determine the amount of restitutionary disgorgement. Such evidence will also be used by the jury to determine the fraudulent concealment damages, on an aggregate basis.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

5) Plaintiffs will also introduce expert testimony regarding the calculation of damages and restitutionary disgorgement.

Individual class participation in the monetary awards will be thereafter determined by proofs of purchase, etc.

Based upon the foregoing, certification will be a most efficient and effective method for adjudication the claims of California consumers who purchased Avon cosmetic products based on the false representation that it is cruelty free, when it is not.

## V.    CONCLUSION

"Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually.  [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Compnay v. Shutts*, 472 U.S. 797, 809 (1985); *Johnson*, 275 F.R.D. at 289 ("In a consumer class action of this type involving the purchase of a relatively inexpensive food product, injured consumers are extremely unlikely to pursue their claims on an individual basis.").  Absent certification of a class against Avon, thousands of consumers in California will be left with no remedy for their loss.  Plaintiffs have satisfied all of the prerequisites of Rule 23, and this action should be certified as a class action.

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion to certify this case as a class action on behalf of the proposed Class, certify Plaintiffs as the Class representatives, and appoint Plaintiffs' counsel as counsel for the Class.

Dated:  May 10, 2013                          KABATECK BROWN KELLNER LLP


                                              By: s/Scott M. Malzahn
                                                  Richard L. Kellner
                                                  Scott M. Malzahn
                                                  *Counsel for Plaintiffs and the class*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION