1    DENNIS S. ELLIS (SB# 178196)
     dennisellis@paulhastings.com
2    KATHERINE F. MURRAY (SB# 211987)
     katherinemurray@paulhastings.com
3    NICHOLAS J. BEGAKIS (SB# 253588)
     nickbegakis@paulhastings.com
4    PAUL HASTINGS LLP
     515 South Flower Street
5    Twenty-Fifth Floor
     Los Angeles, CA  90071-2228
6    Telephone:  1(213) 683-6000
     Facsimile:  1(213) 627-0705
7
     Attorneys for Defendant
8    AVON PRODUCTS, INC.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

| MARINA BELTRAN, an individual; RENEE TELLEZ, an individual, NICHOLE GUTIERREZ, an individual, on behalf of themselves and all others similarly situated, | CASE NO. CV12-02502 CJC (ANX) |
|---|---|
| Plaintiff, | Related Case Nos. 8:12-CV-0312 CJC (ANX) and 8:12-cv-01169 CJC (ANX) |
| vs. | **DEFENDANT AVON PRODUCTS, INC.'S REDACTED OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| AVON PRODUCTS, INC., a New York Corporation, | Date:      September 9, 2013 |
| Defendant. | Time:      1:30 p.m.<br>Dept:      Courtroom 9B<br>Judge:     Hon. Cormac J. Carney |
|  | [Declarations of Dr. Joel Steckel and Katherine F. Murray filed and served concurrently herewith] |

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ....................................................................... 1

II.    STATEMENT OF FACTS ................................................................................ 4

    A.    Avon:  A Direct Seller Of Cosmetics And Household Goods ............ 4

    B.    Avon's Animal Testing Policy .......................................................... 5

    C.    PETA Targets Avon............................................................................ 6

    D.    PETA Searches For Class Representatives For Plaintiff's Case.......... 9

    E.    The Court Limits This Action To A Fraudulent Concealment
        Case ............................................................................................... 10

    F.    Plaintiff Marina Beltran Is The Only Remaining Class
        Representative ................................................................................ 11

III.   STANDARD FOR CLASS CERTIFICATION ............................................. 12

IV.    THE PROPOSED CLASS IS NOT ASCERTAINABLE OR
      IDENTIFIABLE............................................................................................. 12

V.     BELTRAN CANNOT SATISFY THE REQUIREMENTS OF RULE
      23(a) TO CERTIFY THIS CASE AS A CLASS ACTION ......................... 15

    A.    There Is No Commonality Across The Putative Class ...................... 15

    B.    Beltran's Claims Are Not Typical Of The Putative Class................. 17

    C.    Beltran Cannot Satisfy The Adequacy Requirement......................... 21

        1.    Beltran is not an adequate class representative ...................... 22

        2.    No Avon customer would be an adequate class
            representative ....................................................................... 23

VI.    BELTRAN CANNOT CERTIFY A RULE 23(b)(3) CLASS...................... 24

    A.    Common Questions Do Not Predominate In This Case .................... 24

        1.    Individualized causation issues preclude class treatment ........ 25

        2.    Beltran is not entitled to a presumption of reliance
            because the putative class was exposed to disparate
            information .......................................................................... 27

        3.    Beltran is not entitled to a presumption of reliance
            because individual issues as to materiality predominate.......... 29

        4.    Individualized relief determinations preclude class
            treatment ............................................................................. 31

    B.    A Class Action Is Not The Superior Method For This Case.............. 35

VII.   CONCLUSION ............................................................................................. 35

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................... 1, 24

5

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
6   133 S. Ct. 1184 (2013) ...................................................................... 31

7

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ........................................................... 33, 34

8

*Bodner v. Oreck Direct, LLC*,
9   No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408
   (N.D. Cal. Apr. 25, 2007) ................................................................ 23, 24

10

*Bower v. AT&T Mobility, LLC*,
11   196 Cal. App. 4th 1545 (2011) ........................................................... 25

12

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007) ............................................................. 19

13

*Burdick v. Union Sec. Ins. Co.*,
14   No. CV 07-4028 ABC, 2009 U.S. Dist. LEXIS 121768
   (C.D. Cal. Dec. 9, 2009) .................................................................... 12

15

*Califano v. Yamasaki*,
16   442 U.S. 682 (1979) ...................................................................... 3, 12

17

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) ............................................................. 18

18

*Clark v. Watchie*,
19   513 F.2d 994 (9th Cir. 1975) ............................................................. 27

20

*Colapinto v. Esquire Deposition Servs. LLC.*,
   No. CV 09-07584 SJO, 2011 U.S. Dist. LEXIS 30814
21   (C.D. Cal. Mar. 8, 2011) .................................................................... 34

22

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ............................................................. 33

23

*Comcast Corp. v. Behrend*,
24   133 S. Ct. 1426 (2013) ............................................................ 3, 12, 31, 32

*Cortez v. Purolator Air Filtration Products Co.*,
25   23 Cal. 4th 163 (2000) ...................................................................... 33

26

*Day v. AT&T Corp.*,
   63 Cal. App. 4th 325 (1998) ........................................................... 33, 34
27

28

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Degelmann v. Advanced Med. Optics Inc.*,
659 F.3d 835 (9th Cir. 2011).................................................................... 28

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ................................................................ 12, 14

*Diacakis v. Comcast Corp.*,
No. C 11-3002, 2013 U.S. Dist. LEXIS 64523
(N.D. Cal. May 3, 2013)........................................................... 12, 13, 15, 26

*Doninger v. Pac. Nw. Bell, Inc.*,
564 F.2d 1304 (9th Cir. 1977)................................................................ 12

*Drake v. Morgan Stanley & Co.*,
No. CV 09-6467, 2010 U.S. Dist. LEXIS 47627
(C.D. Cal. Apr. 30, 2010)..................................................................... 2, 22

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977) ............................................................................. 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011) .......................................................................... 25

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ............................................................... 17

*Fairbanks v. Farmers New World Life Ins. Co.*,
197 Cal. App. 4th 544 (2011)................................................................ 28

*Feske v. MHC Thousand Trails Ltd. P'ship.*,
No. 11-4124PSG, 2013 WL 1120816 (N.D. Cal. Mar. 18, 2013) .................... 23

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1983) ............................................................................. 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................ 21

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)............................................................... 2, 17

*Hernandez v. Balakian*,
251 F.R.D. 488 (E.D. Cal. 2008)............................................................. 24

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF, 2009 U.S. Dist. LEXIS 117562
(N.D. Cal. Dec. 17, 2009)....................................................................... 14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................. 22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re First Alliance Mortg. Co.*,
 471 F.3d 977 (9th Cir. 2008) ................................................................. 32

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 12-7085, Dkt. No. 1450877
 (D.C. Cir. Aug. 9, 2013) ...................................................................... 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 267 F.R.D. 291 (N.D. Cal. 2010) ........................................................ 25

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ............................................................... 27, 28

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices &
 Prods. Liab. Litig.*,
 288 F.R.D. 445 (C.D. Cal. 2013) ........................................................ 35

*In re Vioxx Class Cases*,
 180 Cal. App. 4th 116 (2009) .................................................. 30, 32, 33

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
 571 F.3d 953 (9th Cir. 2009) .............................................................. 25

*Johnson v. Gen. Mills*,
 276 F.R.D. 519 (2011) ...................................................................... 29

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
 578 F. Supp. 2d 1229 (C.D. Cal. 2008) ............................................... 18

*Jordan v. Paul Fin., LLC*,
 285 F.R.D. 435 (N.D. Cal. 2012) ........................................................ 29

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
 178 Cal. App. 4th 830 (2009) ............................................................. 27

*Kwikset Corp. v. Super. Ct. (Benson)*,
 51 Cal. 4th 310 (2011) ............................................................... 25, 28

*Lazar v. Hertz Corp.*,
 143 Cal. App. 3d 128 (1983) .............................................................. 14

*Lozano v. AT&T Wireless Servs., Inc.*,
 504 F.3d 718 (9th Cir. 2007) ............................................................... 1

*Madrid v. Perot Sys. Corp.*,
 130 Cal. App. 4th 440 ...................................................................... 32

*Mazur v. eBay Inc.*,
 257 F.R.D. 563 (N.D. Cal. 2009) ........................................................ 12

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ........................................................ 27, 28

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mazzola v. Roomster Corp.*,
  849 F. Supp. 2d 395 (S.D.N.Y. 2012)............................................................. 32

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993)........................................................................ 25, 29

*Nike, Inc. v. Kasky*,
  539 U.S. 654 (2003) ................................................................................ 21

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006).................................................................... 13

*Pfizer Inc. v. Super. Ct. (Galfano)*,
  182 Cal. App. 4th 622 (2010)................................................................... 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................ 22

*Red v. Kraft Foods, Inc.*,
  CV 10-1028-GW, 2012 U.S. Dist. LEXIS 186948
  (C.D. Cal. Apr. 12, 2012) ......................................................................... 33

*Rowden v. Pac. Parking Sys., Inc.*,
  282 F.R.D. 581 (C.D. Cal. 2012) .......................................................... 14, 15

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ................................................................................ 22

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (2010)................................................................... 15

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011)......................................................... 28, 29, 30

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
  No. CV 11-5858 CAS, 2013 U.S. Dist. LEXIS 88612
  (N.D. Cal. June 17, 2013)..................................................................... 31, 32

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996).................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .......................................................................*passim*

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001).............................................................. 4, 35

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.*.................................................*passim*

Cal. Civ. Code § 1782(a) .............................................................................. 32

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

7A Charles A. Wright, et. al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 1766 (3d Ed. 2005) ............................................................ 23

Charles A. Wright, Arthur R. Miller, FED. PRAC. & PROC. CIV. 3D § 1785.1 (2005) ......................................................... 14

Fed. R. Civ. P.
    23 ................................................................................................ 12
    23(a) ............................................................................. 12, 15, 22
    23(a)(1) ...................................................................................... 15
    23(a)(2) ...................................................................................... 15
    23(a)(3) ............................................................................... 17, 25
    23(a)(4) ............................................................................... 21, 22
    23(b) ......................................................................................... 12
    23(b)(3) ........................................................................... 1, 24, 26

Restatement (First) of Restitution § 65 (1937) ................................ 34

U.S. Cons. Article III ....................................................................... 18

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

## I.    PRELIMINARY STATEMENT

The unique facts in this case do not lend themselves to class treatment, and this Court should deny Plaintiff Marina Beltran's ("Plaintiff" or "Beltran") Motion for Class Certification, for the following key reasons:

- The proposed class is not ascertainable because it undoubtedly includes members who purchased cosmetic products from Defendant Avon Products, Inc. ("Avon") without regard to or with full understanding of Avon's animal testing policy. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007) (Certification is improper if there is "no definable class.").

- The proposed class lacks commonality under Federal Rule of Civil Procedure ("Rule") 23(a)(2) because, as set forth in the accompanying Declaration of Dr. Joel Steckel, the purchasing behavior of Avon's consumers, including those who may care about animal testing issues, is too divergent to allow for resolution of Plaintiff's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

- The predominance requirement of Rule 23(b)(3) cannot be met because consumers' exposure to, understanding of, and reactions to Avon's animal testing policies are not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

These three deficiencies – lack of ascertainability, commonality and predominance – are sufficient on their own to warrant a denial of class certification. But the facts in this case offer even further grounds for denying Plaintiff's Motion.

Plaintiff's original counsel filed this lawsuit with only Beltran as the proposed class representative, alleging that she was induced to purchase Avon cosmetic products based on misrepresentations that Avon's products were under no circumstances tested on animals, when in reality, Avon is required to submit some of its products to governments abroad who may require the products be tested before allowing them to be sold in their countries. (Dkt. No. 60, ¶ 6.) However, Beltran cannot represent the proposed class as she is neither typical nor adequate. Beltran is a former Avon Independent Sales Representative ("ISR") who started purchasing Avon products without knowing Avon's animal testing policy and, who,

1   to this day, has never read nor even searched for Avon's animal testing policy.

2   Keenly aware of Beltran's inability to serve as the class representative, Plaintiff's

3   new counsel began searching for other representatives within days of their first

4   appearance in this case. (*See* Dkt. No. 38; Declaration of Katherine Murray

5   ("Murray Decl."), filed concurrently herewith, Ex. A - Guillermo Depo. Ex. 50.)

6   These efforts yielded only two new individuals, both of whom were even more ill-

7   suited to represent the class than Beltran.[1]

8          Undeterred by the absence of a proper class representative, Plaintiff's

9   counsel moved forward with this case by publishing false statements about Beltran

10  in the Third Amended Complaint ("TAC"), in Beltran's sworn discovery responses,

11  and in Beltran's Declaration in Support of the Motion for Class Certification.  The

12  falsity of these statements came to light during Beltran's deposition, when she

13  admitted that she was never exposed to or aware of any representation or omission

14  regarding Avon's animal testing policy prior to purchasing her first Avon cosmetic

15  products or when making repeat purchases for years thereafter.  (*See* Murray Decl.,

16  Ex. B - Beltran Depo. at 95:15-20; 96:15-18; 175:3-13; 175:22-176:13.)  The fact

17  that Beltran's purchasing decisions were not affected in any way by Avon's animal

18  testing policy subjects her to unique defenses which render her atypical.  *See Hanon*

19  *v. Dataproducts Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992) (class certification

20  should not be granted "if 'there is a danger that absent class members will suffer if

21  their representative is preoccupied with defenses unique to it.'") (citation omitted).

22  Furthermore, Beltran's rampant credibility problems, perpetuated by her counsel,

23  coupled with the fact that this lawsuit was formulated well before she ever

24  volunteered to be a plaintiff, render her an inadequate representative.  *See Drake v.*

25  *Morgan Stanley & Co.*, No. CV 09-6467 ODW, 2010 U.S. Dist. LEXIS 47627, at

---

26  [1] Through the active solicitation of potential class representatives by People for the Ethical
27  Treatment of Animals ("PETA"), Plaintiff's counsel located Renee Tellez ("Tellez"), a Michigan
     resident who could not prosecute claims on behalf of California consumers, and Nichole
28  Gutierrez ("Gutierrez"), who refused to appear for her deposition. (*See* Dkt. No. 60, ¶¶ 7-8.)
     Plaintiff's counsel has withdrawn Tellez and Gutierrez as representative plaintiffs in this case.

AVON'S OPPOSITION TO MOTION FOR
                                        CLASS CERTIFICATION

1   *14 (C.D. Cal. Apr. 30, 2010) (named plaintiffs' claims atypical, in part, due to

2   their "lack of credibility").

3          The significant impediments to class certification here are particularly

4   troubling in light of the dramatic change in law that this case could effectuate.  In

5   what appears to be a case of first impression in this state, and one which could

6   drastically alter the disclosure requirements for companies doing business in

7   California, Plaintiff demands that Avon be required to disclose, on each of its

8   cosmetic products, that some of its products may be subjected to animal testing in

9   certain foreign countries.  Taking Plaintiff's allegations to their logical conclusion,

10  the potential ramifications of this case are sweeping, with companies such as Avon

11  being forced to disclose on their products any facet of their corporate responsibility

12  practices that might affect a consumer's purchasing decision, from their carbon

13  footprint to their philanthropy efforts.  The statutes here are to provide "consumer

14  protection," not to allow an all-out review and reformation of a company's business

15  practices.

16         The Supreme Court recently reaffirmed that "[t]he class action is 'an

17  exception to the usual rule that litigation is conducted by and on behalf of the

18  individual named parties only.'"  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432

19  (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).  To qualify

20  for class treatment, the "claims must depend upon a common contention" that is "of

21  such a nature that it is capable of classwide resolution."  *Dukes*, 131 S. Ct. at 2551.

22  Plaintiff has utterly failed to show that the putative class members were uniformly

23  exposed to the same alleged representations or omissions regarding Avon's animal

24  testing policy, or that they share her only recently-formed views on this issue,

25  resulting in a proposed class that is not ascertainable, and for which common

26  questions do not predominate.  She also has failed to offer any method for

27  calculating monetary relief on a classwide basis, let alone one that is tied to her

28  theories of liability.  *See Comcast*, 133 S. Ct. at 1426.

-3-          AVON'S OPPOSITION TO MOTION FOR
                     CLASS CERTIFICATION

1    The individualized nature of the liability and monetary relief inquiries in this

2    case, and the fact that the putative class includes members who have not been

3    injured, confirms that a class action is simply not the superior method for litigating

4    Plaintiff's claims. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192

5    (9th Cir. 2001) (A class action is not superior where "each class member has to

6    litigate numerous and substantial separate issues to establish his or her right to

7    recovery individually."). The Court should deny Plaintiff's Motion for Class

8    Certification.

9    **II.    STATEMENT OF FACTS**

10        **A.    Avon: A Direct Seller Of Cosmetics And Household Goods**

11    Founded in 1886, for the last 127 years Avon has offered women all over the

12    world the opportunity to achieve economic independence by providing them with

13    the tools to run their own businesses. Avon's business is conducted worldwide, in

14    more than 100 countries, primarily through direct selling. In the United States,

15    Avon relies primarily on REDACTED                    – the well-known "Avon

16    Ladies" – who earn a profit by purchasing products from Avon at a discount and

17    then selling them to their customers. Sales through ISRs account for approximately

18    REDACTED                    . (Murray Decl., Ex. C - Makover Depo. at 14:21-

19    25; 24:19-24.)

20    ISRs are not Avon employees but independent contractors. (*Id.* at 14:14-19.)

21    Customers order products through their ISR, who places the order with Avon. The

22    customers' relationship is with the ISRs, and the ISRs do not share their customers'

23    identities or other information with Avon. Pricing for Avon cosmetic products

24    varies not only from product to product but also among the same product depending

25    on the campaign and the discounts currently available. ISRs pay a discounted price

26    for the products they purchase, which varies depending on the product and the

27    ISR's earnings level. (Murray Decl., Ex. B - Beltran Depo. at 116:25-117:22.)

28    ISRs can charge their customers full price, or they can pass along their ISR discount

AVON'S OPPOSITION TO MOTION FOR
                                                        CLASS CERTIFICATION

1   to their customers.  ISRs are not required to – and do not – share with Avon the

2   prices they charge their customers.

3       Avon's first priority in training its ISRs is to ensure that they are empowered

4   to run a successful business through which they can gain a measure of financial

5   freedom.  Avon provides training materials to assist its ISRs in finding customers,

6   describing and selling products, and earning money.  The training materials do not

7   include information about Avon's corporate responsibility policies, such as its

8   animal testing policy, which are not high priority issues for most ISRs.  (Murray

9   Decl., Ex. C - Makover Depo. at 16:18-18:18; 19:24-21:23.)  ISRs, like the general

10  public, may learn about Avon's animal testing policy by visiting Avon's website.

11  **B.      Avon's Animal Testing Policy**

12      In 1981, Avon initiated a program to eliminate all animal testing of its

13  products.  (*See* Murray Decl., Ex. D – PLTF 178-79.)  In conjunction with these

14  efforts, Avon contributed to the establishment of the Center for Alternatives to

15  Animal Testing at Johns Hopkins University, and independently commissioned

16  research studies at the Center.  (*Id.*)  Avon also developed an extensive

17  computerized database containing historical testing data on Avon's products and

18  ingredients.  Utilizing this database, Avon was able to approve more than 95% of

19  its new formulas without animal testing by 1988.

20      On June 2, 1989, Avon announced a permanent end to the use of animals in

21  the safety testing of its products.  (Murray Decl., Ex. E – PLTF 180.)  At the same

22  time, Avon acknowledged in its press materials that "[u]ntil a broader range of

23  alternatives is developed . . . suppliers to the cosmetics industry may have to

24  continue to do some animal testing to substantiate the safety of their new

25  ingredients."  Thereafter, in 1993, Avon's articulated animal testing policy stated

26  that nothing in the policy "should be construed to mean that Avon will evade

27  animal tests required by law or by medical agencies.  Avon will conduct such tests,

28  but only after having first attempted to persuade the agencies to accept non-animal

-5-                    AVON'S OPPOSITION TO MOTION FOR
                       CLASS CERTIFICATION

1  test data." (Murray Decl., Ex. F – API4123-24.) From the beginning of its fight for

2  an end to animal testing, Avon has been clear that it will comply with all laws and

3  regulations that may require animal testing. (*Id.*)

4       In 2005, Avon posted its animal testing policy on its website. The policy

5  stated that "Avon will conduct animal testing only when required by law, at the

6  request of government health or medical authorities, and only after having first

7  attempted to persuade the requesting authority to accept non-animal test data."

8  (Murray Decl., Ex. G - API2565-66.)[2] Avon also published its first Corporate

9  Responsibility Report in 2005. (Murray Decl., Ex. H.) The Report provided a

10  comprehensive overview of Avon's key programs, and reiterated Avon's animal

11  testing policy, including the statement that Avon will conduct animal testing when

12  required by law. (*Id.* at p. API00019.) The Report was posted on Avon's corporate

13  website, www.avoncompany.com, and remains there today.[3]

14       Avon issued its second Corporate Responsibility Report online in 2009. The

15  Report also disclosed that "Avon will conduct animal testing when required by law,

16  at the request of government health or medical authorities, and only after having

17  first attempted to persuade the requesting authority to accept nonanimal test data."

18  (Murray Decl., Ex. I at p. API00294.) Avon's animal testing policy remains

19  unchanged to this day.

20       **C.   PETA Targets Avon**

21       In the mid-1980s, PETA launched its "Avon Killing Campaign," in which it

22  sought, through public pressure, to persuade Avon to stop animal testing of its

23  products. (Murray Decl., Ex. A - Guillermo Depo. at 21:11-20.) On June 2, 1989,

24  Avon announced a permanent end to the use of animals in the safety testing of its

25  products. (Murray Decl., Ex. E – PLTF 180.) Following Avon's announcement,

26  [2] In the TAC, Plaintiff alleges that Avon added this "required by law" language to its website in
27  2010. (Dkt. No. 60, ¶ 15.) This is wrong. The language has been on Avon's website since at
   least 2005.

28  [3] Archived copies of all of Avon's Corporate Responsibility reports are available at
   http://avoncompany.com/corporatecitizenship/corporateresponsibility/resourcecenter/reports.html

AVON'S OPPOSITION TO MOTION FOR
                         CLASS CERTIFICATION

1    PETA, under the direction of Kathy Guillermo, PETA's Senior Vice President of

2    Laboratory Investigations, added Avon to its Don't Test List, featuring "cruelty-

3    free" cosmetics and other companies.  Contrary to the allegations in the TAC, Avon

4    never provided PETA with a pledge or statement of assurance so it could gain

5    inclusion onto the Don't Test List.  (*Id*. at 139:10-140:8.)  Rather, PETA

6    unilaterally added Avon to its Don't Test List after reading about Avon's efforts to

7    end animal testing.  (*Id*. at 171:15-21.)

8          Until at least April 2010, PETA's Don't Test List included companies who

9    did not test its products on animals and also companies "that manufacture both

10   products that are and products that are not required to be tested on animals, but in

11   order to be listed, each company has stated that it does not conduct any animal tests

12   that are not required by law."  (*Id*. at 66:18-67:20 and Ex. 26 at p. 4.)  During this

13   entire period, PETA misinformed its supporters that the Don't Test List "was

14   founded on the principle that no law requires that these types of products be tested

15   on animals."  (*Id*. at Depo. Ex. 29 at API666.)  PETA recently confirmed that this

16   statement was false:

17         Q.  Okay.  And so when you made the statement in 1989, and
           continued on 'til today, that the premise of your do not test list is
18         that there's no requirement that these products be tested on
           animals.  You had done no research to find out whether or not
19         that was a true statement?
20         A.  The campaign was not based on the premise that it's not
           required, that was certainly one statement we made, because it
21         was factual, but our campaign was not based on that premise.
22         . . .
23         Q.  Then - then this statement in the 2005 buying guide's wrong;
           right, you said that?
24         A.  I - it is wrong that it was founded on that principle, yes.
25         . . .
26         Q.  The statement that exists in Exhibit 27, that says that no law
           requires that these types of products be tested on animals is not a
27         clear and accurate statement of the law globally; correct?
28         A.  It is a statement of the US law.

AVON'S OPPOSITION TO MOTION FOR
                                                   CLASS CERTIFICATION

1    Q. My statement –
2    A. Correct.
     Q. - is correct, it's not a clear statement of the law, globally;
3    correct?
4    A  Correct.
5    (*Id.* at 49:16-25; 63:15-18; 119:2-11.)
6        PETA led consumers to believe that, since no law required animal testing, the
7    companies listed on the Don't Test List did not test their products on animals,
8    period.  PETA made this representation despite the fact that, from 1989 through
9    2010, PETA had not conducted any investigations into whether any country outside
10   the U.S., including China, required animal testing for cosmetic or household
11   products.  (*Id.* at 70:10-71:9; 71:13-24.)  PETA also informed its supporters that
12   companies listed on the Don't Test List who are later found to have tested products
13   on animals will be subject to a "public relations disaster" and "potential consumer
14   fraud lawsuits."  (*Id.* at 193:5-195:17 and Ex. 27 at p.1.)
15       In 2010, PETA changed the criteria for its Don't Test List to remove from
16   the List companies that tested on animals when required to do so by law.  (*Id.* at
17   66:18-67:20; 100:15-101:3; 130:10-14.)  PETA claims it made this change to
18   eliminate a "loophole" used by companies to gain inclusion on the Don't Test List,
19   notwithstanding the fact that the power to add or remove a company from the List
20   rested solely with PETA.  (*Id.* at 74:2-10; 76:15-77:25; 100:15-101:10; 139:10-16.)
21   Following this unannounced change to the Don't Test List, PETA informed Avon
22   that it no longer qualified to be on the List.  (*Id.* at Ex. 28 at PLTF 172.)[4]
23       Despite Plaintiff's allegations in this case, Avon has been consistently clear
24   in its statements that it will conduct animal testing when required by law.  As PETA
25   acknowledged in internal emails, Avon was being "surprisingly honest" with
26
27   _____
     [4] Ms. Guillermo testified that the only acceptable solution from PETA's point of view was for
     Avon to leave markets like China, thus depriving women in those countries of a business
     opportunity and weakening Avon's ability to lobby the Chinese government for a change to its
28   requirements. (*Id.* at 123:5-8.)

                                    -8-         AVON'S OPPOSITION TO MOTION FOR
                                                CLASS CERTIFICATION

1   respect to its animal testing policy, acknowledging that animal testing of its

2   products may occur in other countries. (*Id.* at Ex. 40.)  Nevertheless, under the

3   false premise that Avon had changed its animal testing policy without informing

4   PETA, Ms. Guillermo vowed to give Avon "a nasty shock." (*Id.* at 209:10-210:8

5   and Ex. 40.)  By November 2011, PETA was telling consumers that it was "stunned

6   to learn that [Avon] is paying for tests on animals in China" and that it had moved

7   Avon from its Don't Test List to its Do Test List. (*Id.* at Ex. 42.)  On February 16,

8   2012, PETA issued a formal press release falsely accusing Avon of changing its

9   animal testing policy and resuming animal testing. (Murray Decl., Ex. J.)

10          **D.    PETA Searches For Class Representatives For Plaintiff's Case**

11          Less than two weeks after PETA issued its press release, Beltran and her

12   counsel filed this lawsuit, alleging that she was misled by misrepresentations

13   regarding Avon's animal testing policy.[5]  (Murray Decl., Ex. B - Beltran Depo. at

14   180:7-15; 202:6-25.)  On June 1, 2012, the Court disqualified Plaintiff's counsel

15   due to a conflict of interest, and on July 11, 2012, Kabateck Brown Kellner, LLP

16   appeared on behalf of Beltran. (Dkt. Nos. 34, 38.)  Days later, under the guise of

17   "summer scheduling conflicts," Plaintiff's new counsel requested an extension to

18   file a Second Amended Complaint ("SAC").  During this time, Plaintiff's counsel,

19   through PETA, was frantically looking for class representatives, obviously aware of

20   Beltran's shortcomings as a class representative. (*See* Murray Decl., Ex.

21   A - Guillermo Depo. at Ex. 50) (email from Plaintiff's counsel to PETA: "Our

22   SAC is due on July 26th, next Thursday.  I certainly hope we can get a class rep in

23   by then.").

24          Beltran filed her SAC on July 26, 2012 with no new class representatives

25   while PETA ramped up its efforts to find representatives by posting a solicitation

26   _____

27   [5] Plaintiff's original Complaint, entitled *Beltran v. Estee Lauder Inc. et al.*, Case No. SACV12-
      0312 CJC (ANx), was filed against Avon, Estee Lauder, Inc. and Mary Kay.  On March 22, 2012,

28   Beltran Plaintiff dismissed her claims against Avon, and on March 23, 2012, she filed a new
      Complaint against only Avon. (Dkt. No. 1.)

1   page on its website and emailing consumers. (*Id.* at 270:22-271:22.)  The

2   solicitation page was entitled "Help Fight Back Against Avon" and stated that

3   consumers "might be just the right person to help make Avon pay for its misleading

4   practices!" (*Id.* at Ex. 47.)

5         **E.**    **The Court Limits This Action To A Fraudulent Concealment Case**

6         The allegations in the SAC, like its prior iterations, were based on Avon's

7   advertising campaign and its relationship with PETA. (Dkt. No. 41.)  Avon moved

8   to dismiss the SAC, and on September 20, 2012, the Court issued its Order granting

9   in part Avon's Motion to Dismiss. (Dkt. No. 59.)  The Court dismissed Beltran's

10   affirmative misrepresentation claim on grounds that she had not adequately pled

11   that she saw Avon's alleged advertising campaign or its website. (*Id.* at 9:4-16;

12   11:23-12:7.)  The Court also dismissed Beltran's UCL, FAL and CLRA claims to

13   the extent they were derivative of the misrepresentation claim. (*Id.* at 12:7-8.)

14   Beltran was given leave to file a TAC consistent with the Court's ruling. (*Id.* at

15   14:18-19.)

16         On October 10, 2012, Beltran, along with the two new plaintiffs located by

17   PETA, Gutierrez and Tellez, filed the TAC, asserting claims for fraudulent

18   concealment and violations of the UCL and CLRA. (Dkt. No. 60.)  Although

19   Beltran dropped her affirmative misrepresentation claims, in an attempt to cast this

20   as an omissions case, she did not amend a single factual allegation from the SAC,

21   and she continued to allege that she purchased Avon products after being "exposed

22   to and aware of" Avon's marketing and advertising campaign about its animal

23   testing practices and after reading an animal testing statement on Avon's website.

24   (*Id.* at ¶ 6.)  Avon moved to dismiss and to strike the TAC, and on December 11,

25   2012, the Court denied, in part, Avon's Motion to Dismiss and Motion to Strike.

26   (Dkt. No. 73.)  On May 10, 2013, Plaintiff filed her Motion for Class Certification,

27   seeking to certify a California class of persons who purchased Avon cosmetic

28   products. (Dkt. No. 84.)

AVON'S OPPOSITION TO MOTION FOR
                                                    CLASS CERTIFICATION

**F.     Plaintiff Marina Beltran Is The Only Remaining Class Representative**

Beltran began purchasing Avon cosmetic products in 1995, based on recommendations from friends and family. (Murray Decl., Ex. B - Beltran Depo. at 173:4-7; 173:13-174:4.) Prior to her first purchase, Beltran did not read any Avon product labels or packaging, nor did she inquire about Avon's animal testing policy. (*Id.* at 175:3-13; 175:22-176:13.) Three years later, in 1998, Beltran became an ISR. (*Id.* at 61:13-17.) While attending a private meeting for ISRs, Beltran overheard a statement that Avon's products are not tested on animals. (*Id.* at 99:6-100:16; 176:14-24.) Beltran testified that, had she been told at one of these meetings that Avon will test products on animals when required by law (as stated on Avon's website), she would not have purchased Avon products. (*Id.* at 213:11-24.) From at least 2008 until the day she filed her lawsuit, Beltran had not spoken with anyone about Avon's animal testing policy, nor had she done any investigation of such policy. (*Id.* at 227:5-8.)

Since at least 2008, Beltran has paid for her Avon products in cash, and has purchased them at swap meets or in private homes. (*Id.* at 112:16-113:11.) The amounts Beltran paid for Avon products varied each month, and she never received a receipt for her purchases. (*Id.* at 112:16-23; 184:24-185:7.) While an ISR, Beltran also purchased Avon products for personal use, but she would pay the discounted ISR prices for these products, which varied by each two-week campaign and by product. (*Id.* at 116:25-117:22; 187:17-23; 189:15-22.)

Beltran claims that in early 2012, she read a Yahoo! article accusing Avon of testing all of its products on animals. (*Id.* at 180:7-19.) After reading the article, Beltran did not contact Avon, research Avon's animal testing policy, attempt to verify the accuracy of the article, or attempt to get a refund for her purchases. (*Id.* at 106:17-107:5; 181:8-182:7.) Instead, she stated that she opened the Yellow Pages, picked a lawyer at random, and filed this lawsuit. (*Id.* at 19:7-20:10.)

-11-                          AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

III.   **STANDARD FOR CLASS CERTIFICATION**

The Supreme Court recently reaffirmed that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Califano v. Yamasaki*, 442 U.S. at 700-701). To qualify for this exception, the party seeking class certification must provide facts sufficient to satisfy the requirements of Rules 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977). Rule 23 "does not set forth a mere pleading standard," but rather requires that a party "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" in order to prosecute a class action. *Comcast*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551-52). Additionally, a plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* Thus, before certifying a class, district courts must perform a "rigorous analysis" to determine whether the requirements of Rule 23 are met. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

IV.   **THE PROPOSED CLASS IS NOT ASCERTAINABLE OR IDENTIFIABLE**

This case cannot proceed as a class action because the proposed class is not ascertainable or identifiable. "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). The proposed class "must 'be defined in such a way that anyone within it would have standing.'" *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCx), 2009 U.S. Dist. LEXIS 121768, at *11 (C.D. Cal. Dec. 9, 2009) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).

The proposed class is not ascertainable because it includes members who lack standing. The decision in *Diacakis v. Comcast Corp.*, No. C 11-3002, 2013

-12-

1    U.S. Dist. LEXIS 64523 (N.D. Cal. May 3, 2013) is persuasive here.  There,

2    plaintiff sought to certify a class of persons who purchased a bundled internet, cable

3    and telephone service cable package from Comcast, "irrespective of whether he or

4    she was deceived by Comcast's alleged failure to disclose the existence of

5    additional modem charges" with those packages.  *Id.* at \*12.  The court denied

6    certification, noting that "[s]ince the proposed class includes persons who were not

7    injured in the same manner as Plaintiff, the proposed class is overbroad."  *Id.*

8         In issuing its decision, the *Diacakis* court cited to the Seventh Circuit's

9    decision in *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  In

10   *Oshana*, the plaintiff brought a class action against the Coca-Cola Company

11   alleging that it failed to disclose that fountain Diet Coke contained aspartame and

12   saccharin whereas bottled Diet Coke contained only aspartame.  The court denied

13   certification of a class that included all purchasers of fountain Diet Coke.  The

14   Seventh Circuit affirmed, holding that the proposed class definition was overbroad,

15   as it "could include millions who were not deceived and thus have no grievance"

16   and "[c]ountless members of [plaintiff]'s putative class could not show any

17   damage, let alone damage proximately caused by Coke's alleged deception."  *Id.* at

18   514.

19        As in *Diacakis* and *Oshana*, the proposed class in this case is not

20   ascertainable because it is overbroad.  It includes all California purchasers of Avon

21   cosmetic products, including consumers who knew, prior to their purchase, that

22   Avon's products are tested on animals based on disclosures made on Avon's

23   website; consumers who do not care about Avon's animal testing practices and

24   would have purchased Avon products regardless of Avon's stance on the issue; and

25   consumers who received a refund for their purchases through Avon's refund policy.

26   Because the proposed class includes at least these three groups of persons who were

27   not harmed, it is imprecise and overbroad and should not be certified.

28        Plaintiff may argue that she can somehow overcome the ascertainability

-13-            AVON'S OPPOSITION TO MOTION FOR
                CLASS CERTIFICATION

1    problem through the creation of subclasses.  The Court should reject this argument,

2    as any effort to narrow the class in this manner would not make the class suddenly

3    identifiable.  There is simply no feasible way to determine, on a classwide basis,

4    which Avon customers cared about Avon's animal testing practices but did not

5    know Avon's policies and were thus deceived by their lack of knowledge into

6    purchasing Avon cosmetic products.  *See Hovsepian v. Apple, Inc.*, No. 08-5788 JF

7    (PVT), 2009 U.S. Dist. LEXIS 117562, at *6 (N.D. Cal. Dec. 17, 2009) (class was

8    not ascertainable because it included members who had no standing to sue because

9    they had no injury).  It is impossible to account for the putative class members that

10   were unaffected by Avon's animal testing policy through subclasses, or by

11   redefining the class.  Certainly, many Avon consumers are aware of and understand

12   Avon's animal testing policy, and many find it irrelevant to their purchasing

13   decisions.  See *Denney*, 443 F.3d at 265 ("'To avoid a dismissal based on a lack of

14   standing, the court must be able to find that both the class and the representatives

15   have suffered some injury requiring court intervention.'") (quoting Charles A.

16   Wright, Arthur R. Miller, FED. PRAC. & PROC. CIV. 3D § 1785.1 (2005)).

17        Further complicating matters is the fact that many people, like Beltran, will

18   have purchased Avon products while serving as ISRs.[6]  Products purchased by ISRs

19   to resell to their customers rather than for personal use would not be covered by the

20   CLRA, which limits recovery to consumers.  *See Lazar v. Hertz Corp.*, 143 Cal.

21   App. 3d 128, 142 (1983) (businessman who sued a car rental company for

22   overcharging customers for gas could not maintain a CLRA class action because he

23   did not rent his car as a "consumer.").  To ascertain the true CLRA class for this

24   case, the Court would need to engage in specific factual inquiries regarding the

25   purpose of each purchase made by an ISR.  Such individualized inquiries make the

26   class unascertainable.  *Rowden v. Pac. Parking Sys., Inc.*, 282 F.R.D. 581, 585-86

27

28   [6] Both Tellez and Gutierrez, the former named Plaintiffs, also were ISRs.

-14-                    AVON'S OPPOSITION TO MOTION FOR
                       CLASS CERTIFICATION

(C.D. Cal. 2012) (class not ascertainable in FACTA case where "individuals would be required to present proof of their 'consumer' purchase, and . . . every single class member will have to testify to prove his or her consumer status.").[7]

## V.   BELTRAN CANNOT SATISFY THE REQUIREMENTS OF RULE 23(a) TO CERTIFY THIS CASE AS A CLASS ACTION

### A.   There Is No Commonality Across The Putative Class

Plaintiff cannot satisfy the commonality requirement of Rule 23(a)(2), which requires a showing that class members have "suffered the same injury." *Dukes*, 131 S. Ct. at 2550-51. Merely "reciting" a series of broad questions such as "whether Avon concealed or suppressed a material fact about animal testing of its products" does not satisfy the commonality requirement. *Id.* at 2565. Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (citation omitted). In cases alleging violation of consumer protection statutes such as the UCL and CLRA, Plaintiffs must show "some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief." *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 924 (2010). Thus, a class that includes persons who were not exposed to or did not care about defendant's alleged misconduct cannot be certified. *See Pfizer Inc. v. Super. Ct. (Galfano)*, 182 Cal. App. 4th 622, 631-32 (2010).

Here, there are numerous, significant individualized factual issues as to whether the proposed class members were fraudulently induced to purchase Avon cosmetic products. In the TAC, Plaintiff alleges that she and the putative class

---

[7] Because the class is not ascertainable or identifiable, Plaintiff also cannot satisfy the numerosity requirement of Rule 23(a)(1). *See Diacakis*, 2013 U.S. Dist. LEXIS 64523, at *14 ("Plaintiff offers no evidence regarding the number of those subscribers who were allegedly misled by Comcast into believing there would be no modem-related fees if they signed up for the Triple Play package. The mere fact that there are numerous Triple Play subscribers, standing alone, is insufficient to show numerosity.")

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

1   would not have purchased Avon products had they known that some of Avon's

2   products were tested on animals. (*See* Dkt. No. 60, ¶¶ 25, 38, 45.)  As explained in

3   greater detail in the Declaration of Dr. Joel Steckel, a renowned expert on consumer

4   purchasing behavior, this type of behavior describes a model of consumer conduct

5   that involves a "lexicographic decision process," whereby consumers prioritize

6   certain attributes of the brand or product according to degrees of importance prior

7   to making their purchasing decisions. (*See* Declaration of Joel Steckel ("Steckel

8   Decl."), filed concurrently herewith, ¶¶ 17, 21, 29.)  Under the theory alleged in the

9   TAC, all Avon consumers would rank "no animal testing" as the most important

10  attribute, since no consumer would purportedly purchase a product had they known

11  the company submits to animal testing. (*Id.* at ¶ 29.)  This "no animal testing"

12  attribute would thus function like a light switch, switching off for products that are

13  not labeled with "no animal testing" (meaning that consumers would no longer

14  consider purchasing those products), and switching on for those products labeled as

15  not tested on animals. (*Id.*)  If the light remains on, consumers would then consider

16  other attributes prior to deciding which brand or product to purchase. (*Id.*)

17        Plaintiff's suggestion that all consumers would have reacted in the same

18  manner to Avon's disclosure or nondisclosure of its animal testing policy is not

19  supported by the evidence.  If it were true that no class member would have

20  purchased Avon cosmetic products had they known that some of Avon's products

21  are tested on animals, "then not only would customers be defecting from Avon as

22  soon as they learned about animal testing in China, but those customers who

23  defected from Avon would certainly consider a brand's support of social causes to

24  be among the most (and not the least) important drivers of purchase intent." (*Id.* at

25  ¶ 58.)  In addition, the evidence shows that most Avon customers "REDACTED

26

27                                                          (*Id.* at ¶ 39.)  REDACTED

28

1   REDACTED

2

3

4                   (*Id.* at ¶ 54.)

5         This data shows that other attributes – not animal testing – influenced Avon

6   consumers to purchase products.  Given the vast divergence of purchasing behavior

7   among Avon customers, and the fact that most are not concerned with animal

8   testing issues, the question of whether each class member was exposed to and acted

9   upon Avon's purported omission cannot be subject to common proof.   Moreover,

10  because undoubtedly some consumers purchased products with full understanding

11  of Avon's policy, they cannot have suffered the same injury as the putative class.

12          **B.**     **Beltran's Claims Are Not Typical Of The Putative Class**

13        Beltran's prior purchasing behavior renders her atypical of the class she

14  seeks to represent.  Under Rule 23(a)(3), Beltran must show that "the claims or

15  defenses of the representative parties are typical of the claims or defenses of the

16  class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is 'whether other members

17  have the same or similar injury, whether the action is based on conduct which is not

18  unique to the named plaintiffs, and whether other class members have been injured

19  by the same course of conduct.'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d

20  1015, 1030 (9th Cir. 2012) (citation omitted).

21        Beltran cannot satisfy the typicality requirement because she is subject to the

22  unique defense that, unlike the class alleged in the TAC, she purchased Avon

23  cosmetic products for reasons that had nothing to do with Avon's animal testing

24  policy.  *See Hanon*, 976 F.2d at 508 (class certification should not be granted "if

25  'there is a danger that absent class members will suffer if their representative is

26  preoccupied with defenses unique to it.'") (citation omitted).  Contrary to the

27  allegations in the TAC and in her sworn discovery responses, Beltran never read or

28  heard anything about Avon's animal testing policy prior to her first purchase of

                                        -17-         AVON'S OPPOSITION TO MOTION FOR

1  Avon cosmetic products, or for three years thereafter:

2      Q.  At the time that you first requested the first Avon products that
3      you purchased, did you have an opportunity to review the labels or
       packaging for those products?

4      A.  No, no.  I did not investigate.
5      Q.  At the time that you purchased your first Avon products, did you
       know what Avon's animal testing practice was?
6      A.  I didn't know.
       Q.  Did you ask anybody?
7      A.  No.

8          . . .

9      Q.  So for the first three years of your purchases, you didn't know
       anything about Avon's animal testing practices; right?
10         . . .
11     A.  No.
       Q.  At the time that you first purchased Avon cosmetic products back
12     in 1995, were you only using products that were not tested on
13     animals, or did you not know?
       A.  I didn't know.
14     Q.  Did you review any information about the products you were
15     purchasing, prior to purchasing your first Avon products?
       A.  Before, before?
16     Q.  Before your first purchase.
17     A  No.

18  (Murray Decl., Ex. B – Beltran Depo. at 175:3-13; 175:22-176:13.)[8]

19      Also despite the allegations in the TAC, Beltran never read any statement on

20  Avon's website about its animal testing practices, and she never was exposed to any

21  advertising or marketing materials regarding Avon's animal testing policy:

22      Q.  Were you exposed to any marketing or advertising that said
        that Avon was a cruelty-free company?
23

24  [8] The fact that Avon's animal testing policy played no role in Beltran's decision to purchase Avon
25  cosmetic products also demonstrates that she lacks standing to pursue this case.  As this Court
    held in *Johnson v. Mitsubishi Digital Electronics America, Inc.*, 578 F. Supp. 2d 1229, 1241 n.3
26  (C.D. Cal. 2008), "[s]ince Mr. Johnson has not established that his decision to purchase the
    television was affected directly by [Defendant's] actions, he could not have suffered the injury
27  needed to have standing to sue under § 17200."  *See also Cantrell v. City of Long Beach*, 241
    F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court
28  "must meet the stricter federal standing requirements of Article III").

-18-                    AVON'S OPPOSITION TO MOTION FOR
                        CLASS CERTIFICATION

A. Whether I saw a campaign?
Q. Advertising or marketing materials.
A. No. I've never seen it.

. . .

Q. Do you recall seeing a statement on Avon's website that said that the company does not test its products on animals?
A. I never saw it.

(*Id.* at 95:15-20; 96:15-18.)[9]

Beltran also never heard or read anything about Avon's animal testing practices during the class period. (*Id.* at 227:5-8.) Rather, like many Avon purchasers, Beltran purchased Avon products based on recommendations from people she knew that had nothing to do with Avon's animal testing practices. (*Id.* at 173:13-174:4.) Beltran thus cannot represent a class of consumers who were allegedly misled by Avon's omissions because, even if Avon had disclosed more information about its animal testing policy, Beltran would not have sought out or been aware of those disclosures. *See Buckland v. Threshold Enters., Ltd.,* 155 Cal. App. 4th 798, 807 (2007) (where the alleged misrepresentation is an omission, a plaintiff must show she "would have been aware of it" had the omitted fact been disclosed) (citation omitted).[10]

Beltran is also not typical of the class she seeks to represent because animal testing has not been an actual concern of hers during the class period. Although the TAC criticizes Avon for not labeling its products as being tested on animals, in just the past year, Beltran has purchased other brand products whose labels likewise do not indicate whether they are tested on animals. (*Id.* at 82:23-85:21; 93:16-20; 94:19-95:3.) As with Avon's products, Beltran did not investigate whether these

---

[9] The only Avon website Beltran has ever visited is Avon's product website, www.avon.com, to review product pricing. She never visited Avon's corporate website, www.avoncompany.com, to review Avon's animal testing policy. (*Id.* at 95:21-96:18; 102:10-103:9.)

[10] Furthermore, Beltran only learned anything about Avon's animal testing policies by virtue of being an ISR at a private meeting for ISRs where some undisclosed person mentioned that Avon does not test on animals. This method of disclosure also makes her atypical since the vast majority of Avon purchasers are consumers who do not attend these meetings.

AVON'S OPPOSITION TO MOTION FOR
                           CLASS CERTIFICATION

non-labeled products were tested on animals prior to her purchase. (*Id.*) When

asked to reconcile this purchasing behavior with the allegations in the TAC, Beltran

revealed that she only recently became concerned about animal testing issues:

> Q. So last year when you purchased the Sexy Hair product, you
> weren't concerned about whether that product was tested on
> animals; right?
> A. I didn't know anything about PETA. And as I said before, if
> I go to that list that they do test or they do not do tests, and if I
> find out that it's on that list, I do not buy the product.
> Q. Okay. So let's not -- don't focus on what you would do right
> now. What I'm asking is when you bought this Sexy Hair
> product, you didn't know if it was tested on animals; correct?
> A. I didn't know.
> Q. And you bought the product anyway; correct?
> A. Because as I said before, that product, a lot of people were
> telling me that it's good and all that.
> Q. And that's why you bought the product?
> A. Yes.
>
>   . . .
>
> Q. Okay. So what - your buying habits today are different than
> your buying habits in the past. Would you agree with that?
> A. A little bit of a difference. Not everything.
> Q. So now you're more concerned with this animal testing than
> you were in the past?
>
>   . . .
>
> A. Correct.

(*Id.* at 94:10-95:3; 141:10-20.)

In fact, Beltran continues to purchase and use products made by companies

who conduct animal testing. (*Id.* at 148:20-21; 149:2-5; 151:10-19; 153:22-154:10;

Murray Decl., Ex. K at pp. 4, 12). Although she contends that she now consults

PETA's Do Test and Don't Test Lists prior to purchasing products, Beltran still

purchases products from companies that do not appear on the Don't Test List, such

as Perry Ellis and Tommy Bahama, and from stores that do appear on the Do Test

List, such as Walgreens. (Murray Decl., Ex. B – Beltran Depo at 161:1-163:4;

164:1-22.) The fact that animal testing issues did not influence Beltran's

AVON'S OPPOSITION TO MOTION FOR
                                          CLASS CERTIFICATION

1  purchasing decisions during the class period makes her an atypical class

2  representative. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

3  (Although the representative claims need not "be substantially identical" to those of

4  absent class members, they must be "reasonably co-extensive.")

5       Plaintiff's counsel and PETA have recognized Beltran's short-comings as a

6  class representative. Beltran and her counsel filed this lawsuit less than two weeks

7  after PETA issued its press release. After the Court disqualified Plaintiff's counsel

8  due to a conflict of interest, and Kabateck Brown Kellner, LLP appeared on behalf

9  of Beltran, a search began for new class representatives. (*See* Murray Decl., Ex.

10  A - Guillermo Depo. Ex. 50). While those efforts succeeded in adding Tellez and

11  Gutierrez, neither of those plaintiffs can represent the proposed class.

12       Finally, the Court should be mindful of the point raised by Justice Breyer,

13  when considering *Nike, Inc. v. Kasky*, 539 U.S. 654 (2003), a case where a

14  California resident sued Nike based on disagreements with its foreign labor

15  policies. Writing for the dissent, Justice Breyer voiced concern over abuses to the

16  class action process by "ideological plaintiffs," noting that "[t]he delegation of state

17  authority to private individuals authorizes a purely ideological plaintiff, convinced

18  that his opponent is not telling the truth, to bring into the courtroom the kind of

19  political battle better waged in other forums."[11] *Id.* at 679-680. Beltran's **recent**

20  ideological disagreement with Avon's animal testing policy does not allow her to

21  represent a class that was purportedly injured by Avon's alleged nondisclosures.

22      **C.**   **Beltran Cannot Satisfy The Adequacy Requirement**

23       Rule 23(a)(4) requires that "the representative parties will fairly and

24  adequately protect the interests of the class." This requirement "is essential to due

25  process, because a final judgment in a class action is binding on all class members."

---

[11] *Nike* was decided pre-Proposition 64, at a time when a plaintiff with no injury could act as a private attorney general and bring a case under the UCL. Beltran is essentially doing the same thing here by bringing a class action when she herself does not have a cognizable injury. Accordingly, the concerns expressed by the dissenting justices in *Nike* are applicable to this case.

    AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

1    *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1083 (6th Cir. 1996).  "[T]he Due Process

2    Clause of course requires that the named plaintiff at all times adequately represent

3    the interests of the absent class members."  *Phillips Petroleum Co. v. Shutts,* 472

4    U.S. 797, 812 (1985).  Accordingly, the court must "evaluate carefully the

5    legitimacy of the named plaintiff's plea that he is a proper class representative

6    under Rule 23(a)."  *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1983).  In

7    particular, a "class representative must be part of the class and 'possess the same

8    interest and suffer the same injury' as the class members."  *E. Tex. Motor Freight*

9    *Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists*

10   *Comm. to Stop the War,* 418 U.S. 208, 216 (1974)).

11              **1.     Beltran is not an adequate class representative**

12           Beltran also cannot serve as the class representative because she lacks

13   credibility.  *See Drake,* 2010 U.S. Dist. LEXIS 47627, at *14 (finding named

14   plaintiffs' claims atypical, in part, due to their "lack of credibility").  At her

15   deposition, Beltran testified that she never purchased products from Avon's

16   website, despite the fact that her counsel relied on those very allegations to survive

17   Avon's motions to dismiss.  Beltran included this misstatement in her discovery

18   responses and even as recently as in her Declaration in support of Class

19   Certification.  (*Compare* TAC, ¶ 6; Dkt. No. 84-2, ¶ 4 *with* Murray Decl., Ex.

20   B - Beltran Depo. at 64:18-65:1; 65:8-16; 70:14-73:2.)  Beltran also testified that

21   she had not read anything about Avon's animal testing policies prior to purchasing

22   Avon products, even though she alleged those precise facts in the TAC and in

23   discovery responses.  (*Compare* Dkt. No. 60, ¶ 6 and Murray Decl., Ex. B - Beltran

24   Depo. Ex. 58 at 21:15-22 *with* Murray Decl., Ex. B - Beltran Depo. at 202:19-

25   204:4; 224:9-18.)  Beltran recently admitted that her "denials" in response to

26   several Requests for Admission should have been admissions.  (*See* Beltran Depo.

27   at 203:3-204:4; 206:14-208:5.)  Beltran also admitted that several of her verified

28   interrogatory responses were wrong.  (*Id.* at 215:24-216:3; 218:22-219:15; 223:9-

                                          -22-                AVON'S OPPOSITION TO MOTION FOR
                                                             CLASS CERTIFICATION

16.) Beltran's repeated misstatements render her an inadequate representative. *See*
*Feske v. MHC Thousand Trails Ltd. P'ship.*, No. 11-4124PSG, 2013 WL 1120816,
at *13 (N.D. Cal. Mar. 18, 2013) ("[I]nconsistent statements" and "misstatements in
[a] complaint raise doubts about whether the [representative] or their counsel
should represent the interests of other, absent class members.").

### 2.    No Avon customer would be an adequate class representative

Moreover, given the circumstances that gave rise to this lawsuit, no
consumer could ever be an adequate representative for this case, as they would be
"simply lending their names to a suit controlled entirely by the class attorney." 7A
Charles A. Wright, et. al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 1766 (3d
Ed. 2005). Here, PETA has been very public about the fact that, any company on
its Don't Test List who is found to have tested its products on animals will be
subject to a "public relations disaster" and "potential consumer fraud lawsuits."
(Murray Decl., Ex. A - Guillermo Depo. at 193:5-195:17 and Ex. 27.) Following
PETA's change to its Don't Test List and the subsequent removal of Avon from
that List, PETA unleashed its public relations disaster on Avon, accusing Avon of
resuming animal testing and changing its policy, when PETA's policy had changed
while Avon's remained the same. (Murray Decl., Ex. J.) PETA then worked with
Plaintiff's counsel to search for class representatives for this case, advertising that
they "might be just the right person to help make Avon pay for its misleading
practices!" (Murray Decl., Ex. A - Guillermo Depo. Ex. 47.)

Courts have refused to grant class certification based on litigation tactics that
were much less brazen than PETA's on behalf of Plaintiff's counsel. In *Bodner v.*
*Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal.
Apr. 25, 2007), for instance, plaintiff brought a putative class action against Oreck
Direct, LLC, accusing it of marketing dysfunctional air purifiers. The plaintiff
alleged that he purchased an Oreck air purifier after viewing an infomercial

-23-                    AVON'S OPPOSITION TO MOTION FOR
                        CLASS CERTIFICATION

indicating that the product would remove allergens from the air, but that the product had no positive impact on his allergies. *Id.* at *2. Plaintiff testified at his deposition that he became a plaintiff after responding to an advertisement by plaintiff's counsel, who was looking for representatives for a class action lawsuit. *Id.* at *3. Plaintiff did not read the complaint before it was filed and virtually everything he knew about the case came from his attorneys. *Id.* Based on these facts, the district court refused to certify a class, holding that plaintiff had not met the typicality and adequacy requirements for class certification. It noted:

> It is clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action. Such a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights.

*Id.* at *5-6.

As in *Bodner*, this lawsuit was conceived well before a plaintiff existed. PETA was "approached by a law firm that was seeking to file a lawsuit and asked if we had any representatives of the class . . . ." (Murray Decl., Ex. A - Guillermo Depo. at 198:15-20.) Beltran, the sole proposed representative, is inadequate.[12] Put another way, the conduct underlying this case "does not look good, does not sound good, and does not smell good. In fact, it reeks. The court [should] not participate in this scheme by certifying a class." *Hernandez*, 251 F.R.D. at 490.

## VI.   BELTRAN CANNOT CERTIFY A RULE 23(b)(3) CLASS

### A.   Common Questions Do Not Predominate In This Case

Plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3), which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is similar, but more rigorous, than Rule 23(a)(3)'s commonality prerequisite. The "main concern in the predominance inquiry . . . [is] the balance

---

[12] *See Hernandez v. Balakian*, 251 F.R.D. 488, 490 (E.D. Cal. 2008) (denying certification where plaintiff's counsel constructed the lawsuit before it had a plaintiff: "[t]o grant class certification in such circumstances would be to place this court's imprimatur on litigation practices which it finds abhorrent and inconsistent with the standards of federal class action suits.")

AVON'S OPPOSITION TO MOTION FOR
                                       CLASS CERTIFICATION

between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011), *aff'd*, 718 F.3d 423 (5th Cir. 2013). A court must analyze these elements to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010). Here, individualized inquiries predominate on both liability and damages issues, precluding class treatment.

### 1. Individualized causation issues preclude class treatment

The causation element in each of Plaintiff's claims makes class treatment impossible. *See Kwikset Corp. v. Super. Ct. (Benson)*, 51 Cal. 4th 310, 326 (2011) ("[California law] requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law."); *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.") (citation omitted). To prove causation in an omissions case, each class member must prove that, "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Here, the Court will need to determine consumer-by-consumer whether the consumers are concerned with animal testing, whether that concern would affect their purchasing behavior, and what level of concern they had - would they refuse to buy products from a company that tested any products on animals, or would they support a company that has always made efforts to support animal testing alternatives but needs to comply with certain requirements in foreign countries with respect to a few products? Due to the variety of possible reasons that an Avon consumer purchased the vast and numerous Avon products at issue, including quality, effectiveness and price,

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

1   whether Avon actually misled and harmed its consumers simply cannot be

2   determined on a classwide basis. (*See, e.g.,* Steckel Decl., ¶¶ 24-28, 34-39, 52.)

3   Indeed, relying on *Comcast*, the D.C. Circuit just confirmed that, to meet the

4   predominance requirement, "plaintiffs must also show that they can prove, through

5   common evidence, that all class members were in fact injured by the alleged

6   conspiracy . . . we do expect the common evidence to show all class members

7   suffered some injury." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 12-

8   7085, Dkt. No. 1450877 (D.C. Cir. Aug. 9, 2013) (citations omitted).  Plaintiff

9   cannot make such a showing here.

10      Plaintiff argues that because this is a failure to disclose case, she meets the

11   predominance requirement simply because each class member was subject to the

12   same omissions. (Mot. at pp. 18-20.)  This very argument was rejected by the

13   district court in *Diacakis*.  This Court should be persuaded by the rationale of the

14   *Diacakis* court here:

15          According to Plaintiff, the predominance requirement is met
            because each class member was allegedly subject to the same
16          omissions and misleading marketing program. . . . The flaw in
            that argument, however, is that Plaintiff failed to make any
17          showing that there any uniform practice underlying his claims in
            the first instance. At their core, Plaintiff's claims are based on
18          three telephone conversations between Plaintiff and Comcast
            representatives. As noted, he has made no showing that the
19          representations or omissions during those calls were made
            pursuant to a standardized script or marketing practice. . . .
20          Without such a showing, Plaintiff cannot establish that there are
            common questions which predominate over questions affecting
21          only individual members, as required by Rule 23(b)(3).

22   *Diacakis*, 2013 U.S. Dist. LEXIS at *25-26.

23      Just as in *Diacakis*, Plaintiff has not demonstrated any uniform practice by

24   Avon to disclose or conceal information about its animal testing policy.  To the

25   contrary, Avon does not advertise its sustainability practices, nor does it provide its

26   ISRs with training on its animal testing policy beyond the policy itself. (Murray

27   Decl., Ex. C - Makover Depo. at 19:24-21:23.)  Furthermore, ISRs are independent

28   contractors who are free to communicate with their customers as they please, and

-26-

1    Avon has no control over these conversations. (*Id.* at 14:14-19.)  Plaintiff therefore

2    cannot establish that common questions of reliance predominate over questions

3    affecting only individual members.  *See, e.g., Clark v. Watchie*, 513 F.2d 994, 1000

4    (9th Cir. 1975) ("Appellants must show, as a condition to class status, that any

5    misrepresentations or non-disclosures were common to the class.  They have not

6    done so for they have not shown that the alleged misrepresentations and non-

7    disclosures involved every limited partner.")

8                    2.    **Beltran is not entitled to a presumption of reliance because**

9                          **the putative class was exposed to disparate information**

10       Given the difficulties that reliance poses to class certification, Plaintiff asks

11   the Court to apply a presumption of reliance to all her claims based on an alleged

12   material omission. (Mot. at pp. 20-21.)  The Court should not indulge Plaintiff.

13       In *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the

14   Ninth Circuit rejected plaintiffs' contention that a presumption of reliance applied

15   pursuant to *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ("*Tobacco II*"). *Mazza*,

16   666 F.3d at 595.  The plaintiffs in *Mazza* alleged that Honda made certain

17   misrepresentations regarding the Acura RL's collision mitigation braking system.

18   *Id.* at 585.  In rejecting a presumption of reliance, the court noted that a

19   presumption of reliance does not arise when class members "were exposed to quite

20   disparate information . . . ."  California courts have recognized that *Tobacco II* does

21   not allow "a consumer who was never exposed to an alleged false or misleading

22   advertising . . . campaign" to recover damages under California's UCL. *Id.* at 596.

23   In the absence of a presumption of reliance, the court found that the class was

24   grossly overbroad because common questions of fact did not predominate. *Id.* at

25   597. *See also Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830

26   (2009) (no presumption of reliance where defendant's sales materials and scripts

27   did not uniformly contain the alleged omissions and misrepresentations and

28   defendant did not require its insurance agents to use uniform materials in sales

1   presentations).  In determining whether to apply a presumption of reliance in an

2   omission case, courts cannot focus solely on the alleged omission, but also must

3   determine whether the information actually provided to the proposed class was

4   uniform.  *See Mazza*, 666 F.3d at 596 ("For everyone in the class to have been

5   exposed to the omissions . . . it is necessary for everyone in the class to have

6   viewed the allegedly misleading advertising."); *Fairbanks v. Farmers New World*

7   *Life Ins. Co.*, 197 Cal. App. 4th 544, 564 (2011) (refusing to apply a presumption of

8   reliance where, although the language of life insurance policies was uniform, it was

9   "impossible to consider the language of the policies without considering the

10  information conveyed by the . . . agents in the process of selling them.")

11          The Ninth Circuit's opinions in *Degelmann v. Advanced Medical Optics Inc.*,

12  659 F.3d 835 (9th Cir. 2011) and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th

13  Cir. 2011) do not compel a different result.  Both cases are readily distinguishable,

14  as they involved uniform affirmative misrepresentations made to the putative class.

15  The *Degelmann* plaintiffs alleged that they had been misled by defendant's

16  advertising for contact lens solution, which claimed that the product cleaned and

17  disinfected.  *Degelmann*, 659 F.3d at 838-39.  Certain users suffered from

18  infections and the plaintiffs alleged that, while they suffered no physical injury,

19  they paid more for the product than they otherwise would have had they been aware

20  of the danger of infection.  *Id.*  Applying the test set forth in *Kwikset*, 51 Cal. 4th

21  310, the Ninth Circuit held that plaintiffs had standing if they properly alleged that,

22  in reliance on false advertising, they paid more for a product than they otherwise

23  would have paid.  *Degelmann*, 659 F.3d at 840.  In *Stearns*, the plaintiffs alleged

24  that they were inappropriately induced into purchasing memberships in a coupon

25  service that was deceptively advertised on Ticketmaster's website.  *Stearns*, 655

26  F.3d at 1017. The Ninth Circuit found that under *Tobacco II*, individualized proof

27  of reliance and causation is not necessary under the UCL; it was enough to show

28  that the advertising was misleading, that there was a likelihood of deception, and

AVON'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

1    that each class member was "relieved of [their] money." *Stearns*, 655 F.3d at 1021.

2         In contrast here, Plaintiff attempts to build her class on an alleged omission

3    premised on a series of alleged representations that were not viewed by the entire

4    class members, or even Plaintiff.  The putative class necessarily includes Avon

5    customers who, like Beltran, were not exposed to or aware of Avon's animal testing

6    policy.  (*See, e.g.,* Steckel Decl., ¶¶ 40-43, 47-54.)  Furthermore, as ISRs are

7    independent contractors who are not trained on Avon's animal testing policy, there

8    is no way to know or control what ISRs say to their customers about the policy.

9    (Murray Decl., Ex. C - Makover Depo. at 14:14-19; 19:24-21:23.)  As Beltran and

10   the former named plaintiffs' allegations illustrate, each one gained her

11   understanding of Avon's animal testing policy from a different source.  Beltran

12   overheard a statement at a private meeting only for ISRs in 1998 (Murray Decl., Ex.

13   B - Beltran Depo. at 176:14-24); Tellez spoke to an ISR, read an advertisement and

14   consulted PETA's admittedly incorrect website (TAC ¶ 7); and Gutierrez spoke

15   with a District Sales Manager.  (TAC ¶ 8).  A presumption of reliance cannot apply

16   under these circumstances, where the information regarding Avon's animal testing

17   policy is as varied as are its sources.  *See Mirkin*, 5 Cal. 4th at 1093-94 (refusing to

18   apply presumption where plaintiffs had not "pled that the defendants had made

19   identical representations to each class member"); *Jordan v. Paul Fin., LLC*, 285

20   F.R.D. 435, 465 (N.D. Cal. 2012) (for presumption to apply, "the representations

21   with misleading omissions must have been uniformly given to class members.").[13]

22        **3.    Beltran is not entitled to a presumption of reliance because
           individual issues as to materiality predominate**

23        Even if all class members were exposed to the same misrepresentations

24   regarding Avon's animal testing policy, Plaintiff offers no evidence that the alleged

---

[13] For this very reason, Plaintiff's reliance on *Johnson v. General Mills, Inc.*, 276 F.R.D. 519 (2011), is misplaced.  In *Johnson*, this Court certified a class after finding that all class members were "misled by a common advertising campaign that had little to no variation." 276 F.R.D. at 521.  No such unitary message exists here.

-29-

AVON'S OPPOSITION TO MOTION FOR<br>CLASS CERTIFICATION

1   omission was material.  Instead, Plaintiff points to the Court's earlier ruling that the

2   TAC adequately **alleged** that Avon's animal testing policy was material, this Court

3   also expressly reserved judgment on the question of "[w]hether Plaintiffs will be

4   able to show such materiality to warrant class certification."  (Dkt. No. at 73 at

5   14:2-3.)  Plaintiff failed to make any evidentiary showing regarding materiality in

6   its moving papers.  The evidence actually establishes that Avon consumers

7   purchase products for different reasons -- the majority of which have nothing to do

8   with animal testing or other sustainability issues – which precludes a presumption

9   of reliance based on materiality.  *See Stearns*, 655 F.3d at 1024 (finding that many

10  consumers may have chosen to sign up for a defendant's marketing program for

11  "myriad reasons," defeating any classwide showing of materiality).

12        *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) is instructive.  There,

13  the court found that individual issues predominated proposed CLRA class claims

14  relating to a failure to disclose risks of Vioxx because consumers would differ in

15  what they considered material.  *Id.* at 132-35.  The evidence showed that Vioxx

16  increased the risk of death for only some patients, that some patients would take the

17  drug even knowing the risks, that some doctors would have ignored statements by

18  the manufacturer, and that many factors informed doctors' decisions to prescribe

19  the drug.  *Id.*  The court concluded: "[i]f the issue of materiality or reliance is a

20  matter that would vary from consumer to consumer, the issue is not subject to

21  common proof, and the action is properly not certified as a class action."  *Id.* at 129.

22        The evidence here shows that awareness of a disclosure regarding Avon's

23  animal testing policy would almost certainly vary from consumer to consumer.  As

24  Dr. Steckel explains, REDACTED

25

26                                                                        (Steckel

27  Decl., ¶ 42.)  REDACTED

28

1    REDACTED

2

3

4                        . (*Id.* at ¶¶ 48, 49.) REDACTED

5

6                                (*Id.* at ¶ 54.)  All of this data

7 demonstrates that individual issues as to materiality predominate, thus precluding

8 an inference of reliance.[14]

9          4.    **Individualized relief determinations preclude class treatment**

10       Plaintiff's failure to offer any method for calculating monetary relief on a

11 classwide basis further dooms her attempt to certify a class.  In *Comcast*, the

12 Supreme Court addressed plaintiffs' burden at the class certification stage to show

13 that damages are capable of measurement on a classwide basis, explaining that

14 "[c]alculations need not be exact, but at the class-certification stage (as at trial), any

15 model supporting a 'plaintiff's damages case must be consistent with its liability

16 case, particularly with respect to the alleged anticompetitive effect of the

17 violation.'"  133 S. Ct. at 1426 (citation omitted).  While Plaintiff need not

18 calculate damages at this time, she must "still offer a method that tethers [her]

19 theory of liability to a methodology for determining the damages suffered by the

20 class."  *Vaccarino v. Midland Nat'l Life Ins. Co.*, No. CV 11-5858 CAS, 2013 U.S.

---

21

22 [14] Plaintiff relies on the decision in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013), to argue that the issue of materiality is a common question.  (Mot. at p.

23 21.)  *Amgen* involved securities allegations based on a fraud-on-the-market theory predicated on an efficient market, which required the plaintiff to prove Amgen had made a materially

24 misleading statement to the public regarding the sale of its stock.  The Court distinguished that case from one "in which the asserted problem – *i.e.*, that the plaintiff class cannot prove

25 materiality – 'exhibits some fatal dissimilarity' among class members that would make use of the class–action device inefficient or unfair."  133 S. Ct. at 1197.  Unlike in *Amgen*, the issue on class

26 certification is not whether Avon made a materially misleading omission, but whether animal

27 testing issues are material for purposes of applying a presumption of reliance.  The evidence shows that there are significant variations among the proposed class as to whether they would

28 consider Avon's disclosure or nondisclosure of its animal testing policy to be material.

     AVON'S OPPOSITION TO MOTION FOR
                                                CLASS CERTIFICATION

1    Dist. LEXIS 88612, at *43 (C.D. Cal. June 17, 2013).

2         Plaintiff has not proposed any method for measuring monetary recovery.

3    Instead, she asks that the Court "determine the amount of restitutionary

4    disgorgement" based on Avon's sales, revenues and profits. (Mot. at p. 24.)

5    Plaintiff similarly asks that the jury calculate fraud damages "on an aggregate

6    basis." (*Id.*)  Plaintiff does not meet her burden under *Comcast* by simply asking

7    the trier of fact to perform these calculations.

8         Even if Plaintiff were to belatedly offer evidence of Avon's sales and profits,

9    this evidence would not establish a measurement of classwide damages.  Plaintiff's

10   UCL and CLRA remedies are limited to restitution, which is measured as the

11   "difference between what the plaintiff paid and the value of what the plaintiff

12   received . . . ." *In re Vioxx Class Cases*, 180 Cal. App. 4th at 131.[15]  For her fraud

13   claim, Plaintiff can recover out-of-pocket damages, which, like restitution, awards

14   "the difference in actual value between what the plaintiff gave and what he

15   received." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001-02 (9th Cir. 2006).

16   Evidence of Avon's sales, revenues and profits, however, describes

17   nonrestitutionary disgorgement, which is "not an available remedy in a UCL class

18   action." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460 (2005

19        Moreover, restitution and fraud damages cannot be calculated on a classwide

20   basis in this case because there is no evidence of what each class member paid for

21   Avon cosmetic products.  This case involves thousands of products purchased at

22   different prices by consumers and ISRs for personal and business use.  There is no

23   way to know how much consumers paid for each Avon cosmetic product over the

24   past four years without asking each consumer.  Moreover, REDACTED

25

26   [15] While the CLRA allows for recovery of damages, Plaintiff never provided Avon with the
     notice required to seek damages under the CLRA, and is therefore precluded from doing so. *See*

27   Cal. Civ. Code § 1782(a); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 405 (S.D.N.Y. 2012)
     ("It is uncontested that the plaintiff here did not comply with the notice requirement, and

28   therefore she may not seek damages under the CLRA."). Plaintiff appears to concede this fact, as
     she notes that she is seeking only restitution for her CLRA claim. (Mot. at 24:10-11.)

AVON'S OPPOSITION TO MOTION FOR
                                              CLASS CERTIFICATION

1   REDACTED     , who do not share their customer lists with Avon, so Avon would

2   have no way of determining who almost all of its customers are.  Most consumers,

3   like Beltran, also will not have received or retained receipts.  (Murray Decl., Ex.

4   B - Beltran Depo. at 112:16-25.)  Memory issues as to what products were

5   purchased when, at what amounts and in what quantities render the damages

6   calculations highly individualized, precluding class certification.  *See Red v. Kraft*

7   *Foods, Inc.*, CV 10-1028-GW (AGRx), 2012 U.S. Dist. LEXIS 186948, at *39

8   (C.D. Cal. Apr. 12, 2012) ("Plaintiffs cannot get around the fact that individual

9   class members, to recover, would need to show, at minimum, proof of how many

10  purchases they made of the offending products, where and when, in order to discern

11  how many multiples of that premium they are owed.")

12      It is also impossible to calculate the second part of the damages equation, the

13  value received by each class member, on a classwide basis.  As the California

14  Supreme Court explained in *Cortez v. Purolator Air Filtration Products Co.*, 23

15  Cal. 4th 163, 178 (2000), a monetary loss is eligible for restitution if it

16  "encompass[es] quantifiable sums one person owes to another . . . ."  The sum owed

17  must be "objectively measurable" (*Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338

18  (1998)), and "must be supported by evidence."  *Colgan v. Leatherman Tool Grp.,*

19  *Inc.*, 135 Cal. App. 4th 663, 698 (2006).  Most consumers used the products they

20  purchased and derived benefit from their use.  Yet this value is entirely subjective

21  and unique to each of them.  It therefore would be impossible to assign a true value

22  for each Avon cosmetic product purchased by each class member.  *See In re Vioxx*

23  *Class Cases*, 180 Cal. App. 4th at 131 (To recover restitution, "there must be

24  evidence of the actual **value** of what the plaintiff **received**.") (emphasis added).

25      As for her attempt to calculate fraud damages on an "aggregate basis," the

26  Supreme Court rejected this "trial by formula" approach in *Dukes*, 131 S. Ct. at

27  2546, holding that Wal-Mart was "entitled to litigate its statutory defenses" to the

28  individual claims of each member seeking relief.  *Id.*  Furthermore, Plaintiff's

-33-                     AVON'S OPPOSITION TO MOTION FOR
                        CLASS CERTIFICATION

1   reliance on *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), to argue that

2   individual damages questions do not defeat class treatment, is misplaced.  In

3   *Blackie*, the court reasoned that individual damages could be calculated almost as a

4   "mechanical task." *Id.*  Conversely, Plaintiff has not presented any indication of

5   how to determine the amount of damages suffered by each class member, leaving

6   the Court and the jury to engage in their own investigations as to which of Avon's

7   hundreds of products class members purchased, how much each class member

8   spent, and the value received by each class member.

9           Plaintiff's own purchases serve as an excellent example of the difficulty of

10  determining each class member's damages.  Plaintiff has no record of any of her

11  purchases, which were made in cash at swap meets, possibly through ISRs or

12  perhaps from unauthorized resellers.  Even if the purchases were made from ISRs,

13  Avon has no information of what consumer purchased which products at what

14  prices from ISRs.  Short of speaking with hundreds of thousands of ISRs, there is

15  no way to reconstruct how much each putative class member paid for Avon

16  cosmetic products during the class period.  These inquiries make this case ill-suited

17  for class treatment. *See Colapinto v. Esquire Deposition Servs., LLC.*, Nos. CV 09-

18  07584 SJO, SACV 10-00297 SJO, 2011 U.S. Dist. LEXIS 30814, at *24 (C.D. Cal.

19  Mar. 8, 2011) (predominance requirement not met where defendant did not charge

20  same rates to all clients and court would need to inquire into the specifics of each

21  fee arrangement for each individual client).[16]

22

23  _____

    [16] A further complication arises with respect to those lexicographic class members (as defined by
24  Dr. Steckel, *see* Steckel Decl., ¶ 29), who contend that they would not have purchased any Avon
    products had they known that some products are tested on animals abroad.  If these consumers
25  already used the products and derived some benefit from their use, they are unable to return the
    products to Avon and thus are not entitled to restitution, as any sums provided to such persons
26  would amount to an improper "rebate." *See Day*, 63 Cal. App. 4th at 339 (holding that plaintiffs
    were not entitled to refunds for phone cards they had already used). *See also* Restatement (First)
27  of Restitution § 65 (1937) ("The right of a person to restitution for a benefit conferred upon
    another in a transaction which is voidable for fraud or mistake is dependent upon his return or
28  offer to return to the other party anything which he received as part of the transaction . . .").

AVON'S OPPOSITION TO MOTION FOR
                                                    CLASS CERTIFICATION

**B.    A Class Action Is Not The Superior Method For This Case**

The individualized inquiries regarding reliance, materiality and damages, coupled with the fact that the proposed class includes many members who have not suffered any injury, demonstrate quite clearly that class treatment is not the superior method for litigating the claims asserted in this case.  A class action is also not superior "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover[y]." *Zinser*, 253 F.3d at 1192.  This is precisely what would happen here, as there are no records identifying Avon purchasers — who are for the most part known only to their ISRs — much less purchasers who were allegedly induced to purchase Avon products based on Avon's animal testing policy.  As this Court noted in *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices & Products Liability Litigation*, 288 F.R.D. 445, 450 (C.D. Cal. 2013):

> Plaintiffs' proposal to certify a class of thousands . . . then determine which few suffered an actual injury . . . "would render the class action device nothing more than a façade for conducting a small number of highly individualized," fact-intensive cases. [citation omitted]  Such a class action is certainly not a superior, fair, and efficient method for resolving the parties' controversy.

As there is absolutely no manageable way for this Court to verify which class members in fact suffered injury, or to calculate the amount owed to these members, Plaintiff's Motion for Class Certification should be denied.

**VII.    CONCLUSION**

For the foregoing reasons, Avon respectfully requests that the court deny Plaintiff's Motion for Class Certification.

DATED:  August 9, 2013             PAUL HASTINGS LLP

By: _____/s/ Katherine F. Murray_____
                Katherine F. Murray

Attorneys for Defendant
AVON PRODUCTS, INC.

-35-                       AVON'S OPPOSITION TO MOTION FOR
                              CLASS CERTIFICATION